ACCEPTED
14-14-00631-CV
FOURTEENTH COURT OF APPEALS
HOUSTON, TEXAS
12/29/2014 5:34:01 PM
CHRISTOPHER PRINE
CLERK

**No. 14-14-00631-CV**

IN THE FOURTEENTH COURT OF APPEALS,
HOUSTON, TEXAS

FILED IN
14th COURT OF APPEALS
HOUSTON, TEXAS
12/29/2014 5:34:01 PM
CHRISTOPHER A. PRINE
Clerk

TEXAS WORKFORCE COMMISSION,

Appellant,

v.

HARRIS COUNTY APPRAISAL DISTRICT,

Appellee.

Appealed from the 55th District Court of Harris County, Texas
District Court Cause No. 2012-34688
Hon. Jeff Shadwick, Presiding

BRIEF OF APPELLANT
TEXAS WORKFORCE COMMISSION

GREG ABBOTT
Attorney General of Texas

DANIEL T. HODGE
First Assistant Attorney General

DAVID C. MATTAX
Deputy Attorney General for
Defense Litigation

ROBERT O'KEEFE
Chief, Financial Litigation, Tax, and
Charitable Trusts Division

ALISON ANDREWS
Assistant Attorney General
Financial Litigation, Tax, and Charitable
Trusts Division
State Bar No. 24059381
PO Box 12548
Austin, Texas 78711
TEL: (512) 475-1747
FAX: (512) 478-4013
alison.andrews@texasattorneygeneral.gov

ATTORNEY FOR APPELLANT

**ORAL ARGUMENT REQUESTED**

# IDENTITY OF PARTIES AND COUNSEL

**Appellant's Counsel**

Alison Andrews
Assistant Attorney General
State Bar No. 24059381
Assistant Attorney General
Office of the Attorney General
Financial Litigation, Tax, and
Charitable Trusts Division
P.O. Box 12548
Austin, Texas    78711-2548
Tel: (512) 475-1747
Fax: (512) 478-4013
*ATTORNEYS FOR APPELLANT*
*TEXAS WORKFORCE COMMISSION*

**Appellees' Counsel**

Brian J. Begle
Paula Alexander
Olson & Olson, L.L.P.
Wortham Tower, Suite 600
2727 Allen Parkway
Houston, Texas 77019-2133
*ATTORNEYS FOR APPELLEE HARRIS*
*COUNTY APPRAISAL DISTRICT*

**Counsel for Additional Parties to
Trial Court Judgment**

J. C. Loftis
P. O. Box 88135
Houston, TX   77288-0135
*ATTORNEY FOR VALLEDA CRUMP*

Donald DeMoss
5300 Memorial Drive, 650
Houston, TX   77007
*ATTORNEY FOR RONALD HASTIK*

Lynne M. Jurek
Albany L. Willis
Kelley, Kronenberg, Gilmartin, Fichtel,
Wander, Bamdas, Eskalyo & Dunbrack
P.A.
1001 McKinney Street, Suite 300
Houston, TX   77002
*ATTORNEY FOR LAURA BASS*

**Unrepresented Additional Parties**

Charles E. McKirahan
Dempsey Wells
Michael Marshall
Diane Jobin
Monarchie Clay
Melia J. Wichmann
Phil Ross
Janet Sheffield
Reese Buggs
Gerald Chrisenberry
Cynthia A. Spooner
Forrest Cresswell

**TABLE OF CONTENTS**

**Identity of the Parties** ........................................................................................ ii

**Index of Authorities** ............................................................................................v

**Statement of the Case** .........................................................................................1

**Issues Presented**..................................................................................................1

**Statement of Facts**...............................................................................................2

**Summary of Argument**.........................................................................................7

**Argument** ............................................................................................................9

    I.     The trial court incorrectly treated the HCAD employee question as dispositive of all issues, and setting aside the TWC decisions on this basis constituted error by awarding more relief than was requested.

    II.    The only question before the Court is whether substantial evidence supports the TWC decisions.

    III.   The trial court erred in setting aside the TWC decisions ruling the ARB members were in HCAD's employment because substantial evidence supports those decisions.

        A.    Members of the ARB are in HCAD's employment under the general definition in TUCA.

        B.    TUCA contains no exception to employment for members of appraisal review boards and the Legislature explicitly rejected a proposal to add such a provision.

        C.    Members of the ARB do not qualify for the exception for members of the judiciary.

    IV.   The trial court erred in setting aside the TWC decisions on all issues other than whether the ARB members were in HCAD's employment because substantial evidence supports those decisions.

A. The ARB members filed valid claims for benefits.

B. Because the claimants became unemployed through no fault of their own, TWC properly ruled they were qualified for benefits.

**Prayer**................................................................................................**20**

**Certificate of Compliance**.............................................................**22**

**Certificate of Service**....................................................................**22**

**Appendix** .........................................................................................**36**
       Tab 1-House Bill No. 982
       Tab 2-Unemployment Insurance Program Letter
       Tab 3-S.B. No. 432
       Tab 4-House Journal
       Tab 5-HB No. 585
       Tab 6-Final Judgment
       Tab 7-Tex. Lab. Code §212.201
       Tab 8-Tex. Lab. Code §212.202
       Tab 9-Tex. Lab. Code §201.041
       Tab 10-40 Tex. Adm. Code §821.5

# INDEX OF AUTHORITIES

**CASES**

*Barnett v. Texas Employment Comm'n,*.............................................................18
    510 S.W.2d 361, 363 (Tex. Civ. App.—Austin 1974, writ ref'd n.r.e.)

*Bradley v. State ex rel. White,*......................................................................27
    990 S.W.2d 245 (Tex. 1999)

*City of Houston v. Tippy,* .......................................................................15, 19
    991 S.W.2d 330, 334 (Tex. App.—Houston [1st Dist.] 1999, no pet.)

*Collingsworth Gen. Hosp. v. Hunnicut,* ........................................................14
    988 S.W.2d 706, 708 (Tex. 1998)

*Critical Health Connection, Inc. v. Tex. Workforce Comm'n,*................................18
    338 S.W.3d 758, 766-767 (Tex. App.—Austin 2011, no pet.)

*Dotson v. Tex. State Bd. of Med. Examiners,*.........................................................14
    612 S.W.2d 921, 922 (Tex. 1981).

*Dozier v. Tex. Emp. Comm'n,*.....................................................................14
    41 S.W.3d 304, 309 (Tex. App.—Houston [14th Dist.] 2001, no pet.)

*G&H Towing Co. v. Magee,* ........................................................................9
    347 S.W.3d 293, 297 (Tex. 2011)

*Elgohary v. Texas Workforce Comm'n,* No. 14–09–00108–CV,............................13
    2010 WL 2326126, at *2 (Tex.App.-Houston [14th Dist.] June 10, 2010, no
    pet.) (mem. op.)

*Firemen's & Policemen's Civil Serv. Comm'n v. Brinkmeyer,*...............................14
    662 S.W.2d 953, 956 (Tex. 1984).

*Harris County Appraisal District v. Texas Workforce Commission*
*and Jimmy Moreno,*.....................................................................................4
    No. 2012-25985 (80th Dist. Ct., Harris County, Tex. Mar. 15, 2013.

*In re Barr,*...................................................................................................................28
      13 S.W.3d 525, 532 (Tex.Rev.Trib. 1998)

*In re Canales,*...............................................................................................................27
      113 S.W.3d 56, 67 – 68 (Tex.Rev.Trib. 2003)

*McConnell v. Southside ISD,* ........................................................................................9
      858 S.W.2d 337, 341 (Tex. 1993)

*Madisonville Consolidated Ind. Sch. Dist. v. Tex. Emp. Comm'n,*.........................29
      821 S.W.2d 310, 311 – 312 (Tex.App.—Corpus Christi 1991, writ denied)

*McCrory v. Henderson,* ..............................................................................................15
      431 S.W.3d 140, 143 (Tex.App.–Houston [14 Dist.] 2013, no pet.)

*Mercer v. Ross,*...........................................................................................................14
      701 S.W.2d 830, 831 (Tex. 1986)

*Merchant v. State*, ......................................................................................................17
      379 S.W.2d 924, 925 (Tex. Civ. App—Austin 1964, no writ)

*Sledd v. Garrett,*.........................................................................................................28
      123 S.W.3d 592, (Tex.App.—Houston [14th Dist.] 2003, no pet.)

*Spicer v. Tex. Workforce Comm'n,*.............................................................................24
      430 S.W.3d 526, 534 n.5 (Tex.App.—Dallas 2014, no pet.)

*Tex. Dep't of Pub. Safety v. Alford,*............................................................................14
      209 S.W.3d 101, 103 (Tex. 2006)

*Tex. Emp. Comm'n v. Camacho,*.............................................................................15, 32
      394 S.W.2d 35, 37 (Tex.App.—Dallas 1965, no writ)

**Texas Statutes**
Tex. Lab. Code Ann. §201.011(1) ...............................................................................10

Tex. Lab. Code Ann. §201.012(a) (West 2006) .........................................................32

Tex. Lab. Code Ann. §201.041 (West 2006)............................................9, 16, 17, 21

Tex. Lab. Code Ann. §201.046 (West 2006) ......................................................18, 19

Tex. Lab. Code Ann. §201.061-201.078 (West 2006) ...............................................16

Tex. Lab. Code Ann. §201.063 (West 2006).......................................................26, 27

Tex. Lab. Code Ann. §201.081 (West)......................................................................17

Tex. Lab. Code Ann. §204.101 (West)........................................................................9

Tex. Lab. Code Ann. §207.004 (West 2006)..........................................................9, 16

Tex. Lab. Code Ann. §207.002 (West Supp. 2014) ...................................................10

Tex. Lab. Code Ann. §207.003 (West 2006)..............................................................10

Tex. Lab. Code Ann. §207.021(a) (6) (West Supp. 2014) .........................................10

Tex. Lab. Code Ann. §207.044 (West 2006 & Supp. 2014) ..................................12, 32

Tex. Lab. Code Ann. §207.044(b) (West 2006 & Supp. 2014)...................................13

Tex. Lab. Code Ann. §207.045 (West 2006 & Supp. 2014) .......................................12

Tex. Lab. Code Ann. §208.002 (West Supp. 2014) ...................................................11

Tex. Lab. Code Ann. §208.002 (a) (West Supp. 2014) .........................................11, 30

Tex. Lab. Code Ann. §212.202 (West 2006 & Supp. 2014) ..................................13, 18

Tex. Tax Code Ann. §6.411-6.412 (West) .................................................................22

**STATE RULES**
Tex. R. Civ. P. 166a......................................................................................................9

**STATE REGULATIONS**
40 Tex. Admin. Code § 821.5 ...............................................................18, 21, 22

40 Tex. Admin. Code § 821.5(1) ........................................................................19

40 Tex. Admin. Code § 821.5(2) ........................................................................19

40 Tex. Admin. Code § 821.5(3) ........................................................................20

40 Tex. Admin. Code § 821.5(4) ........................................................................20

40 Tex. Admin. Code § 821.5(5) ........................................................................20

40 Tex. Admin. Code § 821.5(7) ........................................................................20

40 Tex. Admin. Code § 821.5(9) ........................................................................21

40 Tex. Admin. Code § 821.5(12) .......................................................................21

40 Tex. Admin. Code § 821.5(14) .......................................................................21

**Federal Statutes**
26 U.S.C.A. §§3302 ..........................................................................................25

26 U.S.C.A §§3304 ......................................................................................24, 25

26 U.S.C.A §§3309 ......................................................................................24, 25

## STATEMENT OF THE CASE

*Nature of the Case:* Appellee Harris County Appraisal District filed fifteen suits, each against Appellant Texas Workforce Commission and one former member of the Harris County Appraisal Review Board, for judicial review of Texas Workforce Commission decisions. C.R. 53 – 227.

*Course of Proceedings:* The fifteen suits were consolidated into this cause. C.R. 267. The parties filed cross-motions for summary judgment. C.R. 509 – 618.

*Trial Court Disposition:* On May 5, 2014, the trial court entered a final judgment denying Appellant's motion for summary judgment, granting summary judgment in favor of Appellee and setting aside the fifteen TWC decisions. C.R. 864 – 866. Appellant filed a motion for new trial, which the court denied. C.R. 933.

## ISSUES PRESENTED

Issue 1: The trial court erred in granting summary judgment on grounds not raised when it set aside the TWC rulings that the claimants were qualified for benefits and named the correct last employer.

Issue 2: The trial court erred in setting aside the TWC decisions ruling the ARB members were in HCAD's employment because substantial evidence supports those decisions.

1

Issue 3: The trial court erred in setting aside the TWC decisions on all issues other than whether the ARB members were in HCAD's employment because substantial evidence supports those decisions.

## STATEMENT OF FACTS

The Harris County Appraisal Review Board ("ARB") decides property tax disputes and is a critical part of the tax valuation process of the Harris County Appraisal District ("Appellee" or "HCAD"). C.R. 784. Members of the ARB obtained their positions by first submitting job applications to HCAD. *See* C.R. 334. They were called for job interviews by Peggy Mason, Taxpayer Liaison Officer for HCAD. *See id.* Mason conducted interviews for the positions. *See id.* HCAD then performed background checks on the prospective members. *Id.*; C.R. 509 – 606.

Once HCAD hired these members, they were required to participate in training sessions in the building in which HCAD and the ARB were housed. C.R. 334, 509 – 606. Their job duties included hearing and deciding property tax disputes. C.R. 335, 509 – 606. HCAD directed the ARB members as to which disputes to hear, where to hear them, and the date and time the hearings were to be held. *See* C.R. 335. HCAD also directed the members as to the procedures to follow in conducting the hearings and issuing decisions. *See id.* For example, HCAD directed members as to what evidence should be considered, how many minutes each side should be given to present its case, how long each entire hearing should last, and when the decision

2

should be issued. *See id.*

HCAD designated which member would act as the Chairman of the ARB. C.R. 509 – 606. HCAD provided rooms for the hearings to be held, which were in the building where both the ARB and HCAD offices are housed. *Id.*; C.R. 246. HCAD also provided clerical and support staff as well as all necessary equipment. C.R. 247, 509 – 606. The relationship was ongoing for the term for which the member was hired but either party could terminate the relationship early without risking financial liability. C.R. 379, 509 – 606. Members were precluded from participating in outside activities that would conflict with their duties for the ARB. *Id.*

HCAD paid ARB members from the HCAD budget at a rate set by HCAD. C.R. 246, 335, 509 – 606. Members were required to submit weekly timesheets using HCAD's timekeeping system and were paid an hourly rate. C.R. 246, 335, 509 – 606. HCAD provided members with direct deposit receipts. C.R. 509 – 606. HCAD withheld taxes from the members' paychecks. C.R. 509 – 606. At the end of the year, HCAD provided members with W-2s, rather than 1099's, stating members were employees of HCAD. C.R. 509 – 606. HCAD also reported the wages it paid to the ARB members to the Texas Workforce Commission ("TWC" or "Appellant") as wages paid "in employment." C.R. 653 – 672. Accordingly, the members were

awarded wage credits with TWC for the money they received from HCAD. *Id.*

When no work was available or the member was not eligible to serve additional terms, several of the members filed claims for unemployment benefits. C.R. 509 - 606. TWC granted the claimants benefits and HCAD filed administrative appeals. *Id.* TWC's decision with respect to each claimant included one or more of the following rulings:

1) that the claimant was entitled to wage credits based on the money he earned from HCAD because the services he performed on the ARB were in HCAD's employment (in this chart below, this category of ruling is labeled "Employment");

2) that the claimant named the correct last work or filed a valid claim by correctly naming his last work (in the chart below, "Last Work"); and

3) that the claimant was qualified to receive benefits and HCAD was not entitled to protection from chargeback because his discharge from HCAD was not for misconduct (in the chart below, "Separation").

C.R. 509 – 607.

After exhausting its administrative remedies, HCAD filed sixteen suits for judicial review of the TWC decisions. C.R. 53 – 227. In one case, *Harris County Appraisal District v. Texas Workforce Commission and Jimmy Moreno*, Cause No.

2012-25985, in the 80th District Court of Harris County, the trial court granted summary judgment in favor of TWC and the ARB member and affirmed the TWC decision. C.R. 432. HCAD appealed to the First Court of Appeals but then withdrew its appeal. C.R. 434 – 435.

The remaining fifteen suits were consolidated into this action. C.R. 267. The chart below shows the claimants included in this matter along with which of the above three rulings were included in the decision being appealed:

| Claimant | Employment | Last Work | Separation |
|---|---|---|---|
| Charles McKirihan (C.R. 509 – 513) | | X | X |
| Valleda Crump (C.R. 514 – 520) | X | X | X |
| Ronald Hastik (C.R. 521 – 527) | X | X | X |
| Dempsey Wells (C.R. 528 – 533) | X | X | X |
| Michael Marshall (C.R. 534 – 539) | X | X | X |
| Diane Jobin (C.R. 540 – 545) | X | X | X |
| Monarchie Clay (C.R. 546 – 552) | X | X | X |
| Laura Bass (C.R. 553 – 559) | X | X | X |
| Melia Wichman (C.R. 560 – 565) | X | X | X |
| Phil Ross (C.R. 566 – 571) | X | X | X |
| Janet Sheffield (C.R. 572 – 578) | X | X | X |
| Gerald Chrisenberry (C.R. 579 – 585) | X | X | X |
| Reese Buggs (C.R. 586 – 590) | | X | |
| Forrest Cresswell (C.R. 591 – 600) | | X | X |
| Cynthia Spooner (C.R. 601 – 607) | X | X | |

As shown in the above chart, three of the decisions included in this case did not rule upon whether the claimant was in HCAD's employment but only whether the claimant filed a valid claim and was qualified to receive benefits based on the

reason for the separation. C.R. 509 – 513, 586 – 600. With respect to Cynthia Spooner, TWC ruled the claimant had properly named another employer as her last work but that she was entitled to wage credits for the services she performed for HCAD. C.R. 601 – 607.

HCAD filed a Motion for Summary Judgment asserting only that the ARB members were not its employees. C.R. 230 - 239. The trial court initially denied Plaintiff's motion. C.R. 448. After TWC filed its own Motion for Summary Judgment, HCAD filed an Amended Motion for Summary Judgment that was identical to the motion the court had already denied. C.R. 465 – 619. HCAD again moved for summary judgment solely on the grounds that the ARB members were not its employees and did not address whether the claimants named the correct last work or whether they should be qualified based on the reasons for their separations from HCAD. *Id*.

This time, the trial court granted summary judgment in HCAD's favor and denied Appellant's motion. C.R. 864 - 866. Even though HCAD requested summary judgment solely on the grounds that the ARB members were not its employees, the court went beyond the relief requested and set aside the TWC decisions entirely. *Id.* Appellant filed a Motion for New Trial. C.R. 867 - 919. At the hearing on Appellant's Motion for New Trial, HCAD acknowledged that it was not disputing

whether the members were qualified for benefits based on their separations from HCAD. R.R. 12:22 - 13:5. The court nonetheless denied Appellant's motion. C.R. 933. This appeal followed.

## SUMMARY OF ARGUMENT

The trial court erred by granting summary judgment on grounds not presented in HCAD's motion. HCAD's Amended Motion for Summary Judgment asserts only that the ARB members were not HCAD's employees. Whether the ARB members were in HCAD's "employment" under the Texas Unemployment Compensation Act ("TUCA") determines only whether the members are entitled to wage credits based on the money they earned from HCAD. It is not dispositive of any other issues contained in the decisions, including whether the members filed valid claims or should be qualified for benefits based on the reasons for their separations from HCAD. The trial court nonetheless set aside the TWC decisions in their entirety. By doing so, the court disqualified the claimants from receiving any benefits whatsoever, even those based on other employment, without any support for such a ruling. Because the trial court granted summary judgment on grounds not requested in HCAD's Amended Motion for Summary Judgment, the order setting aside the TWC rulings regarding the claimants' last work and qualification for benefits should be reversed.

Furthermore, the trial court erred in denying TWC's motion for summary judgment and in granting Appellant's motion with respect to all the rulings contained in the decisions because all the rulings are supported by substantial evidence. A case for judicial review of a TWC unemployment benefits decision under TUCA contains only a question of law: whether substantial evidence supports the agency decision. The party challenging the decision bears the heavy burden of proving the decision is not supported by substantial evidence or is unreasonable, arbitrary or capricious. TWC properly ruled that the members were in HCAD's employment because their performance of their duties was not free from HCAD's direction and control and no exception to the general definition of employment was applicable. TWC's Motion for Summary Judgment showed substantial evidence supports those decisions and HCAD's motion did not destroy that evidence or show the decisions to be unreasonable or arbitrary and capricious. TWC's Motion for Summary Judgment also showed substantial evidence supports all other rulings contained in the TWC decisions, and HCAD's motion contained no evidence or arguments to the contrary. Accordingly, summary judgment should be granted in Appellant's favor and the TWC decisions should be affirmed in their entirety.

**ARGUMENT**

**I.      The trial court incorrectly treated the HCAD employee question as dispositive of all issues, and setting aside the TWC decisions on this basis constituted error by awarding more relief than was requested.**

A motion for summary judgment must state the specific grounds upon which it is based. Tex. R. Civ. P. 166a. The motion "must stand or fall on the grounds expressly presented in the motion." *McConnell v. Southside ISD*, 858 S.W.2d 337, 341 (Tex. 1993). As a general rule, granting summary judgment on a claim not addressed in the motion is reversible error. *G&H Towing Co. v. Magee*, 347 S.W.3d 293, 297 (Tex. 2011).

HCAD moved for summary judgment solely on the grounds that the ARB members were not its employees. *See* C.R. 608 – 619. The Texas Unemployment Compensation Act ("TUCA") uses the term "employment" to describe the relationship between a worker and an employer when the worker performs services under the direction and control of the employer. Tex. Lab. Code Ann. § 201.041 (West 2006). If the worker is paid wages for services performed in employment, rather than as an independent contractor, the worker will receive "benefit wage credits" for those wages, Tex. Lab. Code § 207.004, and the employer will be required to contribute to the unemployment compensation trust fund based on those wages, Tex. Lab. Code § 204.101. To be eligible for benefits, a claimant

must have earned a sufficient number of wage credits in her base period, which is approximately the year-and-a-half prior to filing her initial claim, from all the entities for which she worked combined. Tex. Lab. Code Ann. § 207.021(a)(6) (West Supp. 2014)[1]; *see also* Tex. Lab. Code Ann. § 201.011(1) (West 2006 & Supp. 2014) (defining "base period"). The number of wage credits a claimant has determines her weekly benefit amount. Tex. Lab. Code Ann. § 207.002, (West Supp. 2014); Tex. Lab. Code Ann. § 207.003 (West 2006).

Because TWC determined the ARB members performed services in HCAD's employment, they were awarded benefit wage credits for their earnings from HCAD. All the decisions included in this case except those concerning Charles McKirihan, Reese Buggs and Forrest Cresswell include rulings affirming the award of wage credits. C.R. 509 – 607. By asserting that the ARB members were not its employees, HCAD placed these rulings at issue.

This assertion does not, however, provide any grounds for reversal of any of the other rulings contained in the decisions. Whether the ARB members were HCAD's employees does not affect whether the members named the correct last

---

[1] This section was amended in 2013. At the time TWC issued these decisions, the section pertaining to eligibility based on wage credits was 207.021(a)(5), which was identical to the current 207.021(a)(6).

work or are qualified for benefits. These are separate determinations made without regard to employment status.

By ruling that the claimants filed valid claims or named the correct last work, the decisions state nothing more than that HCAD was the last entity for which the claimants performed services prior to filing their initial claims. *See* Tex. Lab. Code Ann. § 208.002 (West Supp. 2014). TUCA defines "last work" and "person for whom the claimant last worked" as:

> When used in connection with an initial claim, "last work" and "person for whom the claimant last worked" refer to:
> (1) the last person for whom the claimant actually worked, if the claimant worked for that person for at least 30 hours during a week; or
> (2) the employer, as defined by Subchapter C, Chapter 201, or by the unemployment law of any other state, for whom the claimant last worked.

Tex. Lab. Code Ann. § 208.002(a) (West Supp. 2014). This definition does not require that the last work be performed in employment. *Id.* If the last work the claimant performed was as an independent contractor, the entity for which he performed those services would still be the correct last work. All the decisions included in this case include rulings that the claimant properly named his last work. *See* C.R. 509 – 607. In its Amended Motion for Summary Judgment, HCAD made no assertions whatsoever regarding this issue. *See generally* C.R. 608 – 619.

11

All the decisions except those pertaining to Reese Buggs and Cynthia Spooner also contained rulings that the claimants were not disqualified from receiving benefits because they were laid off from their last work and not discharged for misconduct. C.R. 509 – 607. Whether a claimant is qualified for benefits is based solely on the reason the claimant was separated from his last work without regard to whether the last work was performed in employment. *See* Tex. Lab. Code Ann. § 207.044 (West 2006 & Supp. 2014) ("An individual is disqualified for benefits if the individual was discharged for misconduct connected with the individuals last work); Tex. Lab. Code Ann. § 207.045 (West 2006 & Supp. 2014) ("An individual is disqualified for benefits if the individual left the individual's last work voluntarily without good cause connected with the individual's work"). Once a claimant is ruled to be disqualified, that disqualification remains in place for the entire remainder of the claimant's benefit year unless the claimant returns to employment and works for six weeks or earns six times his weekly benefit amount. *Id*. In its Amended Motion for Summary Judgment, HCAD made no assertions whatsoever regarding the reason for the claimants' separations from their last work. The court nonetheless reversed these rulings, leaving the claimants disqualified for the entire benefit year unless they

12

were able to work enough hours or earn sufficient wages to requalify. *See* Tex. Lab. Code Ann. §207.044(b) (West 2006 & Supp. 2014).

If the Court were to determine that the ARB members were not in HCAD's employment under TUCA without ruling on any of the other issues not raised by HCAD, the wage credits the members received from HCAD would be deleted and their benefit amounts would be recalculated accordingly. But, as long as each member still had sufficient wage credits from other sources and was qualified based on the reason for his separation from his last work, he could still receive some benefits. However, by setting aside the TWC decisions entirely, the trial court invalidated the members' entire claims and ruled them disqualified for the entire benefit year. Such relief goes beyond the grounds upon which HCAD moved for summary judgment and therefore should be reversed.

## II. The only question before the Court is whether substantial evidence supports the TWC decisions.

Additionally, Appellant is entitled to summary judgment on all rulings contained in the decisions because the rulings are reasonable and are supported by substantial evidence. Judicial review of TWC unemployment benefits decisions is by trial *de novo* with substantial evidence review. Tex. Lab. Code Ann. § 212.202 (West 2006 & Supp. 2014); *Elgohary v. Texas Workforce Comm'n,* No. 14–09–00108–CV, 2010 WL 2326126, at *2 (Tex.App.—Houston [14th Dist.] June

13

10, 2010, no pet.) (mem. op.); *Mercer v. Ross*, 701 S.W.2d 830, 831 (Tex. 1986). Under this standard, TWC's decisions are presumed to be valid, which places the burden on the party challenging the decision. *Collingsworth Gen. Hosp. v. Hunnicut*, 988 S.W.2d 706, 708 (Tex. 1998). While the trial court will hear and consider evidence to determine whether reasonable support for the agency's order exists, the agency remains the primary fact-finding body. *Firemen's & Policemen's Civil Serv. Comm'n v. Brinkmeyer*, 662 S.W.2d 953, 956 (Tex. 1984). Whether substantial evidence supports an administrative decision is strictly a question of law. *Tex. Dep't of Pub. Safety v. Alford,* 209 S.W.3d 101, 103 (Tex. 2006).

When a court examines whether there is substantial evidence to support an agency's decision, it determines whether reasonable minds could have reached the same conclusion the agency reached. *Dotson v. Tex. State Bd. of Med. Examiners*, 612 S.W.2d 921, 922 (Tex. 1981). TWC has the discretion to make credibility determinations and to attach whatever weight it considers appropriate to various pieces of evidence. *Dozier v. Tex. Emp. Comm'n*, 41 S.W.3d 304, 309 (Tex. App.—Houston [14th Dist.] 2001, no pet.). A court may not set aside a TWC decision merely because there was conflicting or disputed testimony or because the court would have reached a different conclusion if it were the primary factfinder. *Mercer*, 701 S.W.2d at 931.

Because substantial evidence is more than a mere scintilla but need not reach a preponderance, the evidence may preponderate against the decision of the agency but still amount to substantial evidence. *City of Houston v. Tippy*, 991 S.W.2d 330, 334 (Tex. App.—Houston [1st Dist.] 1999, no pet.). The Court may not set aside the agency's decision simply because the Court would have reached a different result but only if it finds that the decision was made without regard to the law or the facts and therefore was unreasonable, arbitrary, or capricious. *McCrory v. Henderson*, 431 S.W.3d 140, 143 (Tex.App.–Houston [14 Dist.] 2013, no pet.); *Mercer,* 701 S.W.2d at 931 (Tex. 1986).

HCAD had the burden to not only show that another decision could also have been made but to completely destroy the evidence in support of the TWC decisions. *See Tex. Emp. Comm'n v. Camacho*, 394 S.W.2d 35, 37 (Tex.App.—Dallas 1965, no writ) ("[U]nder the substantial evidence rule our only purpose in examining [the plaintiff's evidence] is to determine whether it completely destroys the evidence of misconduct."). HCAD failed to carry this burden.

**III.** **The trial court erred in setting aside the TWC decisions ruling the ARB members were in HCAD's employment because substantial evidence supports those decisions.**

An individual is entitled to benefit wage credits for all wages earned in employment. Tex. Lab. Code Ann. § 207.004 (West 2006). The Texas Unemployment Compensation Act ("TUCA") defines "employment" as:

> [A] service, including service in interstate commerce, performed by an individual for wages or under an express or implied contract of hire, unless it is shown to the satisfaction of the commission that the individual's performance of the service has been and will continue to be free from control or direction under the contract and in fact.

Tex. Lab. Code Ann. § 201.041 (West 2006). Chapter 201 also provides specific exceptions from "employment" for work performed in various industries. *See* Tex. Lab. Code Ann. §§ 201.061 – 201.078 (West 2006) (exempting religious service, service by a relative, certain service on a fishing vessel, etc., from employment). The claimants were paid by HCAD for the services they performed on the ARB, those services were performed under HCAD's direction and control and none of the exceptions apply. Accordingly, TWC ruled the members were entitled to wage credits for the wages they received. C.R. 509 – 607. Because such rulings require HCAD to pay additional contributions to the unemployment compensation trust fund, HCAD brought this suit seeking reversal of the TWC decisions that the members were its employees. However, these decisions are supported by substantial evidence and therefore should be affirmed.

**A. Members of the ARB are in HCAD's employment under the general definition in TUCA.**

TUCA defines employment as a service performed for wages unless it is shown to be free from direction and control. Tex. Lab. Code § 201.041. It defines wages as "all remuneration for personal services." Tex. Lab. Code § 201.081. Thus, under the plain language of the statute, payment for services to a worker creates a presumption that the worker is an employee of the remunerating employer. The burden under the law then shifts to the employer to establish that the worker is free from control or direction in the performance of his or her services. *Merchant v. State*, 379 S.W.2d 924, 925 (Tex. Civ. App—Austin 1964, no writ).

The evidence shows that HCAD paid members of the ARB for the services they provided. C.R. 246, 335, 509 – 606. HCAD filed wage reports with the TWC in which it listed members of the ARB as its employees. CR. 653 – 672. HCAD withheld taxes and filed W-2's with the I.R.S. as though the members were its employees. C.R. 509 – 606. The members were paid from the HCAD budget. *Id.*

To rebut the presumption of employment, then, HCAD had to establish that the members were free from its control. TWC utilizes twenty factors to analyze whether the employer had control over the worker's performance of his duties

either in contract or in fact. [2] 40 T.A.C. 821.5 (2007); *Barnett v. Texas Employment Comm'n*, 510 S.W.2d 361, 363 (Tex. Civ. App.—Austin 1974, writ ref'd n.r.e.). Not all factors may apply in a given relationship and the weight assigned to each factor may vary depending on the circumstances. 40 T.A.C. § 821.5. Even if the employer did not actually exercise control, an employment relationship exists as long as the employer reserved the right to do so. *See* 40 T.A.C. § 821.5. Moreover, the employer can delegate the authority to control the work to other individuals or employers. Tex. Lab. Code Ann. § 201.046 (West 2006); *Critical Health Connection, Inc. v. Tex. Workforce Comm'n*, 338 S.W.3d 758, 766-767 (Tex. App.—Austin 2011, no pet.).

The Court reviews TWC's decision under the substantial evidence standard of review. Tex. Lab. Code Ann. § 212.202 (West 2006 & Supp. 2014). Thus, as long as there is more than a mere scintilla of evidence that the members were subject to some control, or evidence that HCAD had the right to control the

---

[2] A full copy of the twenty-factor test laid out in the Administrative Code is included in Appendix A. In short, the factors that tend to indicate employment are: 1) instructions; 2) training; 3) integration of the worker's services into the business; 4) requirement that services be rendered personally; 5) the employer hires and pays any helpers; 6) continuing relationship; 7) employer sets hours of work; 8) full time work required; 9) employer determines the location; 10) employer sets the order or sequence of work; 11) oral or written reports required; 12) payment by the hour, week or month; 13) payment of business and travel expenses; 14) furnishing tools and equipment; 15) the employee has little or no investment in the business; 16) the employee may not realize a profit or loss; 17) the employee may only work for one firm at a time; 18) an employee does not make services available to the public; 19) the employer has the right to discharge without liability; and 20) the employee may quit without liability.

members, the TWC decision should be upheld. *See Tippy*, 991 S.W.2d at 334. There is substantial evidence to support TWC's rulings that HCAD controlled the members' work. Indicia of the control exercised by HCAD include the following:

- HCAD directed the ARB members as to which disputes to hear, where to hear them, and the date and time the hearings were to be held. *See* C.R. 335. HCAD also directed the members as to the procedures to follow in conducting the hearings and issuing decisions, including what evidence should be considered, how many minutes each side should be given to present its case, how long each entire hearing should last, and when the decision should be issued. *See id.* Instructions such as these are a strong indication of control. *See* 40 T.A.C. § 821.5(1). Even when these instructions were given by the Chairman, the Chairman was selected by HCAD, C.R. 509 – 606, and HCAD's delegation of control to a specific individual does not alter the analysis, see Tex. Lab. Code § 201.046.

- The members were required to participate in training sessions held in the building that housed HCAD and the ARB. C.R. 335, 509 – 606. Training is another factor that strongly shows control by the employer. *See* 40 T.A.C. § 821.5(2).

19

- HCAD has admitted that the ARB is a critical part of its tax valuation process. C.R. 784. The integration of the worker's services into the employer's business weighs in favor of an employment relationship. *See* 40 T.A.C. § 821.5(3).

- When members applied for positions as ARB members, an HCAD employee scheduled and conducted the job interviews. *See* C.R. 334. HCAD also conducted background checks. C.R. 509 – 606. This demonstrates a significant amount of control by HCAD over who may serve as an ARB member and indicates that that the services had to be rendered by the individual personally—rather than delegated to others—another factor favoring employment. See 40 T.A.C. § 821.5(4).

- HCAD supplied clerical and support staff and legal counsel when needed. C.R. 379, 509 – 606. Independent contractors, on the other hand, usually hire, supervise and pay their own helpers. 40 T.A.C. § 821.5(5).

- HCAD set the dates and times of the hearings. C.R. 335. Independent contractors are generally free to set their own hours. 40 T.A.C. § 821.5(7).

- Hearings were held in rooms provided by HCAD. C.R. 509 – 606. Independent contractors can generally perform the work where they choose. 40 T.A.C. § 821.5(9).

- ARB members were paid an hourly rate rather than per job, C.R. 335, 509 – 606, a factor tending to show employment, 40 T.A.C. § 821.5(12).

- HCAD furnished all necessary equipment, C.R. 247, 509 – 606, as tends to occur in an employment relationship, 40 T.A.C. § 821.5(14).

These are only some of the ways in which HCAD exercised direction and control over the ARB members. Of the remaining factors in TWC's test, none would tend to show the ARB members were independent contractors. *See* 40 T.A.C. § 821.5.

In fact, HCAD has itself admitted in another case that the ARB members were not truly independent contractors. *See* C.R. 786 ("Application of the TWC's 20-factor test to the actual services of the ARB members shows that they are not employees, and under some factors, also are not independent contractors."). While HCAD may believe the workers exist in some realm between employees and independent contractors, no such position exists: either the services are performed free from the employer's direction and control or they are not. *See* Tex. Lab. Code § 201.041. Here, they are not.

Based on these factors, substantial evidence supports the TWC decisions that members of the ARB were in HCAD's employment as that term is defined in TUCA. HCAD did not provide sufficient evidence to carry its burden of proving otherwise. In fact, the only argument HCAD made to show it did not exert or reserve the right to exert direction and control over the members was that the Tax Code prohibits HCAD employees from serving on the ARB and makes it a criminal offense for HCAD to influence an ARB decision. C.R. 608 – 619; *see* Tex. Tax Code §§ 6.411 – 6.412. At best, this shows one area in which HCAD does not have the right to control the ARB and is no different from any employment relationship in which an employee is prohibited from working on matters in which the employee has a conflict of interest. The test of employment under TUCA is a fact-based analysis that involves weighing all the factors. 40 T.A.C. § 821.5. Simply showing one area in which HCAD did not exert control over the members is not sufficient to negate the many ways in which it did.

Instead of addressing the many factors showing direction and control, HCAD primarily argued that the members were not in its employment because they fell into an exception to employment under the law. C.R. 230 – 239. However, no such exception applies.

**B. TUCA contains no exception to employment for members of appraisal review boards and the Legislature explicitly rejected a proposal to add such a provision.**

TUCA contains no exception to the definition of employment for members of appraisal review boards. In fact, during the last legislative session, the Legislature looked at the very question currently before this Court and rejected a change to TUCA that would exempt ARB members from receiving unemployment benefits based on services provided to the ARB. Senator Dan Patrick and Representative Gary Elkins proposed identical amendments to the Labor Code that would have enacted the following as Section 207.0435:

> Benefits are not payable to an individual based on services performed by the individual as a member of the appraisal review board of an appraisal district established under Section 6.41, Tax Code.

Tex. H.B. 982, 83rd Leg., R.S. (2013); Tex. S.B. 432, 83rd Leg., R.S. (2013). The bills also stated that the change would apply only to a claim for benefits filed with TWC on or after the effective date of the new statute. *Id*. Neither bill made it out of its respective committee.

Having failed to amend TUCA, HCAD advocated for an amendment to the Property Tax Code that would have exempted ARB members from receiving unemployment benefits by declaring them to be independent contractors. Tex. H.B. 585, 83rd Leg., R.S. (2013). In laying out the amendment on the House floor,

Representative Villarreal said the intent was to correct what he viewed as a problem: certain ARB members were claiming to be employees and then claiming unemployment benefits when they left the ARB.[3]

However, HB 585 was then referred to the Senate, and when the Senate Finance Subcommittee on Fiscal Matters considered the bill on May 15, 2013, the subcommittee proposed a substitute bill with the ARB exemption removed. Senator Eltife said the exemption was removed because it would conflict with federal law.[4] Although Michael Gary, counsel for HCAD, testified that he was concerned about the removal of the exemption, the substitute bill was enacted without it.

Indeed, the Federal Unemployment Tax Act ("FUTA") sets out numerous requirements with which a state law must conform in order for the state to receive funding for the administration of its unemployment compensation trust fund. *See* 26 U.S.C.A. §§ 3304 – 3309. Each year, the U.S. Secretary of Labor surveys a state's unemployment compensation act to ensure compliance with federal law. *Spicer v. Tex. Workforce Comm'n*, 430 S.W.3d 526, 534 n.5 (Tex.App.—Dallas 2014, no pet.). To maintain certification for federal funding, the state program

---

[3] A video recording of the debate can be accessed at: http://www.house.state.tx.us/video-audio/chamber/83/ under the archived video dated 5/02/2013. HB 585 begins approximately at time index 2:53:25 and goes for about 4 minutes to 2:57:00.

[4] This video recording can be accessed at: http://www.senate.state.tx.us/avarchive/. HB 585 begins approximately at time index 12:35 and goes for about 16 minutes to 28:42.

must cover certain broad categories of employment as provided in 26 U.S.C. sections 3304 and 3309. *Id.* While states may broaden the coverage to include more categories of individuals, they may not provide less coverage than that mandated. *Id.* Section 3309 sets out the exceptions to employment that may apply with regard to taxed governmental employers such as HCAD. It does not include an exception for members of appraisal review boards. 26 U.S.C.A. § 3309. If the U.S. Secretary of Labor determines that a state unemployment compensation act does not conform to federal law, the state's eligibility to receive federal funding may be endangered. In fiscal year 2012, TWC spent $124 million in federal funds to administer TUCA. Tex. Workforce Comm'n, *Self-Evaluation Report to the Tex. Sunset Advisory Comm'n*, Aug, 2013, at 41, *available at* https://www.sunset.texas.gov/public/uploads/files/reports/ Workforce%20Commission%20SER%202013%2084%20Leg.pdf. In addition to the state losing those funds if the statute were found to be out of compliance with federal law, Texas employers would also no longer be eligible for large federal tax credits and their effective tax rates would increase from 0.6 percent to 6.0 percent. *See* 26 U.S.C.A. § 3302.

HCAD is now asking the Court to enact the same legislation the Texas Legislature expressly rejected. Just as the U.S. Department of Labor looks at newly

enacted statutes to ensure compliance, the federal agency also reviews state court decisions to see whether the state is interpreting and applying its unemployment compensation laws in conformity with federal law. *See* Unemployment Insurance Program Letter 27-07 Attach. II § 1(d) (Aug. 10, 2007) ("All decisions and orders issued by state courts involving UC benefits and taxes must be submitted for review [to the U.S. Department of Labor] to ensure that interpretation of state law does not conflict with Federal law."). A court ruling that fails to comply with FUTA could have the same result as a noncomplying statute.

### C.      Members of the ARB do not qualify for the exception for members of the judiciary.

After the Texas Legislature failed to enact a statute excepting members of the ARB from coverage under TUCA, HCAD asserted in its Amended Motion for Summary Judgment that ARB members are subject to the exception for "members of the judiciary." C.R. 230 – 239. Section 201.063 does provide such an exception, stating:

> a)   In this subtitle, "employment" does not include:
> (1)      service in the employ of a political subdivision or of an instrumentality of a political subdivision that is wholly owned by one or more political subdivisions:
> > (A)      as an elected official;
> > (B)      as a member of a legislative body;
> > (C)      as a member of the judiciary; . . .

26

Tex. Lab. Code Ann. § 201.063 (West 2006). No case has previously interpreted this section as it applies to "members of the judiciary." However, from its own language, this section as a whole appears to apply only to legislators, judges and other elected officials in the strictest sense, whose performance can never truly be under the direction and control of any entity because they are in the apex positions of decision-making for the governmental body. They need not commit misconduct to be replaced at the end of their terms by the voting public but cannot be removed before such time except in extreme circumstances. *See In re Canales*, 113 S.W.3d 56, 67 – 68 (Tex.Rev.Trib. 2003) ("[R]emoving a member of the judiciary and depriving the electorate of its choice of judge is a serious matter . . ."). These positions differ in those respects from those generally covered by TUCA so an exception is necessary.

HCAD contends this exception applies to members of the ARB because they perform some judicial-like functions. Had the Legislature intended for the exception to apply so widely, it could have used a broader term such as "judicial officers", "quasi-judicial officers" or "officials who perform judicial functions". The term it chose instead does not include all agency personnel who decide disputes. *See Bradley v. State ex rel. White*, 990 S.W.2d 245 (Tex. 1999) (rule prohibiting judge from testifying "does not only apply to members of the judiciary,

27

but also to those performing judicial functions . . .”); *In re Barr*, 13 S.W.3d 525, 532 (Tex.Rev.Trib. 1998) (“In a civilized society, members of the judiciary are significant public figures whose authority necessarily reaches all points within their respective jurisdiction[s], if not beyond.”).

In support of its position that ARB members are “members of the judiciary”, HCAD relies primarily on this Court’s opinion in *Sledd v. Garrett*, 123 S.W.3d 592, (Tex.App.—Houston [14th Dist.] 2003, no pet.), which ruled the quasi-judicial functions performed by ARB members were protected by judicial immunity. *Id.* at 596. “Although the Panel Members are not judges, the doctrine of judicial immunity has been applied to quasi-judicial officials in certain circumstances.” *Id.* at 594. The fact that ARB members are entitled to one of the protections that judges receive, however, does not mean they are considered members of the judiciary in all respects. This is what makes the position *quasi*-judicial. To determine whether a specific provision applies, the Court must look at how the statute or doctrine relates to the functions of the ARB.

Explaining the application of judicial immunity to ARB members, this Court stated in *Sledd*, “Judicial immunity furthers the public interest in the administration of justice by allowing judicial officers to be free to act on their own convictions, without fear of personal liability.” *Id.* The primary concern of TUCA, on the other

hand, is very different. "The unemployment compensation law is remedial in nature and should be construed liberally to give effect to its beneficent purposes," which is "to provide compensation to those who become unemployed through no fault of their own." *Madisonville Consolidated Ind. Sch. Dist. v. Tex. Emp. Comm'n*, 821 S.W.2d 310, 311 – 312 (Tex.App.—Corpus Christi 1991, writ denied). HCAD offers no authority to support the proposition that the extension of exception from receipt of unemployment benefits to quasi-judicial officers would render them elected officials, members of a legislative body, or members of the judiciary for the purposes of TUCA.

## IV. The trial court erred in setting aside the TWC decisions on all issues other than whether the ARB members were in HCAD's employment because substantial evidence supports those decisions.

When a claimant files a claim for benefits, he names as his last work whichever person or entity for which he last performed any services prior to filing his initial claim, regardless of whether that work was performed in employment or as an independent contractor. In addition to ruling that the ARB members were in HCAD's employment, the TWC decisions also ruled the ARB members named the correct last employer and were qualified to receive benefits because they were discharged from the last work for reasons other than misconduct connected with the work. HCAD had the burden of proving these decisions were not supported by

29

substantial evidence but failed to provide any evidence or arguments whatsoever regarding these rulings. TWC's Motion for Summary Judgment shows substantial evidence supports these rulings. Accordingly, summary judgment should be entered in favor of Defendants.

**A. The ARB members filed valid claims for benefits.**

All of the decisions in this case ruled the claimants named the correct last work, either directly or by stating the claimant filed a valid claim. C.R. 509 – 607. TUCA states:

> When used in connection with an initial claim, "last work" and "person for whom the claimant last worked" refer to:
> (1) the last person for whom the claimant actually worked, if the claimant worked for that person for at least 30 hours during a week; or
> (2)  the employer, as defined by Subchapter C, Chapter 201, or by the unemployment law of any other state, for whom the claimant last worked.

Tex. Lab. Code Ann. § 208.002(a) (West Supp. 2014). The claimant's last work, then, is simply whichever person or entity for which the claimant last performed work prior to filing his initial claim regardless of whether that work was performed in employment or as an independent contractor.

The evidence shows that the claimants correctly named their last work when filing their initial claims. C.R. 509 – 606. All but one of the claimants last worked

for HCAD, and the claimant who worked elsewhere before filing her claim, Cynthia Spooner, correctly named the other entity as her last work. C.R. 601 – 606. Therefore, TWC decided they all filed valid claims. *Id.* HCAD had the burden of proving these decisions were unreasonable or not supported by substantial evidence. To carry this burden, HCAD would have had to show that each claimant worked for another employer after leaving the ARB and before filing his initial claim. However, HCAD failed to present any evidence or arguments on the issue whatsoever. *See id.* Because HCAD failed to carry its burden, the TWC decisions on the members' last work and validity of their claims should be affirmed.

### B. Because the claimants became unemployed through no fault of their own, TWC properly ruled they were qualified for benefits.

Each of the decision included in this case except those regarding claimants Reese Buggs and Cynthia Spooner also ruled that the claimant was not disqualified from receiving benefits because his discharge from HCAD was not for misconduct connected with the work. C.R. 509 – 607.   TUCA provides, in pertinent part:

> a)    An individual is disqualified for benefits if the individual was discharged for misconduct connected with the individual's last work.
> b)    Disqualification under this section continues until the individual has returned to employment and:
> (1)    worked for six weeks; or
> (2)    earned wages equal to six times the individual's benefit amount.

31

Tex. Lab. Code Ann. § 207.044 (West 2006 & Supp. 2014). TUCA then defines misconduct as:

> [M]ismanagement of a position of employment by action or inaction, neglect that jeopardizes the life of property of another intentional wrongdoing or malfeasance, intentional violation of a law, or violation of a policy or rule adopted to ensure the orderly work and the safety of employees.

Tex. Lab. Code Ann. § 201.012(a) (West 2006).

The claimants all became unemployed when no work was available on the ARB or they had served the maximum number of terms allowed by statute. C.R. 509 – 607. Because they were laid off and not discharged for misconduct connected with the work, the claimants are qualified to receive benefits. HCAD made no allegations whatsoever that the claimants committed misconduct. A lack of available work is precisely the type of situation for which the unemployment compensation trust fund was established. *See Madisonville Consolidated Ind. Sch. Dist.*, 821 S.W.2d at 311 – 312.

HCAD had the burden of not only proving the members were discharged for misconduct but of destroying any evidence to the contrary presented by the claimants and TWC. *Camacho*, 394 S.W.2d at 37. However, HCAD presented no evidence whatsoever on this subject. Because the TWC decisions ruling the members were qualified for benefits are supported by substantial evidence and

HCAD entirely failed to carry its burden of proving otherwise, the TWC decisions should be affirmed.

## PRAYER

The trial court's order should be reversed because it grants summary judgment and sets aside the TWC decisions on grounds HCAD did not raise. In addition, the TWC decisions should be upheld as a whole because they are reasonable and supported by substantial evidence. Therefore, Appellant Texas Workforce Commissions asks this Court reverse the trial court's order in its entirety and render judgment in favor of Appellant, or, in the alternative, that this Court reverse the trial court's ruling that the Appraisal Review Board members are not employees of the Harris County Appraisal District and remand the case for further proceedings on all other issues.

Respectfully submitted,

**GREG ABBOTT**
Attorney General of Texas

**DANIEL T. HODGE**
First Assistant Attorney General

**DAVID C. MATTAX**
Deputy Attorney General for Defense Litigation

**ROBERT O'KEEFE**
Division Chief,
Financial Litigation, Tax, and Charitable Trusts
Division

*/s/ Alison Andrews*
**ALISON ANDREWS**
Assistant Attorney General
Bar No. 24059381
Financial Litigation, Tax, and Charitable
Trusts Division
P.O. Box 12548
Austin, Texas 78711-2548
(512) 475-1747
(512) 478-4013 - FAX

**ATTORNEYS FOR APPELLANT**

## CERTIFICATE OF COMPLIANCE

This document complies with the typeface requirements of Tex. R. App. P. 9.4(e) because it has been prepared in a conventional typeface no smaller than 14-point for text and 12-point for footnotes. This document also complies with the word-count limitations of Tex. R. App. P. 9.4(i), if applicable, because it contains 7,113 words, excluding any parts exempted by Tex. R. App. P. 9.4(i)(1), as counted by the computer program used to prepare this document.

*/s/ Alison Andrews*
ALISON ANDREWS
Assistant Attorney General

## CERTIFICATE OF SERVICE

Pursuant to the Texas Rules of Appellate Procedure, the undersigned hereby certifies that on the 29th day of December, 2014, a true and correct copy of the

*Brief of Appellant Texas Workforce Commission* was mailed certified mail, return receipt requested to Attorney for HCAD.

                                */s/ Alison Andrews*
                                ALISON ANDREWS
                                Assistant Attorney General

# APPENDIX

# TAB 1

By: Elkins                                                    H.B. No. 982

A BILL TO BE ENTITLED

AN ACT

relating to the eligibility for unemployment compensation benefits of individuals who serve on the appraisal review board of an appraisal district.

BE IT ENACTED BY THE LEGISLATURE OF THE STATE OF TEXAS:

SECTION 1.  Subchapter C, Chapter 207, Labor Code, is amended by adding Section 207.0435 to read as follows:

Sec. 207.0435.  APPRAISAL REVIEW BOARD MEMBERS.  Benefits are not payable to an individual based on services performed by the individual as a member of the appraisal review board of an appraisal district established under Section 6.41, Tax Code.

SECTION 2.  The change in law made by this Act applies only to a claim for unemployment compensation benefits filed with the Texas Workforce Commission on or after the effective date of this Act.  A claim filed before the effective date of this Act is governed by the law in effect on the date the claim was filed, and the former law is continued in effect for that purpose.

SECTION 3.  This Act takes effect September 1, 2013.

**TAB 2**

| Employment and Training Administration Advisory System U.S. Department of Labor Washington, D.C. 20210 | CLASSIFICATION UI Legislation and Federal Programs |
|---|---|
| | CORRESPONDENCE SYMBOL DL/UIOPS |
| | DATE August 10, 2007 |

**ADVISORY:**     UNEMPLOYMENT INSURANCE PROGRAM LETTER NO. 27-07

**TO:**     STATE WORKFORCE AGENCIES

**FROM:**     EMILY STOVER DeROCCO
Assistant Secretary

**SUBJECT:**     Required Submission of Unemployment Compensation Materials Using Form MA 8-7.

1. Purpose. To inform the states of the revised requirements for submitting unemployment compensation (UC) legislative and other materials using the Form MA 8-7.

2. References. Section 303(a)(6) of the Social Security Act (SSA); the Federal Unemployment Tax Act (FUTA); 20 CFR 601.3 as revised by 71 Federal Register 35511 (June 21, 2006); 20 CFR 609.1(d)(1), 614.1(d)(1), and 617.52(c)(1).

3. Background. The Form MA 8-7 has been used by states for many years to submit certain UC materials to the U.S. Department of Labor. The requirements pertaining to the MA 8-7 were previously found in Part I, Section 1215, of the Employment Security Manual, which is rescinded and replaced by this UIPL. OMB has approved the use of the MA 8-7 form through 06/30/2010.

The new reporting requirements are significantly reduced and are now aimed primarily at ensuring states provide materials necessary for assuring Federal law requirements are being met. States will no longer be required to submit such materials as research reports, training materials, or agreements between the state UC agency and other agencies, although the Department reserves the right to obtain these materials upon request. Also, the new requirements provide that, in certain limited cases, information that is otherwise readily available to the Department need not be submitted.

| RESCISSIONS Employment Security Manual, Part I, Section 1215; UIPL 7-97 | EXPIRATION DATE None |
|---|---|

4. <u>Authority</u>. Section 303(a)(6), SSA, requires, as a condition of receiving administrative grants, that state law contains provision for the "making of such reports, in such form and containing such information, as the Secretary of Labor may from time to time require, and compliance with such provisions as the Secretary of Labor may from time to time find necessary to ensure the correctness and verification of such reports." Departmental regulations at 20 CFR 601.3 in part implement this requirement by requiring the submission of "all relevant state materials, such as statutes, executive and administrative orders, legal opinions, rules, regulations, interpretations, court opinions, etc. . . ." Also, the regulations for the UC for Federal Civilian Employees (UCFE) program at 20 CFR 609.1(d)(1) and for the UC for Ex-Service Members (UCX) program at 20 CFR 614.1(d)(1) require submission of certain documents to assure that states are properly administering these programs. The Trade Adjustment Assistance (which includes Trade Readjustment Allowances) program (TAA/TRA) regulations provide similar requirements at 20 CFR 617.52(c)(1).

The MA 8-7 is the mechanism for implementing these submittal requirements, the purpose of which is to provide the Secretary with sufficient information to determine whether (a) employers in a state qualify for tax credits under the FUTA; (b) the state meets the requirements for obtaining administrative grants under Title III, SSA; and (c) the state is fulfilling its obligations under Federal UC programs.

Note: Disaster Unemployment Assistance (DUA) appeals material should not be submitted using the MA 8-7. The state agencies are to submit a copy of any appeal decision issued to the appropriate Regional Administrator (RA). The RA will then submit these appeal decisions as appropriate to the National Office. See 20 CFR 625.10(b)(2).

5. <u>Action Required</u>. State administrators should distribute this advisory to appropriate staff, including appellate staff (to assure submission of appeals decisions as required) and attorney general staff (if these staff are responsible for submitting required court cases).

6. <u>Inquiries</u>. Please direct inquiries to the appropriate Regional Office.

7. <u>Attachments</u>.

I. Form MA 8-7
II. Instructions for Completing the Form MA 8-7



| Transmittal for Unemployment Insurance Materials | US. Department of Labor Employment and Training Administration |  |

OMB Approval No. 1205-0222
Expires: 06/30/2010

| To: U.S. Department of Labor Employment and Training Administration Office of Workforce Security Room S-4231 200 Constitution Ave., N.W. Washington, D.C. 20210 | From: (State) |

**Check Appropriate Box(es)**

[ ] **Statutory Material - Proposed and Enacted Legislation**

[ ] **Rules and Regulations - Proposed and Final**

[ ] **Official Interpretations**

[ ] **Decisions and Orders Issued by States Courts, including material related to Consent Orders**

[ ] **Precedential Administrative Decisions**

[ ] **Appellate Decisions in Federal UC Programs**

**Comments:**

| Signature of Designated Official | I Typed Name and Title | I Date |
| --- | --- | --- |
| | | |

Persons are not required to respond to this collection of information unless it displays a currently valid OMB control number. Respondent's obligation to reply to these reporting requirements are mandatory (20 CFR 6012 and 601.3). Public reporting burden for this collection of information is estimated to average one minute per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. Send comments regarding this burden estimate or any other aspect of this collection of information, including suggestions for reducing this burden, to the U.S. Department of Labor, Office of Workforce Security, Room S4231, 200 Constitution Avenue, N.W. Washington, D.C. 20210 (Paperwork Reduction Project 1205-0222).

Form: MA 8-7



# Instructions for Completing the Form MA 8-7

1. Material to be Submitted.

    a. <u>Statutory Material – Proposed and Enacted Legislation</u>.  Amendments pertaining to the establishment and operation of the UC law and UC program are required to be submitted.  For purposes of conformity, the state's UC law includes statutes that affect the administration and the interpretation of the state's UC law, even though the statute may not be part of the state's UC code.  For example, if an amendment made to a state law other than the UC code classifies a worker as an employee or independent contractor for UC purposes, the legislation is part of the state's UC law and must be submitted for review.

Submitting proposed legislation assists the Department in providing early assistance to the states in identifying and preventing issues.  States should submit proposed legislation as soon as it becomes available and provide comment on the proposal's chance for passage with a request for an expedited review and comment, if appropriate.

*Exception:*  Introduced and enacted state legislation are available to the Department through an automated legislative reporting service for all states except Puerto Rico and the Virgin Islands.  States with information that is made available through this reporting service are not required to submit introduced and enacted legislation, although states are encouraged to advise the Department as soon as possible of bills likely to be enacted.  Note this exception does not pertain to amendments to a bill after it has been introduced.  These amendments must be submitted.

    b. <u>Rules and Regulations – Proposed and Final</u>.  All proposed and final rules and regulations that implement or interpret the UC law or other laws affecting the UC program must be submitted.  These rules and regulations may pertain to matters such as covered employment, employer records and required reports, contributions, benefit eligibility and interpretation, and claims filing and processing.

As in the case of statutory amendments, submitting proposed rules for Departmental review assures any problems are identified and resolved early in the rulemaking process.

*Exception:*  As is the case with state legislation, proposed and final rules are generally available to the Department through an automated legislative reporting service for all states except Puerto Rico and the Virgin Islands.  States with information that is made available through this reporting service are not required to submit proposed and final rules.

    c. <u>Official Interpretations</u>.  All official interpretations of any provision of the UC law made by representatives of the state agency or other state agency must be submitted for review.  These include administrative policy statements concerning the interpretation of any



provision of the UC law, which may include guidance to field staff, any letters giving opinions on questions of general application of the provision of state laws or regulations to third parties, as well as all opinions of the state Attorney General expressing the official interpretation of any state UC statute, amendment or regulation.

d. <u>Decisions and Orders Issued by State Courts, including Material Related to Consent Orders</u>. All decisions and orders issued by state courts involving UC benefits and taxes must be submitted for review to ensure that interpretation of state law does not conflict with Federal law. Copies of the administrative decision reviewed are to be included in the submission. All court cases should be submitted, even if the state determines these are not precedent-setting.

States are also to submit proposed consent orders. As in the case of proposed laws and regulations, reviewing these proposed orders allows the Department to identify and assist in resolving any issues under Federal law.

*Exception:* States should not submit decisions or orders that are issued without an opinion or analysis. These include cases where a court dismisses an appeal for a party's failure to pursue the case or affirms an administrative ruling without decision.

Federal court matters are not covered under this submittal requirement as they pertain to Federal interpretations of Federal law. States should immediately advise the Department when a matter involving Federal UC law, including the conformity provisions of FUTA and the SSA, reaches Federal court so that the Department may determine whether Federal participation in the case is desirable or necessary.

e. <u>Precedential Administrative Decisions</u>. The decisions issued by the first and second level appeals authorities that are considered precedent-setting must be submitted so that the Department may ascertain whether the interpretation of state law is consistent with Federal UC law.

f. <u>Appellate Decisions in Federal UC programs</u> . Decisions pertaining to the UCFE, UCX, and TAA/TRA programs <u>that are based on an interpretation of the Federal laws or regulations</u> must be submitted; decisions based on state law need <u>not</u> be submitted. For example, a state need not submit a decision applying a state law's "able and available" provisions pertaining to these programs.

It is expected that very few UCFE and UCX decisions will be submitted since most issues that are adjudicated for UCFE/UCX benefits are based on the states' UI laws, including separation issues for UCFE; states do not adjudicate separations from military service for UCX claims.

When it is appropriate to submit a decision based on an interpretation of Federal laws or regulations, in all cases where second level decisions are submitted, include the lower authority decision that was reviewed.

Note: Disaster Unemployment Assistance (DUA) appeals material should not be submitted using the MA 8-7. The state agencies are to submit a copy of any appeal decision issued to the appropriate Regional Administrator (RA). The RA will then submit these appeal decisions as appropriate to the National Office. See 20 CFR 625.10(b)(2).

The Department reserves the right to obtain additional information, as needed, for these Federal UC programs.

2. Submission Requirements.

   a. Use of separate forms. To assure that information related to Federal UC programs (UCFE, UCX, and TAA/TRA) is properly routed, material relating to these programs should not be included with material relating to the administration of the state's law. Otherwise, material may be bundled together.

   b. Fill out the Form MA 8-7 completely. Fill in the "From" section of the form, identify the type of material that is being submitted, and sign the form. If appropriate, briefly describe the material in the comments section of the form.

   c. Time frame for Submission. The MA 8-7 is not required to be submitted on a specific time frame. Instead, it is to be used only when the state has material to submit. However, states should submit material promptly to allow for Departmental review prior to the expiration of time frames for appeal or legislative action.

   d. Address. The address for submittal is preprinted on the MA 8-7 as follows:

   U.S. Department of Labor
   Employment and Training Administration
   Office of Workforce Security
   Room S-4231
   200 Constitution Avenue N.W.
   Washington, DC 20210



**TAB 3**

By: Patrick                                                    S.B. No. 432

A BILL TO BE ENTITLED

AN ACT

relating to the eligibility for unemployment compensation benefits of individuals who serve on the appraisal review board of an appraisal district.

BE IT ENACTED BY THE LEGISLATURE OF THE STATE OF TEXAS:

SECTION 1.  Subchapter C, Chapter 207, Labor Code, is amended by adding Section 207.0435 to read as follows:

Sec. 207.0435.  APPRAISAL REVIEW BOARD MEMBERS.  Benefits are not payable to an individual based on services performed by the individual as a member of the appraisal review board of an appraisal district established under Section 6.41, Tax Code.

SECTION 2.  The change in law made by this Act applies only to a claim for unemployment compensation benefits filed with the Texas Workforce Commission on or after the effective date of this Act.  A claim filed before the effective date of this Act is governed by the law in effect on the date the claim was filed, and the former law is continued in effect for that purpose.

SECTION 3.  This Act takes effect September 1, 2013.

**TAB 4**

# HOUSE JOURNAL

## EIGHTY-THIRD LEGISLATURE, REGULAR SESSION

### PROCEEDINGS

SIXTY-THIRD DAY — THURSDAY, MAY 2, 2013

The house met at 2 p.m. and was called to order by the speaker pro tempore.

The roll of the house was called and a quorum was announced present (Record 436).

Present — Mr. Speaker; Allen; Alonzo; Alvarado; Anchia; Anderson; Ashby; Aycock; Bell; Bohac; Bonnen, D.; Bonnen, G.; Branch; Burkett; Burnam; Button; Callegari; Canales; Capriglione; Carter; Clardy; Coleman; Collier; Cook; Cortez; Craddick; Creighton; Crownover; Dale; Darby; Davis, J.; Davis, S.; Davis, Y.; Deshotel; Dukes; Dutton; Eiland; Elkins; Fallon; Farias; Farney; Farrar; Fletcher; Flynn; Frank; Frullo; Geren; Giddings; Goldman; Gonzales; González, M.; Gonzalez, N.; Gooden; Guerra; Guillen; Gutierrez; Harless; Harper-Brown; Hernandez Luna; Herrero; Hilderbran; Howard; Huberty; Hughes; Hunter; Isaac; Johnson; Kacal; Keffer; King, K.; King, P.; King, S.; King, T.; Kleinschmidt; Klick; Kolkhorst; Krause; Kuempel; Larson; Laubenberg; Lavender; Leach; Lewis; Longoria; Lozano; Lucio; Márquez; Martinez; Martinez Fischer; McClendon; Menéndez; Miles; Miller, D.; Miller, R.; Moody; Morrison; Muñoz; Murphy; Naishtat; Nevárez; Orr; Otto; Paddie; Parker; Patrick; Perez; Perry; Phillips; Pickett; Pitts; Price; Raney; Ratliff; Raymond; Reynolds; Riddle; Ritter; Rodriguez, E.; Rodriguez, J.; Rose; Sanford; Schaefer; Sheets; Sheffield, J.; Sheffield, R.; Simmons; Simpson; Smith; Smithee; Springer; Stephenson; Stickland; Strama; Taylor; Thompson, E.; Thompson, S.; Toth; Turner, C.; Turner, E.S.; Turner, S.; Villalba; Villarreal; Vo; Walle; White; Workman; Wu; Zedler; Zerwas.

Absent, Excused — Oliveira.

### LEAVES OF ABSENCE GRANTED

On motion of Representative S. Thompson and by unanimous consent, all members who were granted leaves of absence on the previous legislative day were granted leaves for this legislative day.

### RULES SUSPENDED

Representative S. Thompson moved to suspend all necessary rules to take up and consider at this time, on third reading and final passage, the bills on the local, consent, and resolutions calendar which were considered on the previous legislative day.

The motion prevailed.

## MOTION FOR ONE RECORD VOTE

On motion of Representative S. Thompson and by unanimous consent, the house agreed to use the first record vote taken for all those bills on the local, consent, and resolutions calendar that require a record vote on third reading and final passage, with the understanding that a member may record an individual vote on any bill with the journal clerk.

## LOCAL, CONSENT, AND RESOLUTIONS CALENDAR
## THIRD READING

The following bills which were considered on second reading on the previous legislative day on the local, consent, and resolutions calendar were laid before the house, read third time, and passed by the following record vote (members registering votes and the results of the vote are shown following bill number).

(Record 437): 147 Yeas, 0 Nays, 2 Present, not voting.

Yeas — Allen; Alonzo; Alvarado; Anchia; Anderson; Ashby; Aycock; Bell; Bohac; Bonnen, G.; Branch; Burkett; Burnam; Button; Callegari; Canales; Capriglione; Carter; Clardy; Coleman; Collier; Cook; Cortez; Craddick; Creighton; Crownover; Dale; Darby; Davis, J.; Davis, S.; Davis, Y.; Deshotel; Dukes; Dutton; Eiland; Elkins; Fallon; Farias; Farney; Farrar; Fletcher; Flynn; Frank; Frullo; Geren; Giddings; Goldman; Gonzales; González, M.; Gonzalez, N.; Gooden; Guerra; Guillen; Gutierrez; Harless; Harper-Brown; Hernandez Luna; Herrero; Hilderbran; Howard; Huberty; Hughes; Hunter; Isaac; Johnson; Kacal; Keffer; King, K.; King, P.; King, S.; King, T.; Kleinschmidt; Klick; Kolkhorst; Krause; Kuempel; Larson; Laubenberg; Lavender; Leach; Lewis; Longoria; Lozano; Lucio; Márquez; Martinez; Martinez Fischer; McClendon; Menéndez; Miles; Miller, D.; Miller, R.; Moody; Morrison; Muñoz; Murphy; Naishtat; Nevárez; Orr; Otto; Paddie; Parker; Patrick; Perez; Perry; Phillips; Pickett; Pitts; Price; Raney; Ratliff; Raymond; Reynolds; Riddle; Ritter; Rodriguez, E.; Rodriguez, J.; Rose; Sanford; Schaefer; Sheets; Sheffield, J.; Sheffield, R.; Simmons; Simpson; Smith; Smithee; Springer; Stephenson; Stickland; Strama; Taylor; Thompson, E.; Thompson, S.; Toth; Turner, C.; Turner, E.S.; Turner, S.; Villalba; Villarreal; Vo; Walle; White; Workman; Wu; Zedler; Zerwas.

Present, not voting — Mr. Speaker; Bonnen, D.(C).

Absent, Excused — Oliveira.

**SB 162**

**SB 166**

**SB 274**

**SB 276**  (Capriglione, Sanford, Schaefer, and Simpson - no) (143 - 4 - 2)

**SB 649**  (Simpson - no) (146 - 1 - 2)

**SB 748**

**SB 820**

**SB 852**

**SB 905**

**SB 965**

**HB 138**   (Anderson, Flynn, Krause, Schaefer, Simpson, Stickland, and Zedler - no) (140 - 7 - 2)

**SB 902**

**SB 181**

**HB 274**   (Anderson, Capriglione, Flynn, and Schaefer - no) (143 - 4 - 2)

**HB 294**   (Anderson, Flynn, Frullo, Goldman, Hunter, Kleinschmidt, Kuempel, Lavender, Leach, Parker, Perry, Schaefer, Simmons, Simpson, and Springer - no) (132 - 15 - 2)

**HB 340**   (Anderson, Flynn, and Zedler - no) (144 - 3 - 2)

**SB 265**   (Krause - no) (146 - 1 - 2)

**HB 396**   (Anderson, Flynn, Simpson, and Zedler - no) (143 - 4 - 2)

**SB 1041**   (Anderson, Flynn, Krause, Stickland, and Zedler - no) (142 - 5 - 2)

**SB 334**

**HB 693**   (Krause and Stickland - no) (145 - 2 - 2)

**HB 746**

**HB 796**   (Anderson, Burkett, Capriglione, Flynn, Krause, Lavender, Perry, Phillips, Sanford, Schaefer, Simpson, Stickland, and Zedler - no) (134 - 13 - 2)

**HB 842**

**HB 843**

**HB 894**

**HB 932**

**SB 412**   (Anderson, Flynn, Krause, Stickland, and Zedler - no) (142 - 5 - 2)

**SB 458**

**HB 1018**   (Capriglione, Phillips, Sanford, Schaefer, and Simpson - no) (142 - 5 - 2)

**HB 1020**

**HB 1044**   (Anderson, Capriglione, Flynn, Krause, Sanford, Schaefer, Simpson, Stickland, and Zedler - no) (138 - 8 - 2)

**SB 506**

**HB 1185**   (Krause, Schaefer, and Springer - no) (144 - 3 - 2)

**HB 1198**   (Krause, Stickland, Taylor, and E. S. Turner - no) (143 - 4 - 2)

**SB 365**

**SB 611**

**HB 1224**

**HB 1249** (Springer - no) (146 - 1 - 2)

**HB 1354**

**HB 1355**

**HB 1442**

**HB 1454** (Krause, Schaefer, Simpson, and Stickland - no) (143 - 4 - 2)

**HB 1458**

**HB 1472**

**HB 1492**

**HB 1506**

**HB 1520**

**SB 595** (Anderson, Flynn, and Zedler - no) (144 - 3 - 2)

**HB 1563** (Anderson, Capriglione, Flynn, Schaefer, Simpson, and Zedler - no) (141 - 6 - 2)

**HB 1586**

**HB 1593**

**HB 1594** (Taylor - no) (146 - 1 - 2)

**HB 1632**

**HB 1678** (Krause - no) (146 - 1 - 2)

**SB 795**

**SB 777**

**SB 866**

**HB 1781**

**HB 1800** (Taylor - no) (146 - 1 - 2)

**HB 1801** (Taylor - no) (146 - 1 - 2)

**SB 366**

**HB 1874**

**HB 1875**

**HB 1888** (Anderson, Flynn, Krause, Sanford, Schaefer, Simpson, Stickland, E. S. Turner, and Zedler - no) (138 - 9 - 2)

**HB 1895**

**SB 411**

**SB 330**

**SB 849**

**HB 1947**

**SB 972**

**SB 466** (Schaefer and Simpson - no) (145 - 2 - 2)

**HB 1971** (Anderson and Flynn - no) (145 - 2 - 2)

**HB 1982** (Schaefer and Simpson - no) (145 - 2 - 2)

**SB 920**

**HB 2000** (Schaefer and Simpson - no) (145 - 2 - 2)

**HB 2028**

**HB 2029**

**HB 2055**

**HB 2099** (Schaefer - no) (146 - 1 - 2)

**HB 2112**

**HB 2135**

**HB 2155**

**HB 2204** (Krause and Stickland - no) (145 - 2 - 2)

**HB 2293**

**HB 2312** (Schaefer - no) (146 - 1 - 2)

**HB 2318**

**HB 2356**

**HB 2362**

**HB 2407** (Lavender - no) (146 - 1 - 2)

**HB 2409**

**HB 2424**

**HB 2448** (Schaefer - no) (146 - 1 - 2)

**HB 2474** (Taylor - no) (146 - 1 - 2)

**HB 2478** (Anderson and Flynn - no) (145 - 2 - 2)

**HB 2482** (Anderson, Flynn, Schaefer, and Simpson - no) (143 - 4 - 2)

**HB 2537** (Krause, Schaefer, and Simpson - no) (144 - 3 - 2)

**HB 2549**

**HB 2550** (Goldman, Leach, R. Sheffield, Simmons, and Springer - no) (142 - 5 - 2)

**HB 2580** (Capriglione, Harless, Schaefer, and Simpson - no) (143 - 4 - 2)

**SB 655**

**HB 2610** (Schaefer and Simpson - no) (145 - 2 - 2)

**HB 2619**

**HB 2621**

**HB 2645** (Schaefer and Simpson - no) (145 - 2 - 2)

**HB 2688**

**HB 2704**

**HB 2718** (Capriglione, Goldman, Hunter, Krause, Kleinschmidt, Lavender, Leach, Parker, Perry, Sanford, Schaefer, Simmons, Simpson, Springer, Stickland, and Taylor - no) (131 - 16 - 2)

**SB 1489**  (Capriglione, Goldman, Isaac, Schaefer, Simmons, Simpson, and Taylor - no) (140 - 7 - 2)

**HB 2749**

**HB 2766**

**HB 2806** (Schaefer and Simpson - no) (145 - 2 - 2)

**HB 2912**

**HB 2913**

**HB 2935** (Schaefer and Simpson - no) (145 - 2 - 2)

**HB 2947**

**HB 3028**

**HB 3063** (Simpson - no) (146 - 1 - 2)

**HB 3066** (Simpson - no) (146 - 1 - 2)

**HB 3067** (Simpson - no) (146 - 1 - 2)

**HB 3097**

**HB 3125** (Simpson - no) (146 - 1 - 2)

**HB 3137**

**HB 3178**

**HB 3209** (Krause, R. Sheffield, Stickland, and Taylor - no) (143 - 4 - 2)

**HB 3212** (Anderson, Capriglione, Flynn, and Schaefer - no) (143 - 4 - 2)

**HB 3256** (Simpson - no) (146 - 1 - 2)

**SB 1026**

**HB 3357**

**HB 3397**

**HB 3412**

**HB 3413**

**HB 3422**

**HB 3483** (Simpson and Springer - no) (145 - 2 - 2)

**HB 3511**

**HB 3523** (Schaefer and Simpson - no) (145 - 2 - 2)

**HB 3662**

**HB 3677** (Krause - no) (146 - 1 - 2)

**HB 3729** (Krause and Stickland - no) (145 - 2 - 2)

**HB 3748** (Burkett, Capriglione, Frullo, Goldman, Gonzales, Harper-Brown, Hunter, Krause, Kleinschmidt, Kuempel, Lavender, Leach, Murphy, Otto, Parker, Perry, Price, Riddle, Sanford, Schaefer, Simmons, Simpson, Springer, E. S. Turner, and Zedler - no) (122 - 25 - 2)

**HB 3756** (Anderson, Flynn, and Zedler - no) (144 - 3 - 2)

**HB 3764**

**HB 3787**

**HB 3795** (Capriglione, Sanford, Schaefer, and Simpson - no) (143 - 4 - 2)

**HB 3798**

**HB 3813** (Sanford and Simpson - no) (145 - 2 - 2)

**SB 1093**

**HB 3874**

**HB 3875**

**HB 3905**

**HB 3925**

**SB 471**

**SB 686**

**SB 733**

**HB 154**

**HB 339**

**HB 343** (Anderson, Flynn, Krause, Simpson, and Stickland - no) (142 - 5 - 2)

**HB 367** (Sanford, Schaefer, and Simpson - no) (144 - 3 - 2)

**HB 438** (Anderson, Flynn, and Phillips - no) (144 - 3 - 2)

**HB 655**

**HB 826**

**HB 1147**

**HB 1501** (Simpson - no) (146 - 1 - 2)

**HB 1544** (Schaefer and Simpson - no) (145 - 2 - 2)

**HB 1662**

**HB 1692** (Capriglione, Lavender, Perry, Sanford, Schaefer, R. Sheffield, and Springer - no) (140 - 7 - 2)

**HB 1724**

**HB 1846** (Anderson, Flynn, Krause, Simpson, and Stickland - no) (142 - 5 - 2)

**SB 1537**

**HB 2094** (Anderson, Capriglione, Flynn, Krause, Sanford, Schaefer, Simpson, Stickland, and Zedler - no) (138 - 9 - 2)

**HB 2111** (Anderson, Flynn, Schaefer, and Zedler - no) (143 - 4 - 2)

**SB 1236**

**HB 2380**

**HB 2388**

**HB 2485**

**HB 2501** (Schaefer - no) (146 - 1 - 2)

**HB 2509** (Sanford and Simpson - no) (145 - 2 - 2)

**HB 2562**

**HB 2607**

**HB 2662** (Simpson - no) (146 - 1 - 2)

**HB 2772** (Anderson, Flynn, Frullo, Goldman, Krause, Kuempel, Lavender, Parker, Schaefer, Simmons, Simpson, Springer, and Stickland - no) (134 - 13 - 2)

**HB 2825**

**HB 2874**

**HB 2883** (Schaefer and Simpson - no) (145 - 2 - 2)

**HB 3070**

**HB 3085** (Burkett, Capriglione, Frullo, Goldman, Hunter, Kleinschmidt, Kuempel, Lavender, Leach, Murphy, Parker, Schaefer, R. Sheffield, Simmons, Simpson, and Stickland - no) (131 - 16 - 2)

**HB 3096**

**HB 3106**

**HB 3296** (Schaefer and Simpson - no) (145 - 2 - 2)

**HB 3307**

**SB 1019**

**HB 3433** (Capriglione, Schaefer, and Simpson - no) (144 - 3 - 2)

**HB 3567** (Schaefer and Simpson - no) (145 - 2 - 2)

**HB 3578** (Schaefer and Simpson - no) (145 - 2 - 2)

**HB 3589** (Simpson - no) (146 - 1 - 2)

**HB 3604** (Anderson and Schaefer - no) (145 - 2 - 2)

**HB 3605** (Anderson - no) (146 - 1 - 2)

**HB 3613**

**HB 3659**

**HB 3739** (Schaefer and Simpson - no) (145 - 2 - 2)

**HB 3761** (Anderson and Simpson - no) (145 - 2 - 2)

**HB 3762** (Krause - no) (146 - 1 - 2)

**HB 3800**

**HB 3896** (Simpson - no) (146 - 1 - 2)

**HB 3935**

**SB 901**

**HB 2454**

**HB 2620** (Harless, Schaefer, and Simpson - no) (144 - 3 - 2)

**HB 2025**

**SB 1157**

The following resolutions which were laid out on the previous legislative day on the local, consent, and resolutions calendar were adopted by the above referenced vote (Record 437): 147 Yeas, 0 Nays, 2 Present, not voting (members registering votes and the results of the vote are shown following bill number).

**HCR 51**

**HCR 62**

**HCR 68**

**HCR 82**

**HCR 89** (Schaefer and Simpson - no) (145 - 2 - 2)

**HCR 59**

**HCR 96**

**HR 964**

(Oliveira now present)

### BILLS AND RESOLUTIONS SIGNED BY THE SPEAKER

Notice was given at this time that the speaker had signed bills and resolutions in the presence of the house (see the addendum to the daily journal, Signed by the Speaker, Senate List No. 20).

### LEAVE OF ABSENCE GRANTED

The following member was granted leave of absence temporarily for today to attend a meeting of the Conference Committee on **SB 1**:

Pitts on motion of Geren.

## GENERAL STATE CALENDAR
## SENATE BILLS
## THIRD READING

The following bills were laid before the house and read third time:

### SB 885 ON THIRD READING
### (Harper-Brown - House Sponsor)

**SB 885**, A bill to be entitled An Act relating to notice of utility rate increases.

**SB 885** was passed by (Record 438): 147 Yeas, 0 Nays, 2 Present, not voting.

Yeas — Allen; Alonzo; Alvarado; Anchia; Anderson; Ashby; Aycock; Bell; Bohac; Bonnen, G.; Branch; Burkett; Burnam; Button; Callegari; Canales; Capriglione; Carter; Clardy; Coleman; Collier; Cook; Cortez; Craddick; Creighton; Crownover; Dale; Darby; Davis, J.; Davis, S.; Davis, Y.; Deshotel; Dukes; Dutton; Eiland; Elkins; Fallon; Farias; Farney; Farrar; Fletcher; Flynn; Frank; Frullo; Geren; Giddings; Goldman; Gonzales; González, M.; Gonzalez, N.; Gooden; Guerra; Guillen; Gutierrez; Harless; Harper-Brown; Hernandez Luna; Herrero; Hilderbran; Howard; Huberty; Hughes; Hunter; Isaac; Johnson; Kacal; Keffer; King, K.; King, P.; King, S.; King, T.; Kleinschmidt; Klick; Kolkhorst; Krause; Kuempel; Larson; Laubenberg; Lavender; Leach; Lewis; Longoria; Lozano; Lucio; Márquez; Martinez; Martinez Fischer; McClendon; Menéndez; Miles; Miller, D.; Miller, R.; Moody; Morrison; Muñoz; Murphy; Naishtat; Nevárez; Oliveira; Orr; Otto; Paddie; Parker; Patrick; Perez; Perry; Phillips; Pickett; Price; Raney; Ratliff; Raymond; Reynolds; Riddle; Ritter; Rodriguez, E.; Rodriguez, J.; Rose; Sanford; Schaefer; Sheets; Sheffield, J.; Sheffield, R.; Simmons; Simpson; Smith; Smithee; Springer; Stephenson; Stickland; Strama; Taylor; Thompson, E.; Thompson, S.; Toth; Turner, C.; Turner, E.S.; Turner, S.; Villalba; Villarreal; Vo; Walle; White; Workman; Wu; Zedler; Zerwas.

Present, not voting — Mr. Speaker; Bonnen, D.(C).

Absent, Excused, Committee Meeting — Pitts.

### SB 971 ON THIRD READING
### (Deshotel - House Sponsor)

**SB 971**, A bill to be entitled An Act relating to the purposes, designation, and funding of a transportation reinvestment zone for port projects; providing authority to issue bonds; authorizing an assessment.

**SB 971** was passed by (Record 439): 101 Yeas, 44 Nays, 2 Present, not voting.

Yeas — Allen; Alonzo; Alvarado; Anchia; Anderson; Ashby; Aycock; Branch; Burkett; Burnam; Button; Callegari; Canales; Clardy; Coleman; Collier; Cook; Dale; Darby; Davis, J.; Davis, Y.; Deshotel; Dukes; Dutton; Eiland; Farias; Farney; Farrar; Geren; Giddings; Gonzales; González, M.; Gonzalez, N.; Guerra;

Guillen; Gutierrez; Hernandez Luna; Herrero; Howard; Huberty; Hunter; Johnson; Kacal; Keffer; King, K.; King, P.; King, T.; Kleinschmidt; Kolkhorst; Kuempel; Longoria; Lozano; Lucio; Márquez; Martinez; Martinez Fischer; McClendon; Menéndez; Miles; Miller, D.; Miller, R.; Moody; Morrison; Muñoz; Naishtat; Nevárez; Oliveira; Orr; Otto; Paddie; Patrick; Perez; Phillips; Pickett; Raney; Ratliff; Raymond; Reynolds; Riddle; Ritter; Rodriguez, E.; Rodriguez, J.; Rose; Sheffield, J.; Sheffield, R.; Simmons; Simpson; Smith; Stephenson; Strama; Thompson, E.; Thompson, S.; Turner, C.; Turner, S.; Villalba; Villarreal; Vo; Walle; Workman; Wu; Zerwas.

Nays — Bell; Bohac; Bonnen, G.; Capriglione; Carter; Craddick; Creighton; Crownover; Davis, S.; Elkins; Fallon; Fletcher; Flynn; Frank; Frullo; Goldman; Gooden; Harless; Harper-Brown; Hilderbran; Hughes; Isaac; King, S.; Klick; Krause; Larson; Laubenberg; Lavender; Leach; Lewis; Murphy; Parker; Perry; Price; Sanford; Schaefer; Sheets; Springer; Stickland; Taylor; Toth; Turner, E.S.; White; Zedler.

Present, not voting — Mr. Speaker; Bonnen, D.(C).

Absent, Excused, Committee Meeting — Pitts.

Absent — Cortez; Smithee.

## STATEMENTS OF VOTE

I was shown voting no on Record No. 439. I intended to vote yes.

G. Bonnen

I was shown voting yes on Record No. 439. I intended to vote no.

Button

I was shown voting yes on Record No. 439. I intended to vote no.

Dale

I was shown voting yes on Record No. 439. I intended to vote no.

Gonzales

I was shown voting yes on Record No. 439. I intended to vote no.

Phillips

## SB 349 ON THIRD READING
### (Creighton - House Sponsor)

**SB 349**, A bill to be entitled An Act relating to standards for power lines.

**SB 349** was passed by (Record 440): 147 Yeas, 0 Nays, 2 Present, not voting.

Yeas — Allen; Alonzo; Alvarado; Anchia; Anderson; Ashby; Aycock; Bell; Bohac; Bonnen, G.; Branch; Burkett; Burnam; Button; Callegari; Canales; Capriglione; Carter; Clardy; Coleman; Collier; Cook; Cortez; Craddick; Creighton; Crownover; Dale; Darby; Davis, J.; Davis, S.; Davis, Y.; Deshotel; Dukes; Dutton; Eiland; Elkins; Fallon; Farias; Farney; Farrar; Fletcher; Flynn;

Frank; Frullo; Geren; Giddings; Goldman; Gonzales; González, M.; Gonzalez, N.; Gooden; Guerra; Guillen; Gutierrez; Harless; Harper-Brown; Hernandez Luna; Herrero; Hilderbran; Howard; Huberty; Hughes; Hunter; Isaac; Johnson; Kacal; Keffer; King, K.; King, P.; King, S.; King, T.; Kleinschmidt; Klick; Kolkhorst; Krause; Kuempel; Larson; Laubenberg; Lavender; Leach; Lewis; Longoria; Lozano; Lucio; Márquez; Martinez; Martinez Fischer; McClendon; Menéndez; Miles; Miller, D.; Miller, R.; Moody; Morrison; Muñoz; Murphy; Naishtat; Nevárez; Oliveira; Orr; Otto; Paddie; Parker; Patrick; Perez; Perry; Phillips; Pickett; Price; Raney; Ratliff; Raymond; Reynolds; Riddle; Ritter; Rodriguez, E.; Rodriguez, J.; Rose; Sanford; Schaefer; Sheets; Sheffield, J.; Sheffield, R.; Simmons; Simpson; Smith; Smithee; Springer; Stephenson; Stickland; Strama; Taylor; Thompson, E.; Thompson, S.; Toth; Turner, C.; Turner, E.S.; Turner, S.; Villalba; Villarreal; Vo; Walle; White; Workman; Wu; Zedler; Zerwas.

Present, not voting — Mr. Speaker; Bonnen, D.(C).

Absent, Excused, Committee Meeting — Pitts.

### GENERAL STATE CALENDAR
### HOUSE BILLS
### THIRD READING

The following bills were laid before the house and read third time:

### HB 590 ON THIRD READING
### (by Naishtat)

**HB 590**, A bill to be entitled An Act relating to determining a child's eligibility for a school district's special education program on the basis of a visual impairment.

**HB 590** was passed by (Record 441): 80 Yeas, 63 Nays, 2 Present, not voting.

Yeas — Allen; Alonzo; Alvarado; Anchia; Aycock; Bonnen, G.; Canales; Collier; Cortez; Dale; Davis, J.; Davis, S.; Davis, Y.; Deshotel; Dukes; Dutton; Eiland; Farias; Farney; Farrar; Giddings; Gonzales; González, M.; Gonzalez, N.; Gooden; Guerra; Guillen; Gutierrez; Hernandez Luna; Herrero; Howard; Huberty; Hunter; Johnson; Kacal; Keffer; King, S.; King, T.; Kolkhorst; Longoria; Lozano; Lucio; Márquez; Martinez; Martinez Fischer; McClendon; Menéndez; Miles; Miller, R.; Moody; Muñoz; Naishtat; Nevárez; Oliveira; Otto; Patrick; Perez; Pickett; Ratliff; Raymond; Reynolds; Riddle; Ritter; Rodriguez, E.; Rodriguez, J.; Rose; Sheffield, J.; Simmons; Simpson; Smith; Smithee; Strama; Turner, C.; Turner, S.; Villalba; Villarreal; Vo; Walle; Wu; Zerwas.

Nays — Anderson; Ashby; Bell; Bohac; Branch; Burkett; Button; Callegari; Capriglione; Carter; Clardy; Cook; Craddick; Creighton; Crownover; Darby; Elkins; Fallon; Fletcher; Flynn; Frank; Frullo; Geren; Goldman; Harless; Harper-Brown; Hilderbran; Hughes; Isaac; King, K.; King, P.; Kleinschmidt; Klick; Krause; Kuempel; Larson; Laubenberg; Lavender; Leach; Lewis; Miller,

D.; Murphy; Orr; Paddie; Parker; Perry; Phillips; Price; Sanford; Schaefer; Sheets; Sheffield, R.; Springer; Stephenson; Stickland; Taylor; Thompson, E.; Thompson, S.; Toth; Turner, E.S.; White; Workman; Zedler.

Present, not voting — Mr. Speaker; Bonnen, D.(C).

Absent, Excused, Committee Meeting — Pitts.

Absent — Burnam; Coleman; Morrison; Raney.

## STATEMENTS OF VOTE

I was shown voting no on Record No. 441. I intended to vote yes.

Bohac

I was shown voting no on Record No. 441. I intended to vote yes.

Cook

When Record No. 441 was taken, I was in the house but away from my desk. I would have voted no.

Morrison

I was shown voting no on Record No. 441. I intended to vote yes.

S. Thompson

## HB 6 ON THIRD READING
### (by Otto, Anchia, Harless, Howard, et al.)

**HB 6**, A bill to be entitled An Act relating to the creation and re-creation of funds and accounts in the state treasury, the dedication and rededication of revenue, and the exemption of unappropriated money from use for general governmental purposes.

**HB 6** was passed by (Record 442): 144 Yeas, 1 Nays, 2 Present, not voting.

Yeas — Allen; Alonzo; Alvarado; Anchia; Anderson; Ashby; Aycock; Bell; Bohac; Bonnen, G.; Branch; Burkett; Burnam; Button; Callegari; Canales; Capriglione; Carter; Clardy; Collier; Cook; Craddick; Creighton; Crownover; Dale; Darby; Davis, J.; Davis, S.; Davis, Y.; Deshotel; Dukes; Dutton; Eiland; Elkins; Fallon; Farias; Farney; Farrar; Fletcher; Flynn; Frank; Frullo; Geren; Giddings; Goldman; Gonzales; González, M.; Gonzalez, N.; Gooden; Guerra; Guillen; Gutierrez; Harless; Harper-Brown; Hernandez Luna; Herrero; Hilderbran; Howard; Huberty; Hughes; Hunter; Isaac; Johnson; Kacal; Keffer; King, K.; King, P.; King, S.; King, T.; Kleinschmidt; Klick; Kolkhorst; Krause; Kuempel; Larson; Laubenberg; Lavender; Leach; Lewis; Longoria; Lozano; Lucio; Márquez; Martinez; Martinez Fischer; McClendon; Menéndez; Miles; Miller, D.; Miller, R.; Moody; Morrison; Muñoz; Murphy; Naishtat; Nevárez; Oliveira; Orr; Otto; Paddie; Parker; Patrick; Perez; Perry; Phillips; Pickett; Price; Raney; Ratliff; Raymond; Reynolds; Riddle; Ritter; Rodriguez, E.; Rodriguez, J.; Rose; Sanford; Schaefer; Sheets; Sheffield, J.; Sheffield, R.; Simmons; Smith;

Smithee; Springer; Stephenson; Stickland; Strama; Taylor; Thompson, E.; Thompson, S.; Toth; Turner, C.; Turner, E.S.; Turner, S.; Villalba; Villarreal; Vo; Walle; White; Workman; Wu; Zedler; Zerwas.

Nays — Simpson.

Present, not voting — Mr. Speaker; Bonnen, D.(C).

Absent, Excused, Committee Meeting — Pitts.

Absent — Coleman; Cortez.

### STATEMENT OF VOTE

When Record No. 442 was taken, my vote failed to register. I would have voted yes.

Cortez

(Pitts now present)

### HB 2503 ON THIRD READING
### (by Bohac)

**HB 2503**, A bill to be entitled An Act relating to the territory that may be included in a single county election precinct.

**HB 2503** was passed by (Record 443): 146 Yeas, 0 Nays, 2 Present, not voting.

Yeas — Allen; Alvarado; Anchia; Anderson; Ashby; Aycock; Bell; Bohac; Bonnen, G.; Branch; Burkett; Burnam; Button; Callegari; Canales; Capriglione; Carter; Clardy; Collier; Cook; Cortez; Craddick; Creighton; Crownover; Dale; Darby; Davis, J.; Davis, S.; Davis, Y.; Deshotel; Dukes; Dutton; Eiland; Elkins; Fallon; Farias; Farney; Farrar; Fletcher; Flynn; Frank; Frullo; Geren; Giddings; Goldman; Gonzales; González, M.; Gonzalez, N.; Gooden; Guerra; Guillen; Gutierrez; Harless; Harper-Brown; Hernandez Luna; Herrero; Hilderbran; Howard; Huberty; Hughes; Hunter; Isaac; Johnson; Kacal; Keffer; King, K.; King, P.; King, S.; King, T.; Kleinschmidt; Klick; Kolkhorst; Krause; Kuempel; Larson; Laubenberg; Lavender; Leach; Lewis; Longoria; Lozano; Lucio; Márquez; Martinez; Martinez Fischer; McClendon; Menéndez; Miles; Miller, D.; Miller, R.; Moody; Morrison; Muñoz; Murphy; Naishtat; Nevárez; Oliveira; Orr; Otto; Paddie; Parker; Patrick; Perez; Perry; Phillips; Pickett; Pitts; Price; Raney; Ratliff; Raymond; Reynolds; Riddle; Ritter; Rodriguez, E.; Rodriguez, J.; Rose; Sanford; Schaefer; Sheets; Sheffield, J.; Sheffield, R.; Simmons; Simpson; Smith; Smithee; Springer; Stephenson; Stickland; Strama; Taylor; Thompson, E.; Thompson, S.; Toth; Turner, C.; Turner, E.S.; Turner, S.; Villalba; Villarreal; Vo; Walle; White; Workman; Wu; Zedler; Zerwas.

Present, not voting — Mr. Speaker; Bonnen, D.(C).

Absent — Alonzo; Coleman.

## HB 2290 ON THIRD READING
### (by Lozano, et al.)

HB 2290, A bill to be entitled An Act relating to the use for administrative costs of a portion of money received by certain entities to implement a supplemental environmental project.

HB 2290 was passed by (Record 444): 144 Yeas, 1 Nays, 3 Present, not voting.

Yeas — Allen; Alvarado; Anchia; Anderson; Ashby; Aycock; Bell; Bohac; Bonnen, G.; Branch; Burkett; Burnam; Button; Callegari; Canales; Capriglione; Carter; Clardy; Collier; Cook; Cortez; Craddick; Creighton; Crownover; Dale; Darby; Davis, J.; Davis, S.; Davis, Y.; Deshotel; Dukes; Dutton; Eiland; Elkins; Fallon; Farias; Farney; Farrar; Fletcher; Flynn; Frank; Frullo; Geren; Giddings; Goldman; Gonzales; González, M.; Gonzalez, N.; Gooden; Guerra; Guillen; Gutierrez; Harless; Harper-Brown; Hernandez Luna; Herrero; Hilderbran; Howard; Huberty; Hughes; Hunter; Isaac; Johnson; Kacal; Keffer; King, P.; King, S.; King, T.; Kleinschmidt; Klick; Kolkhorst; Krause; Kuempel; Larson; Laubenberg; Lavender; Leach; Lewis; Longoria; Lozano; Lucio; Márquez; Martinez; Martinez Fischer; McClendon; Menéndez; Miles; Miller, D.; Miller, R.; Moody; Morrison; Muñoz; Murphy; Naishtat; Nevárez; Oliveira; Orr; Otto; Paddie; Parker; Patrick; Perez; Perry; Phillips; Pickett; Pitts; Price; Raney; Ratliff; Raymond; Reynolds; Riddle; Ritter; Rodriguez, E.; Rodriguez, J.; Rose; Sanford; Schaefer; Sheets; Sheffield, J.; Sheffield, R.; Simmons; Simpson; Smith; Smithee; Springer; Stephenson; Stickland; Strama; Taylor; Thompson, E.; Thompson, S.; Toth; Turner, C.; Turner, E.S.; Turner, S.; Villalba; Villarreal; Vo; Walle; Workman; Wu; Zedler; Zerwas.

Nays — White.

Present, not voting — Mr. Speaker; Bonnen, D.(C); King, K.

Absent — Alonzo; Coleman.

### STATEMENT OF VOTE

I was shown voting no on Record No. 444. I intended to vote yes.

White

## HB 1448 ON THIRD READING
### (by Kuempel)

HB 1448, A bill to be entitled An Act relating to the use of money deposited to a justice court technology fund in certain counties.

HB 1448 was passed by (Record 445): 148 Yeas, 0 Nays, 2 Present, not voting.

Yeas — Allen; Alonzo; Alvarado; Anchia; Anderson; Ashby; Aycock; Bell; Bohac; Bonnen, G.; Branch; Burkett; Burnam; Button; Callegari; Canales; Capriglione; Carter; Clardy; Coleman; Collier; Cook; Cortez; Craddick; Creighton; Crownover; Dale; Darby; Davis, J.; Davis, S.; Davis, Y.; Deshotel; Dukes; Dutton; Eiland; Elkins; Fallon; Farias; Farney; Farrar; Fletcher; Flynn;

Frank; Frullo; Geren; Giddings; Goldman; Gonzales; González, M.; Gonzalez, N.; Gooden; Guerra; Guillen; Gutierrez; Harless; Harper-Brown; Hernandez Luna; Herrero; Hilderbran; Howard; Huberty; Hughes; Hunter; Isaac; Johnson; Kacal; Keffer; King, K.; King, P.; King, S.; King, T.; Kleinschmidt; Klick; Kolkhorst; Krause; Kuempel; Larson; Laubenberg; Lavender; Leach; Lewis; Longoria; Lozano; Lucio; Márquez; Martinez; Martinez Fischer; McClendon; Menéndez; Miles; Miller, D.; Miller, R.; Moody; Morrison; Muñoz; Murphy; Naishtat; Nevárez; Oliveira; Orr; Otto; Paddie; Parker; Patrick; Perez; Perry; Phillips; Pickett; Pitts; Price; Raney; Ratliff; Raymond; Reynolds; Riddle; Ritter; Rodriguez, E.; Rodriguez, J.; Rose; Sanford; Schaefer; Sheets; Sheffield, J.; Sheffield, R.; Simmons; Simpson; Smith; Smithee; Springer; Stephenson; Stickland; Strama; Taylor; Thompson, E.; Thompson, S.; Toth; Turner, C.; Turner, E.S.; Turner, S.; Villalba; Villarreal; Vo; Walle; White; Workman; Wu; Zedler; Zerwas.

Present, not voting — Mr. Speaker; Bonnen, D.(C).

## HB 1358 ON THIRD READING
### (by Hunter, Cook, Eiland, Kleinschmidt, Muñoz, et al.)

**HB 1358**, A bill to be entitled An Act relating to procedures for certain audits of pharmacists and pharmacies.

**HB 1358** was passed by (Record 446): 141 Yeas, 0 Nays, 2 Present, not voting.

Yeas — Allen; Alonzo; Alvarado; Anchia; Anderson; Ashby; Bell; Bohac; Bonnen, G.; Branch; Burkett; Burnam; Button; Callegari; Canales; Capriglione; Carter; Clardy; Coleman; Collier; Cook; Craddick; Creighton; Crownover; Dale; Davis, J.; Davis, S.; Davis, Y.; Deshotel; Dukes; Dutton; Elkins; Fallon; Farias; Farney; Farrar; Fletcher; Flynn; Frank; Frullo; Geren; Giddings; Goldman; Gonzales; González, M.; Gonzalez, N.; Guerra; Guillen; Harless; Harper-Brown; Hernandez Luna; Herrero; Hilderbran; Howard; Huberty; Hughes; Hunter; Isaac; Johnson; Kacal; King, K.; King, P.; King, S.; King, T.; Kleinschmidt; Klick; Kolkhorst; Krause; Kuempel; Larson; Laubenberg; Lavender; Leach; Lewis; Longoria; Lozano; Lucio; Márquez; Martinez; Martinez Fischer; McClendon; Menéndez; Miles; Miller, D.; Miller, R.; Moody; Morrison; Muñoz; Murphy; Naishtat; Nevárez; Oliveira; Orr; Otto; Paddie; Parker; Patrick; Perez; Perry; Phillips; Pickett; Pitts; Price; Raney; Ratliff; Raymond; Reynolds; Riddle; Ritter; Rodriguez, E.; Rodriguez, J.; Rose; Sanford; Schaefer; Sheets; Sheffield, J.; Sheffield, R.; Simmons; Simpson; Smith; Smithee; Springer; Stephenson; Stickland; Strama; Taylor; Thompson, E.; Thompson, S.; Toth; Turner, C.; Turner, E.S.; Turner, S.; Villalba; Villarreal; Vo; Walle; White; Workman; Wu; Zedler; Zerwas.

Present, not voting — Mr. Speaker; Bonnen, D.(C).

Absent — Aycock; Cortez; Darby; Eiland; Gooden; Gutierrez; Keffer.

## STATEMENTS OF VOTE

When Record No. 446 was taken, my vote failed to register. I would have voted yes.

Cortez

When Record No. 446 was taken, my vote failed to register. I would have voted yes.

Gooden

## HB 1079 ON THIRD READING
### (by Smith, Guillen, Kleinschmidt, et al.)

**HB 1079**, A bill to be entitled An Act relating to the procedural requirements for action by the Texas Commission on Environmental Quality on applications for production area authorizations.

**HB 1079** was passed by (Record 447): 135 Yeas, 10 Nays, 2 Present, not voting.

Yeas — Allen; Alonzo; Alvarado; Anchia; Anderson; Ashby; Aycock; Bell; Bohac; Bonnen, G.; Branch; Burkett; Button; Callegari; Capriglione; Carter; Clardy; Coleman; Cook; Cortez; Craddick; Creighton; Crownover; Dale; Darby; Davis, J.; Davis, S.; Davis, Y.; Deshotel; Dukes; Dutton; Eiland; Elkins; Fallon; Farney; Farrar; Fletcher; Flynn; Frank; Frullo; Geren; Giddings; Goldman; Gonzales; Guerra; Guillen; Harless; Harper-Brown; Hernandez Luna; Herrero; Hilderbran; Howard; Huberty; Hughes; Hunter; Isaac; Johnson; Kacal; Keffer; King, K.; King, P.; King, S.; King, T.; Kleinschmidt; Klick; Kolkhorst; Krause; Kuempel; Larson; Laubenberg; Lavender; Leach; Lewis; Longoria; Lozano; Lucio; Martinez; Martinez Fischer; McClendon; Menéndez; Miles; Miller, D.; Miller, R.; Moody; Muñoz; Murphy; Naishtat; Orr; Otto; Paddie; Parker; Patrick; Perez; Perry; Phillips; Pickett; Pitts; Price; Raney; Ratliff; Raymond; Reynolds; Riddle; Ritter; Rodriguez, E.; Rose; Sanford; Schaefer; Sheets; Sheffield, J.; Sheffield, R.; Simmons; Simpson; Smith; Smithee; Springer; Stephenson; Stickland; Strama; Taylor; Thompson, E.; Thompson, S.; Toth; Turner, C.; Turner, E.S.; Turner, S.; Villalba; Villarreal; Vo; Walle; White; Workman; Wu; Zedler; Zerwas.

Nays — Burnam; Canales; Collier; Farias; González, M.; Gonzalez, N.; Márquez; Morrison; Oliveira; Rodriguez, J.

Present, not voting — Mr. Speaker; Bonnen, D.(C).

Absent — Gooden; Gutierrez; Nevárez.

## STATEMENTS OF VOTE

When Record No. 447 was taken, my vote failed to register. I would have voted yes.

Gooden

When Record No. 447 was taken, I was in the house but away from my desk. I would have voted no.

Nevárez

## HB 7 ON THIRD READING
### (by Darby, Pitts, Gonzales, Menéndez, S. Turner, et al.)

**HB 7**, A bill to be entitled An Act relating to the amounts, availability, and use of certain statutorily dedicated revenue and accounts; reducing or affecting the amounts or rates of certain statutorily dedicated fees and assessments.

### HB 7 - STATEMENT OF LEGISLATIVE INTENT

REPRESENTATIVE BURNAM: Mr. Darby, you and I had a little conversation earlier today, and you know that there's concern about the impact on the solid waste fee, is that correct?

REPRESENTATIVE DARBY: That's correct.

BURNAM: And, as you were explaining and laying it out yesterday, there was some conversation about the split. Exactly how has that split been working, and what is your intent for the future?

DARBY: It was split 50-50, now it's going to be split two-thirds, one-third. Two-thirds to pay the TCEQ to administer the program, and the third going to the local COGs.

BURNAM: And so, it's understandable if all they understand is that change in the percentage that a lot of our local governments and COGs could be concerned about this legislation, but what exactly is your intent, and why you think we need to do this?

DARBY: The intent is to fully fund the TCEQ to administer the program, but it brings—by doing a third percentage—it brings it more closely aligned to what we appropriate. And the idea is if we're not going to continue to accumulate balances into the account, then the urge would be for the appropriations to fully fund, if you will, that third to the COGs.

BURNAM: So do you think one of the concerns might be whether or not we're actually going to see it fully funded in this appropriation process this session?

DARBY: I don't think it's going to be fully funded, but there's still an appropriation process that needs to be involved, but, certainly, as we bring that percentage closer, I think it would be certainly argumentative that we should fully fund up to the percentage—up to that third percentage for the COGs.

BURNAM: So, perspectively—maybe not this session—you're thinking that that's something the Appropriations Committee should address?

DARBY: I think it will be.

BURNAM: How are we going to avoid shortfalls in the short term for our short COGs?

DARBY: Well, I don't think we're going to avoid—certainly, we're going to have to have a hand in the appropriation process, and have the Appropriations Committee and this house determine what's an appropriate level of funding, but by reducing the incentive to accumulate balances in the GR dedicated account that will give incentive, I believe, to the appropriations process to fully fund.

BURNAM: You think by passing this legislation, it will provide an incentive to increase the funding?

DARBY: Hopefully it will.

BURNAM: Okay, and so how do we make sure that happens? Do the COGs need to become lobbyists?

DARBY: I think we need to continue to work within the process we have. This allows us to bring more closely in line with the revenue, we're reducing the fees, and we're reallocating percentages, so hopefully we can get more to an appropriate figure to fund these COG projects.

### REMARKS ORDERED PRINTED

Representative Burnam moved to print remarks between Representative Darby and Representative Burnam.

The motion prevailed.

**Amendment No. 1**

Representative Martinez Fischer offered the following amendment to **HB 7**:

Amend **HB 7** on third reading by adding the following appropriately numbered SECTIONS to the bill and renumbering subsequent SECTIONS of the bill accordingly:

SECTION ____. Subchapter F, Chapter 401, Government Code, is amended by adding Section 401.106 to read as follows:

Sec. 401.106. DRIVING WHILE INTOXICATED PREVENTION; COLLECTION OF CERTAIN FEES. (a) In this section, "offense relating to the operating of a motor vehicle while intoxicated" has the meaning assigned by Section 49.09(c), Penal Code.

(b) Court costs imposed under Article 102.018(e), Code of Criminal Procedure, shall be deposited in a general revenue dedicated account to the credit of the office of the governor to be used and may be appropriated only for the support of programs for the prevention of offenses relating to the operating of a motor vehicle while intoxicated in this state.

SECTION ____. Article 102.018, Code of Criminal Procedure, is amended by adding Subsection (e) to read as follows:

(e) On the conviction of an offense relating to the operating of a motor vehicle while intoxicated, as defined by Section 49.09(c)(1)(A) or (B), Penal Code, the court shall impose a cost of $10 on a defendant. A cost imposed under this subsection is in addition to a cost imposed under Subsection (a), (b), or (c). Each cost collected under this subsection shall be deposited in the account to the credit of the office of the governor as provided by Section 401.106, Government Code, for the prevention of driving while intoxicated.

SECTION \_\_\_\_. Subchapter B, Chapter 102, Government Code, is amended by adding Section 102.0215 to read as follows:

Sec. 102.0215. ADDITIONAL COURT COSTS: CODE OF CRIMINAL PROCEDURE. A defendant who is convicted of an offense relating to the operating of a motor vehicle while intoxicated shall pay a cost on conviction, in addition to all other costs, to help fund the prevention of driving while intoxicated under Section 401.106, Government Code (Art. 102.018(e), Code of Criminal Procedure) . . . $10.

SECTION \_\_\_\_. Article 102.018(e), Code of Criminal Procedure, as added by this Act, applies only to a cost on conviction for an offense committed on or after September 1, 2013. An offense committed before September 1, 2013, is governed by the law in effect on the date the offense was committed, and the former law is continued in effect for that purpose. For purposes of this section, an offense was committed before September 1, 2013, if any element of the offense was committed before that date.

Amendment No. 1 was adopted.

**Amendment No. 2**

Representative Y. Davis offered the following amendment to **HB 7**:

Amend **HB 7** on third reading by adding to the end of amended Section 501.138(b-2), Transportation Code, as amended by Amendment 10 by Darby, "The Texas Commission on Environmental Quality by rule shall adopt criteria for making the finding required by this subsection."

### AMENDMENT NO. 2 - STATEMENT OF LEGISLATIVE INTENT

REPRESENTATIVE Y. DAVIS: What I wanted to do was just ask a couple questions, because the amendment was not as—I'd expected it to have a couple things on it. One was—we were setting out the criterias so that we could make sure that TCEQ had a criteria to how these funds would be spent on various projects, that's correct?

REPRESENTATIVE DARBY: That's exactly correct.

Y. DAVIS: And one of the concerns I had is to make sure that those TIF dollars that were used for nonattainment areas could stay in nonattainment areas?

DARBY: That's exactly the purpose.

Y. DAVIS: And so I just wanted to make sure that it is not the intent for us to take turf funds from areas who are used for mitigation, is that correct?

DARBY: That's correct.

### REMARKS ORDERED PRINTED

Representative Y. Davis moved to print remarks between Representative Darby and Representative Y. Davis.

The motion prevailed.

Amendment No. 2 was adopted.

**HB 7**, as amended, was passed by (Record 448): 146 Yeas, 1 Nays, 2 Present, not voting.

Yeas — Allen; Alonzo; Alvarado; Anchia; Anderson; Ashby; Aycock; Bell; Bohac; Bonnen, G.; Branch; Burkett; Burnam; Button; Callegari; Canales; Capriglione; Carter; Clardy; Coleman; Collier; Cook; Cortez; Craddick; Creighton; Crownover; Dale; Darby; Davis, J.; Davis, S.; Davis, Y.; Deshotel; Dukes; Dutton; Eiland; Elkins; Fallon; Farias; Farney; Farrar; Fletcher; Flynn; Frank; Frullo; Geren; Giddings; Goldman; Gonzales; González, M.; Gonzalez, N.; Gooden; Guerra; Guillen; Gutierrez; Harless; Harper-Brown; Hernandez Luna; Herrero; Hilderbran; Howard; Huberty; Hughes; Hunter; Isaac; Johnson; Kacal; Keffer; King, K.; King, P.; King, T.; Kleinschmidt; Klick; Kolkhorst; Krause; Kuempel; Larson; Laubenberg; Lavender; Leach; Lewis; Longoria; Lozano; Lucio; Márquez; Martinez; Martinez Fischer; McClendon; Menéndez; Miles; Miller, D.; Miller, R.; Moody; Morrison; Muñoz; Murphy; Naishtat; Nevárez; Oliveira; Orr; Otto; Paddie; Parker; Patrick; Perez; Perry; Phillips; Pickett; Pitts; Price; Raney; Ratliff; Raymond; Reynolds; Riddle; Ritter; Rodriguez, E.; Rodriguez, J.; Rose; Sanford; Schaefer; Sheets; Sheffield, J.; Sheffield, R.; Simmons; Smith; Smithee; Springer; Stephenson; Stickland; Strama; Taylor; Thompson, E.; Thompson, S.; Toth; Turner, C.; Turner, E.S.; Turner, S.; Villalba; Villarreal; Vo; Walle; White; Workman; Wu; Zedler; Zerwas.

Nays — Simpson.

Present, not voting — Mr. Speaker; Bonnen, D.(C).

Absent — King, S.

The chair stated that **HB 7** was passed subject to the provisions of Article III, Section 49a of the Texas Constitution.

### STATEMENT OF VOTE

When Record No. 448 was taken, I was in the house but away from my desk. I would have voted yes.

S. King

### HB 29 ON THIRD READING
#### (by Branch, D. Bonnen, Alvarado, Herrero, et al.)

**HB 29**, A bill to be entitled An Act relating to requiring certain general academic teaching institutions to offer a four-year fixed tuition price plan to undergraduate students.

**HB 29** was passed by (Record 449): 148 Yeas, 0 Nays, 2 Present, not voting.

Yeas — Allen; Alonzo; Alvarado; Anchia; Anderson; Ashby; Aycock; Bell; Bohac; Bonnen, G.; Branch; Burkett; Burnam; Button; Callegari; Canales; Capriglione; Carter; Clardy; Coleman; Collier; Cook; Cortez; Craddick; Creighton; Crownover; Dale; Darby; Davis, J.; Davis, S.; Davis, Y.; Deshotel; Dukes; Dutton; Eiland; Elkins; Fallon; Farias; Farney; Farrar; Fletcher; Flynn; Frank; Frullo; Geren; Giddings; Goldman; Gonzales; González, M.; Gonzalez,

N.; Gooden; Guerra; Guillen; Gutierrez; Harless; Harper-Brown; Hernandez Luna; Herrero; Hilderbran; Howard; Huberty; Hughes; Hunter; Isaac; Johnson; Kacal; Keffer; King, K.; King, P.; King, S.; King, T.; Kleinschmidt; Klick; Kolkhorst; Krause; Kuempel; Larson; Laubenberg; Lavender; Leach; Lewis; Longoria; Lozano; Lucio; Márquez; Martinez; Martinez Fischer; McClendon; Menéndez; Miles; Miller, D.; Miller, R.; Moody; Morrison; Muñoz; Murphy; Naishtat; Nevárez; Oliveira; Orr; Otto; Paddie; Parker; Patrick; Perez; Perry; Phillips; Pickett; Pitts; Price; Raney; Ratliff; Raymond; Reynolds; Riddle; Ritter; Rodriguez, E.; Rodriguez, J.; Rose; Sanford; Schaefer; Sheets; Sheffield, J.; Sheffield, R.; Simmons; Simpson; Smith; Smithee; Springer; Stephenson; Stickland; Strama; Taylor; Thompson, E.; Thompson, S.; Toth; Turner, C.; Turner, E.S.; Turner, S.; Villalba; Villarreal; Vo; Walle; White; Workman; Wu; Zedler; Zerwas.

Present, not voting — Mr. Speaker; Bonnen, D.(C).

## HB 1803 ON THIRD READING
### (by Callegari)

**HB 1803**, A bill to be entitled An Act relating to the renewal of a controlled substance registration by physicians; changing the payment schedule for a fee.

**HB 1803** was passed by (Record 450): 145 Yeas, 0 Nays, 2 Present, not voting.

Yeas — Allen; Alonzo; Alvarado; Anchia; Anderson; Ashby; Aycock; Bell; Bohac; Bonnen, G.; Branch; Burkett; Burnam; Button; Callegari; Canales; Capriglione; Carter; Clardy; Coleman; Collier; Cook; Craddick; Creighton; Crownover; Dale; Darby; Davis, J.; Davis, S.; Davis, Y.; Deshotel; Dukes; Dutton; Eiland; Elkins; Fallon; Farias; Farney; Farrar; Fletcher; Flynn; Frank; Frullo; Geren; Giddings; Goldman; Gonzales; González, M.; Gonzalez, N.; Gooden; Guerra; Guillen; Gutierrez; Harless; Harper-Brown; Hernandez Luna; Herrero; Hilderbran; Howard; Huberty; Hughes; Hunter; Isaac; Johnson; Kacal; Keffer; King, K.; King, P.; King, T.; Kleinschmidt; Klick; Kolkhorst; Krause; Kuempel; Laubenberg; Lavender; Leach; Lewis; Longoria; Lozano; Lucio; Márquez; Martinez; Martinez Fischer; McClendon; Menéndez; Miles; Miller, D.; Miller, R.; Moody; Morrison; Muñoz; Murphy; Naishtat; Nevárez; Oliveira; Orr; Otto; Paddie; Parker; Patrick; Perez; Perry; Phillips; Pickett; Pitts; Price; Raney; Ratliff; Raymond; Reynolds; Riddle; Ritter; Rodriguez, E.; Rodriguez, J.; Rose; Sanford; Schaefer; Sheets; Sheffield, J.; Sheffield, R.; Simmons; Simpson; Smith; Smithee; Springer; Stephenson; Stickland; Strama; Taylor; Thompson, E.; Thompson, S.; Toth; Turner, C.; Turner, E.S.; Turner, S.; Villalba; Villarreal; Vo; Walle; White; Workman; Wu; Zedler; Zerwas.

Present, not voting — Mr. Speaker; Bonnen, D.(C).

Absent — Cortez; King, S.; Larson.

## STATEMENTS OF VOTE

When Record No. 450 was taken, my vote failed to register. I would have voted yes.

Cortez

When Record No. 450 was taken, I was in the house but away from my desk. I would have voted yes.

S. King

## HB 137 ON THIRD READING
### (by Raymond and R. Miller)

**HB 137**, A bill to be entitled An Act relating to the information reported to the comptroller by a coin-operated machine license holder, the penalty for failure to report that information, and the penalty for gambling promotion.

**HB 137** was passed by (Record 451): 139 Yeas, 6 Nays, 2 Present, not voting.

Yeas — Allen; Alonzo; Alvarado; Anchia; Ashby; Aycock; Bell; Bohac; Bonnen, G.; Branch; Burkett; Burnam; Button; Callegari; Canales; Capriglione; Carter; Clardy; Coleman; Collier; Cook; Craddick; Creighton; Crownover; Dale; Darby; Davis, J.; Davis, S.; Davis, Y.; Deshotel; Dukes; Dutton; Eiland; Elkins; Fallon; Farias; Farney; Farrar; Fletcher; Flynn; Frank; Frullo; Geren; Giddings; Goldman; Gonzales; González, M.; Gonzalez, N.; Gooden; Guerra; Guillen; Gutierrez; Harless; Harper-Brown; Hernandez Luna; Herrero; Hilderbran; Howard; Huberty; Hunter; Isaac; Johnson; Kacal; Keffer; King, K.; King, P.; King, S.; King, T.; Kleinschmidt; Klick; Kolkhorst; Krause; Kuempel; Larson; Laubenberg; Lavender; Leach; Lewis; Longoria; Lozano; Lucio; Márquez; Martinez; Martinez Fischer; McClendon; Menéndez; Miles; Miller, D.; Miller, R.; Moody; Morrison; Muñoz; Murphy; Naishtat; Nevárez; Oliveira; Orr; Otto; Paddie; Parker; Patrick; Perez; Perry; Phillips; Pickett; Pitts; Price; Raney; Ratliff; Raymond; Reynolds; Riddle; Ritter; Rodriguez, E.; Rodriguez, J.; Rose; Sanford; Sheets; Sheffield, J.; Sheffield, R.; Smith; Smithee; Springer; Stephenson; Strama; Taylor; Thompson, E.; Thompson, S.; Turner, C.; Turner, E.S.; Turner, S.; Villalba; Villarreal; Vo; Walle; Workman; Wu; Zedler; Zerwas.

Nays — Schaefer; Simmons; Simpson; Stickland; Toth; White.

Present, not voting — Mr. Speaker; Bonnen, D.(C).

Absent — Anderson; Cortez; Hughes.

## STATEMENT OF VOTE

When Record No. 451 was taken, my vote failed to register. I would have voted yes.

Cortez

## HB 772 ON THIRD READING
### (by Howard, Zerwas, Callegari, J. Sheffield, G. Bonnen, et al.)

**HB 772**, A bill to be entitled An Act relating to the immunization data included in and excluded from the immunization registry.

### Amendment No. 1

Representatives Kolkhorst, G. Bonnen, and J. Sheffield offered the following amendment to **HB 772**:

Amend **HB 772** on third reading as follows:

(1)  In SECTION 1 of the bill, in added Section 161.007(a)(4), Health and Safety Code (page 2, line 6, house committee printing), between "request removal" and the colon, insert "at any time, including".

(2)  In SECTION 1 of the bill, in added Section 161.007(a)(4)(B), Health and Safety Code (page 2, line 9, house committee printing), strike "at the" and substitute "each".

(3)  In SECTION 1 of the bill, in added Section 161.007(a)(4)(E), Health and Safety Code (page 2, line 16, house committee printing), strike "and" and substitute "[and]".

(4)  In SECTION 1 of the bill, in amended Section 161.007(a)(5), Health and Safety Code (page 2, line 17, house committee printing), between "(5)" and "include", insert the following:

ensure that an individual or the individual's legally authorized representative is not required to request removal from the registry more than one time and that, after a request for removal is made, the individual's immunization information will not be included in the registry unless the individual or the individual's legally authorized representative submits to the department a written request for inclusion of the individual's information in the registry; and

(6)

(5)  In SECTION 10 of the bill (page 11, line 23, house committee printing), between "SECTION 10." and "The changes", insert "(a)".

(6)  Immediately following SECTION 10 of the bill (page 12, between lines 4-5, house committee printing), insert the following:

(b)  The changes in law made by this Act do not authorize the Department of State Health Services to include in the immunization registry established under Subchapter A, Chapter 161, Health and Safety Code, immunization information of an individual who is 18 years of age or older and whose immunization information was not included in the registry on or before January 1, 2015, unless the department receives immunization data from a health care provider who:

(1)  administers an immunization to the individual after that date and elects to provide the individual's immunization information to the department; and

(2)  notifies the individual before submission of the information to the department:

(A)  that the health care provider is providing the information to the department for inclusion in the registry;

(B) that the information will remain in the registry until removal is requested by the individual or the individual's legally authorized representative; and

(C) of the procedures for requesting removal from the registry under Subchapter A, Chapter 161, Health and Safety Code, as amended by this Act.

### AMENDMENT NO. 1 - STATEMENT OF LEGISLATIVE INTENT

REPRESENTATIVE HOWARD:  I want to make sure that this is correct, the way you understand it.  You can opt out multiple times through this system, and once you opt out, you are always out unless you consent to be admitted back in?  You are out once you opt out?

REPRESENTATIVE KOLKHORST:  Correct.

HOWARD:  Okay, and that adults are not automatically opted in.  That this is mainly—

KOLKHORST:  You and I are not in ImmTrac and we will not be in ImmTrac, unless we request to be in ImmTrac.  We are given the information by our provider that says we're going to put this in, and we have the option at that point to opt out.

HOWARD:  Okay, so, seems to me, do you not think that this clarifies what was brought up yesterday and that we've assured people that you have multiple opportunities to opt out, and once you opt out, you are always opted out?

KOLKHORST:  Right.   Representative Howard, I just want to say that the importance of—the reason I'm going to vote for your bill, and I appreciate your hard work on this bill, is I think it gives us more protections than we currently have in the ImmTrac system today.  It empowers the parents at each and every vaccination to get out of the system, and that's what I want to do.  As I told you, I wasn't even cognizant of if my children were in the ImmTrac system.  I will now know every time I take a vaccination.

Amendment No. 1 was adopted.

**HB 772**, as amended, was passed by (Record 452): 99 Yeas, 47 Nays, 2 Present, not voting.

Yeas — Allen; Alonzo; Alvarado; Anchia; Ashby; Aycock; Bohac; Bonnen, G.; Branch; Burnam; Callegari; Clardy; Coleman; Collier; Cook; Cortez; Crownover; Davis, J.; Davis, S.; Davis, Y.; Deshotel; Dukes; Dutton; Eiland; Farias; Farney; Farrar; Fletcher; Geren; González, M.; Gonzalez, N.; Gooden; Guerra; Guillen; Gutierrez; Hernandez Luna; Herrero; Howard; Huberty; Hunter; Johnson; Kacal; Keffer; King, K.; King, S.; King, T.; Kolkhorst; Kuempel; Larson; Lewis; Longoria; Lozano; Lucio; Márquez; Martinez; Martinez Fischer; McClendon; Menéndez; Miles; Miller, D.; Miller, R.; Moody; Muñoz; Murphy; Naishtat; Nevárez; Oliveira; Orr; Otto; Paddie; Patrick; Perez; Pickett; Pitts; Price; Raney; Ratliff; Raymond; Reynolds; Riddle; Ritter; Rodriguez, E.;

Rodriguez, J.; Rose; Sheffield, J.; Sheffield, R.; Smith; Stephenson; Strama; Thompson, S.; Turner, C.; Turner, S.; Villalba; Villarreal; Vo; Walle; Workman; Wu; Zerwas.

Nays — Anderson; Bell; Burkett; Button; Canales; Capriglione; Carter; Craddick; Creighton; Dale; Darby; Elkins; Fallon; Flynn; Frank; Frullo; Goldman; Gonzales; Harless; Harper-Brown; Hilderbran; Hughes; Isaac; King, P.; Kleinschmidt; Klick; Krause; Laubenberg; Lavender; Leach; Parker; Perry; Phillips; Sanford; Schaefer; Sheets; Simmons; Simpson; Smithee; Springer; Stickland; Taylor; Thompson, E.; Toth; Turner, E.S.; White; Zedler.

Present, not voting — Mr. Speaker; Bonnen, D.(C).

Absent — Giddings; Morrison.

### STATEMENTS OF VOTE

I was shown voting yes on Record No. 452. I intended to vote no.

R. Miller

When Record No. 452 was taken, I was in the house but away from my desk. I would have voted no.

Morrison

I was shown voting yes on Record No. 452. I intended to vote no.

Riddle

### REMARKS ORDERED PRINTED

Representative Howard moved to print remarks between Representative Kolkhorst and Representative Howard.

The motion prevailed.

### HB 3674 ON THIRD READING
#### (by Muñoz, Guillen, and Isaac)

**HB 3674**, A bill to be entitled An Act relating to eligibility of municipalities to participate in the historic courthouse preservation and maintenance programs administered by the Texas Historical Commission.

**HB 3674** was passed by (Record 453): 85 Yeas, 60 Nays, 2 Present, not voting.

Yeas — Allen; Alonzo; Alvarado; Anchia; Aycock; Bohac; Burnam; Callegari; Canales; Carter; Coleman; Collier; Cortez; Crownover; Davis, J.; Davis, Y.; Deshotel; Dukes; Dutton; Eiland; Farias; Farney; Farrar; Fletcher; Geren; Giddings; González, M.; Gonzalez, N.; Guerra; Guillen; Gutierrez; Hernandez Luna; Herrero; Hilderbran; Howard; Huberty; Hunter; Isaac; Johnson; Kacal; Keffer; King, K.; King, S.; Klick; Kuempel; Larson; Longoria; Lozano; Lucio; Márquez; Martinez; Martinez Fischer; McClendon; Menéndez; Miles; Moody; Muñoz; Naishtat; Nevárez; Oliveira; Patrick; Perez; Pickett; Pitts; Price;

Ratliff; Raymond; Reynolds; Ritter; Rodriguez, E.; Rodriguez, J.; Rose; Sheffield, J.; Smith; Stephenson; Strama; Thompson, E.; Thompson, S.; Turner, C.; Turner, S.; Vo; Walle; Workman; Wu; Zerwas.

Nays — Anderson; Ashby; Bell; Bonnen, G.; Branch; Burkett; Button; Capriglione; Clardy; Cook; Craddick; Creighton; Dale; Darby; Davis, S.; Elkins; Fallon; Flynn; Frank; Frullo; Goldman; Gonzales; Gooden; Harless; Harper-Brown; Hughes; King, P.; King, T.; Kleinschmidt; Kolkhorst; Krause; Laubenberg; Lavender; Leach; Miller, D.; Miller, R.; Morrison; Murphy; Orr; Otto; Paddie; Parker; Perry; Phillips; Sanford; Schaefer; Sheets; Sheffield, R.; Simmons; Simpson; Smithee; Springer; Stickland; Taylor; Toth; Turner, E.S.; Villalba; Villarreal; White; Zedler.

Present, not voting — Mr. Speaker; Bonnen, D.(C).

Absent — Lewis; Raney; Riddle.

## STATEMENTS OF VOTE

I was shown voting no on Record No. 453. I intended to vote yes.

Cook

I was shown voting yes on Record No. 453. I intended to vote no.

J. Sheffield

I was shown voting yes on Record No. 453. I intended to vote no.

E. Thompson

I was shown voting no on Record No. 453. I intended to vote yes.

Villarreal

## HB 3640 ON THIRD READING
### (by Pitts)

**HB 3640**, A bill to be entitled An Act relating to the creation of an extension center of the Texas State Technical College System.

**HB 3640** was passed by (Record 454): 142 Yeas, 5 Nays, 2 Present, not voting.

Yeas — Allen; Alonzo; Alvarado; Anchia; Anderson; Ashby; Aycock; Bell; Bohac; Bonnen, G.; Branch; Burkett; Burnam; Button; Callegari; Canales; Capriglione; Carter; Clardy; Coleman; Collier; Cook; Cortez; Craddick; Creighton; Crownover; Dale; Darby; Davis, J.; Davis, S.; Davis, Y.; Deshotel; Dukes; Dutton; Eiland; Elkins; Fallon; Farias; Farney; Farrar; Fletcher; Frank; Frullo; Geren; Giddings; Goldman; Gonzales; González, M.; Gonzalez, N.; Gooden; Guerra; Guillen; Gutierrez; Harless; Harper-Brown; Hernandez Luna; Herrero; Hilderbran; Howard; Huberty; Hughes; Hunter; Isaac; Johnson; Kacal; Keffer; King, K.; King, P.; King, S.; King, T.; Kleinschmidt; Klick; Kolkhorst; Krause; Kuempel; Larson; Lavender; Leach; Lewis; Longoria; Lozano; Lucio; Márquez; Martinez; Martinez Fischer; McClendon; Menéndez; Miles; Miller, D.; Miller, R.; Moody; Morrison; Muñoz; Murphy; Naishtat; Nevárez; Oliveira; Orr;

Otto; Paddie; Parker; Patrick; Perez; Perry; Phillips; Pickett; Pitts; Price; Raney; Ratliff; Raymond; Reynolds; Riddle; Ritter; Rodriguez, E.; Rodriguez, J.; Rose; Sanford; Schaefer; Sheets; Sheffield, J.; Sheffield, R.; Simmons; Simpson; Smith; Smithee; Springer; Stephenson; Strama; Taylor; Thompson, S.; Turner, C.; Turner, E.S.; Turner, S.; Villalba; Villarreal; Vo; Walle; White; Workman; Wu; Zerwas.

Nays — Flynn; Laubenberg; Stickland; Thompson, E.; Zedler.

Present, not voting — Mr. Speaker; Bonnen, D.(C).

Absent — Toth.

### STATEMENT OF VOTE

I was shown voting no on Record No. 454. I intended to vote yes.

Flynn

### HB 316 ON THIRD READING
### (by Otto and Guillen)

**HB 316**, A bill to be entitled An Act relating to the pilot program authorizing a property owner to appeal to the State Office of Administrative Hearings regarding certain appraisal review board determinations.

**HB 316** was passed by (Record 455): 148 Yeas, 0 Nays, 2 Present, not voting.

Yeas — Allen; Alonzo; Alvarado; Anchia; Anderson; Ashby; Aycock; Bell; Bohac; Bonnen, G.; Branch; Burkett; Burnam; Button; Callegari; Canales; Capriglione; Carter; Clardy; Coleman; Collier; Cook; Cortez; Craddick; Creighton; Crownover; Dale; Darby; Davis, J.; Davis, S.; Davis, Y.; Deshotel; Dukes; Dutton; Eiland; Elkins; Fallon; Farias; Farney; Farrar; Fletcher; Flynn; Frank; Frullo; Geren; Giddings; Goldman; Gonzales; González, M.; Gonzalez, N.; Gooden; Guerra; Guillen; Gutierrez; Harless; Harper-Brown; Hernandez Luna; Herrero; Hilderbran; Howard; Huberty; Hughes; Hunter; Isaac; Johnson; Kacal; Keffer; King, K.; King, P.; King, S.; King, T.; Kleinschmidt; Klick; Kolkhorst; Krause; Kuempel; Larson; Laubenberg; Lavender; Leach; Lewis; Longoria; Lozano; Lucio; Márquez; Martinez; Martinez Fischer; McClendon; Menéndez; Miles; Miller, D.; Miller, R.; Moody; Morrison; Muñoz; Murphy; Naishtat; Nevárez; Oliveira; Orr; Otto; Paddie; Parker; Patrick; Perez; Perry; Phillips; Pickett; Pitts; Price; Raney; Ratliff; Raymond; Reynolds; Riddle; Ritter; Rodriguez, E.; Rodriguez, J.; Rose; Sanford; Schaefer; Sheets; Sheffield, J.; Sheffield, R.; Simmons; Simpson; Smith; Smithee; Springer; Stephenson; Stickland; Strama; Taylor; Thompson, E.; Thompson, S.; Toth; Turner, C.; Turner, E.S.; Turner, S.; Villalba; Villarreal; Vo; Walle; White; Workman; Wu; Zedler; Zerwas.

Present, not voting — Mr. Speaker; Bonnen, D.(C).

## HB 1047 ON THIRD READING
### (by Sheets)

**HB 1047**, A bill to be entitled An Act relating to the regulation of certain surety companies.

## HB 1047 - STATEMENT OF LEGISLATIVE INTENT

REPRESENTATIVE S. THOMPSON:  What is the purpose of this bill?

REPRESENTATIVE SHEETS: To codify the current and past accounting practice of surety insurance companies writing bail bonds. Currently, this accounting practice, according to recent review by the Texas Department of Insurance, is not clearly defined in the Texas Insurance Code. This bill provides the needed Texas Department of Insurance clarification and removes ambiguity. The bill requires surety insurance companies to record the amount of money they actually receive, or are due, from a bail agent as premium in their financial records, and requires premium taxes to be paid on these premiums. As bail premium is fully earned when written, the bill also clarifies the long standing accounting position of no unearned premium reserve being required to be recorded on this business.

S. THOMPSON:  Why is it important to codify the past accounting practices in **HB 1047** and to continue that practice until such time as the bill passes with an effective date?

SHEETS: Because of recent ambiguities raised by the Texas Department of Insurance, the Texas Department of Insurance has issued "permitted practice letters" to certain surety insurance companies allowing them to follow the accounting practices outlined in this bill. Permitted practice letters can be revoked at any time by the TDI. This bill provides clarification and certainty to surety insurance companies writing bail and for the Texas Department of Insurance in its regulatory capacity. Codifying the past accounting practice in **HB 1047** and continuing the practice until such time as the bill passes with an effective date will ensure consistency within the financial records of surety insurance companies writing bail and consistency for the Texas Department of Insurance. It also establishes the legislature's intent that surety insurance companies not be unfairly taxed on the premiums in past years based on the application of accounting practices not spelled out in the permitted practice letter or this bill.

## REMARKS ORDERED PRINTED

Representative S. Thompson moved to print remarks between Representative Sheets and Representative S. Thompson.

The motion prevailed.

**HB 1047** was passed by (Record 456): 146 Yeas, 0 Nays, 4 Present, not voting.

Yeas — Allen; Alonzo; Alvarado; Anchia; Anderson; Ashby; Aycock; Bell; Bohac; Bonnen, G.; Branch; Burkett; Burnam; Button; Callegari; Capriglione; Carter; Clardy; Coleman; Collier; Cook; Cortez; Craddick; Creighton;

Crownover; Dale; Darby; Davis, J.; Davis, S.; Davis, Y.; Deshotel; Dukes; Dutton; Eiland; Elkins; Fallon; Farias; Farney; Farrar; Fletcher; Flynn; Frank; Frullo; Geren; Giddings; Goldman; Gonzales; González, M.; Gonzalez, N.; Gooden; Guerra; Guillen; Gutierrez; Harless; Harper-Brown; Hernandez Luna; Herrero; Hilderbran; Howard; Huberty; Hughes; Hunter; Isaac; Johnson; Kacal; Keffer; King, K.; King, P.; King, S.; King, T.; Kleinschmidt; Klick; Kolkhorst; Krause; Kuempel; Larson; Laubenberg; Lavender; Leach; Lewis; Longoria; Lozano; Lucio; Márquez; Martinez; Martinez Fischer; McClendon; Menéndez; Miller, D.; Miller, R.; Moody; Morrison; Muñoz; Murphy; Naishtat; Nevárez; Oliveira; Orr; Otto; Paddie; Parker; Patrick; Perez; Perry; Phillips; Pickett; Pitts; Price; Raney; Ratliff; Raymond; Reynolds; Riddle; Ritter; Rodriguez, E.; Rodriguez, J.; Rose; Sanford; Schaefer; Sheets; Sheffield, J.; Sheffield, R.; Simmons; Simpson; Smith; Smithee; Springer; Stephenson; Stickland; Strama; Taylor; Thompson, E.; Thompson, S.; Toth; Turner, C.; Turner, E.S.; Turner, S.; Villalba; Villarreal; Vo; Walle; White; Workman; Wu; Zedler; Zerwas.

Present, not voting — Mr. Speaker; Bonnen, D.(C); Canales; Miles.

## MESSAGE FROM THE SENATE

A message from the senate was received at this time (see the addendum to the daily journal, Messages from the Senate, Message No. 2).

### HB 1759 ON THIRD READING
### (by Hunter, Herrero, Martinez Fischer, and Cook)

**HB 1759**, A bill to be entitled An Act relating to a correction, clarification, or retraction of incorrect information published.

**HB 1759** was passed by (Record 457): 145 Yeas, 0 Nays, 2 Present, not voting.

Yeas — Allen; Alonzo; Alvarado; Anchia; Anderson; Ashby; Aycock; Bell; Bohac; Bonnen, G.; Branch; Burkett; Burnam; Button; Callegari; Canales; Capriglione; Carter; Clardy; Coleman; Collier; Cook; Cortez; Craddick; Creighton; Crownover; Dale; Darby; Davis, J.; Davis, S.; Davis, Y.; Dukes; Dutton; Eiland; Elkins; Fallon; Farias; Farney; Farrar; Fletcher; Flynn; Frank; Frullo; Geren; Giddings; Goldman; Gonzales; González, M.; Gonzalez, N.; Gooden; Guerra; Guillen; Harless; Harper-Brown; Hernandez Luna; Herrero; Hilderbran; Howard; Huberty; Hughes; Hunter; Isaac; Johnson; Kacal; Keffer; King, K.; King, P.; King, S.; King, T.; Kleinschmidt; Klick; Kolkhorst; Krause; Kuempel; Larson; Laubenberg; Lavender; Leach; Lewis; Longoria; Lozano; Lucio; Márquez; Martinez; Martinez Fischer; McClendon; Menéndez; Miles; Miller, D.; Miller, R.; Moody; Morrison; Muñoz; Murphy; Naishtat; Nevárez; Oliveira; Orr; Otto; Paddie; Parker; Patrick; Perez; Perry; Phillips; Pickett; Pitts; Price; Raney; Ratliff; Raymond; Reynolds; Riddle; Ritter; Rodriguez, J.; Rose; Sanford; Schaefer; Sheets; Sheffield, J.; Sheffield, R.; Simmons; Simpson; Smith; Smithee; Springer; Stephenson; Stickland; Strama; Taylor; Thompson, E.; Thompson, S.; Toth; Turner, C.; Turner, E.S.; Turner, S.; Villalba; Villarreal; Vo; Walle; White; Workman; Wu; Zedler; Zerwas.

Present, not voting — Mr. Speaker; Bonnen, D.(C).

Absent — Deshotel; Gutierrez; Rodriguez, E.

### STATEMENT OF VOTE

When Record No. 457 was taken, I was in the house but away from my desk. I would have voted yes.

Deshotel

### HB 2414 ON THIRD READING
#### (by Button, Capriglione, Harper-Brown, Coleman, Elkins, et al.)

HB 2414, A bill to be entitled An Act relating to requirements for open meetings held by videoconference call.

HB 2414 was passed by (Record 458): 147 Yeas, 0 Nays, 2 Present, not voting.

Yeas — Allen; Alonzo; Alvarado; Anchia; Anderson; Ashby; Aycock; Bell; Bohac; Bonnen, G.; Branch; Burkett; Burnam; Button; Callegari; Canales; Capriglione; Carter; Clardy; Coleman; Collier; Cook; Cortez; Craddick; Creighton; Crownover; Dale; Darby; Davis, J.; Davis, S.; Davis, Y.; Deshotel; Dukes; Eiland; Elkins; Fallon; Farias; Farney; Farrar; Fletcher; Flynn; Frank; Frullo; Geren; Giddings; Goldman; Gonzales; González, M.; Gonzalez, N.; Gooden; Guerra; Guillen; Gutierrez; Harless; Harper-Brown; Hernandez Luna; Herrero; Hilderbran; Howard; Huberty; Hughes; Hunter; Isaac; Johnson; Kacal; Keffer; King, K.; King, P.; King, S.; King, T.; Kleinschmidt; Klick; Kolkhorst; Krause; Kuempel; Larson; Laubenberg; Lavender; Leach; Lewis; Longoria; Lozano; Lucio; Márquez; Martinez; Martinez Fischer; McClendon; Menéndez; Miles; Miller, D.; Miller, R.; Moody; Morrison; Muñoz; Murphy; Naishtat; Nevárez; Oliveira; Orr; Otto; Paddie; Parker; Patrick; Perez; Perry; Phillips; Pickett; Pitts; Price; Raney; Ratliff; Raymond; Reynolds; Riddle; Ritter; Rodriguez, E.; Rodriguez, J.; Rose; Sanford; Schaefer; Sheets; Sheffield, J.; Sheffield, R.; Simmons; Simpson; Smith; Smithee; Springer; Stephenson; Stickland; Strama; Taylor; Thompson, E.; Thompson, S.; Toth; Turner, C.; Turner, E.S.; Turner, S.; Villalba; Villarreal; Vo; Walle; White; Workman; Wu; Zedler; Zerwas.

Present, not voting — Mr. Speaker; Bonnen, D.(C).

Absent — Dutton.

### HB 2918 ON THIRD READING
#### (by S. Thompson)

HB 2918, A bill to be entitled An Act relating to statutory durable powers of attorney.

HB 2918 was passed by (Record 459): 146 Yeas, 0 Nays, 2 Present, not voting.

Yeas — Allen; Alonzo; Alvarado; Anchia; Anderson; Ashby; Aycock; Bell; Bohac; Bonnen, G.; Branch; Burkett; Burnam; Button; Callegari; Canales; Capriglione; Carter; Clardy; Coleman; Collier; Cook; Cortez; Craddick; Creighton; Crownover; Dale; Darby; Davis, J.; Davis, S.; Davis, Y.; Deshotel; Dukes; Dutton; Eiland; Elkins; Fallon; Farias; Farney; Farrar; Fletcher; Flynn; Frank; Frullo; Geren; Giddings; Goldman; Gonzales; González, M.; Gonzalez, N.; Gooden; Guerra; Guillen; Gutierrez; Harless; Harper-Brown; Hernandez Luna; Herrero; Hilderbran; Howard; Huberty; Hughes; Hunter; Isaac; Johnson; Kacal; Keffer; King, K.; King, P.; King, S.; King, T.; Kleinschmidt; Klick; Kolkhorst; Krause; Kuempel; Larson; Laubenberg; Lavender; Leach; Lewis; Longoria; Lozano; Lucio; Márquez; Martinez; Martinez Fischer; McClendon; Menéndez; Miles; Miller, D.; Miller, R.; Moody; Morrison; Muñoz; Murphy; Naishtat; Nevárez; Oliveira; Orr; Otto; Paddie; Parker; Patrick; Perez; Perry; Phillips; Pickett; Pitts; Price; Raney; Ratliff; Raymond; Reynolds; Riddle; Ritter; Rodriguez, E.; Rodriguez, J.; Rose; Sanford; Schaefer; Sheffield, J.; Sheffield, R.; Simpson; Smith; Smithee; Springer; Stephenson; Stickland; Strama; Taylor; Thompson, E.; Thompson, S.; Toth; Turner, C.; Turner, E.S.; Turner, S.; Villalba; Villarreal; Vo; Walle; White; Workman; Wu; Zedler; Zerwas.

Present, not voting — Mr. Speaker; Bonnen, D.(C).

Absent — Sheets; Simmons.

## STATEMENTS OF VOTE

When Record No. 459 was taken, I was in the house but away from my desk. I would have voted yes.

Sheets

When Record No. 459 was taken, I was in the house but away from my desk. I would have voted yes.

Simmons

## HB 3116 ON THIRD READING
### (by Cook)

**HB 3116**, A bill to be entitled An Act relating to the recovery of uniform statewide accounting project costs from state agencies and vendors.

**HB 3116** was passed by (Record 460): 146 Yeas, 0 Nays, 2 Present, not voting.

Yeas — Allen; Alonzo; Alvarado; Anchia; Anderson; Ashby; Aycock; Bell; Bohac; Bonnen, G.; Branch; Burkett; Burnam; Button; Callegari; Canales; Capriglione; Carter; Clardy; Coleman; Collier; Cook; Cortez; Craddick; Creighton; Crownover; Dale; Darby; Davis, J.; Davis, S.; Davis, Y.; Deshotel; Dukes; Dutton; Eiland; Fallon; Farias; Farney; Farrar; Fletcher; Flynn; Frank; Frullo; Geren; Giddings; Goldman; Gonzales; González, M.; Gonzalez, N.; Gooden; Guerra; Guillen; Gutierrez; Harless; Harper-Brown; Hernandez Luna; Herrero; Hilderbran; Howard; Huberty; Hunter; Isaac; Johnson; Kacal; Keffer; King, K.; King, P.; King, S.; King, T.; Kleinschmidt; Klick; Kolkhorst; Krause;

Kuempel; Larson; Laubenberg; Lavender; Leach; Lewis; Longoria; Lozano; Lucio; Márquez; Martinez; Martinez Fischer; McClendon; Menéndez; Miles; Miller, D.; Miller, R.; Moody; Morrison; Muñoz; Murphy; Naishtat; Nevárez; Oliveira; Orr; Otto; Paddie; Parker; Patrick; Perez; Perry; Phillips; Pickett; Pitts; Price; Raney; Ratliff; Raymond; Reynolds; Riddle; Ritter; Rodriguez, E.; Rodriguez, J.; Rose; Sanford; Schaefer; Sheets; Sheffield, J.; Sheffield, R.; Simmons; Simpson; Smith; Smithee; Springer; Stephenson; Stickland; Strama; Taylor; Thompson, E.; Thompson, S.; Toth; Turner, C.; Turner, E.S.; Turner, S.; Villalba; Villarreal; Vo; Walle; White; Workman; Wu; Zedler; Zerwas.

Present, not voting — Mr. Speaker; Bonnen, D.(C).

Absent — Elkins; Hughes.

## HB 3831 ON THIRD READING
### (by Herrero and Hunter)

HB 3831, A bill to be entitled An Act relating to the designation of a portion of State Highway 358 as the Peace Officers Memorial Highway.

HB 3831 was passed by (Record 461): 148 Yeas, 0 Nays, 2 Present, not voting.

Yeas — Allen; Alonzo; Alvarado; Anchia; Anderson; Ashby; Aycock; Bell; Bohac; Bonnen, G.; Branch; Burkett; Burnam; Button; Callegari; Canales; Capriglione; Carter; Clardy; Coleman; Collier; Cook; Cortez; Craddick; Creighton; Crownover; Dale; Darby; Davis, J.; Davis, S.; Davis, Y.; Deshotel; Dukes; Dutton; Eiland; Elkins; Fallon; Farias; Farney; Farrar; Fletcher; Flynn; Frank; Frullo; Geren; Giddings; Goldman; Gonzales; González, M.; Gonzalez, N.; Gooden; Guerra; Guillen; Gutierrez; Harless; Harper-Brown; Hernandez Luna; Herrero; Hilderbran; Howard; Huberty; Hughes; Hunter; Isaac; Johnson; Kacal; Keffer; King, K.; King, P.; King, S.; King, T.; Kleinschmidt; Klick; Kolkhorst; Krause; Kuempel; Larson; Laubenberg; Lavender; Leach; Lewis; Longoria; Lozano; Lucio; Márquez; Martinez; Martinez Fischer; McClendon; Menéndez; Miles; Miller, D.; Miller, R.; Moody; Morrison; Muñoz; Murphy; Naishtat; Nevárez; Oliveira; Orr; Otto; Paddie; Parker; Patrick; Perez; Perry; Phillips; Pickett; Pitts; Price; Raney; Ratliff; Raymond; Reynolds; Riddle; Ritter; Rodriguez, E.; Rodriguez, J.; Rose; Sanford; Schaefer; Sheets; Sheffield, J.; Sheffield, R.; Simmons; Simpson; Smith; Smithee; Springer; Stephenson; Stickland; Strama; Taylor; Thompson, E.; Thompson, S.; Toth; Turner, C.; Turner, E.S.; Turner, S.; Villalba; Villarreal; Vo; Walle; White; Workman; Wu; Zedler; Zerwas.

Present, not voting — Mr. Speaker; Bonnen, D.(C).

## HB 3355 ON THIRD READING
### (by Cook)

HB 3355, A bill to be entitled An Act relating to cable operators' attachments on distribution poles owned or controlled by electric cooperatives.

HB 3355 was passed by (Record 462): 148 Yeas, 0 Nays, 2 Present, not voting.

Yeas — Allen; Alonzo; Alvarado; Anchia; Anderson; Ashby; Aycock; Bell; Bohac; Bonnen, G.; Branch; Burkett; Burnam; Button; Callegari; Canales; Capriglione; Carter; Clardy; Coleman; Collier; Cook; Cortez; Craddick; Creighton; Crownover; Dale; Darby; Davis, J.; Davis, S.; Davis, Y.; Deshotel; Dukes; Dutton; Eiland; Elkins; Fallon; Farias; Farney; Farrar; Fletcher; Flynn; Frank; Frullo; Geren; Giddings; Goldman; Gonzales; González, M.; Gonzalez, N.; Gooden; Guerra; Guillen; Gutierrez; Harless; Harper-Brown; Hernandez Luna; Herrero; Hilderbran; Howard; Huberty; Hughes; Hunter; Isaac; Johnson; Kacal; Keffer; King, K.; King, P.; King, S.; King, T.; Kleinschmidt; Klick; Kolkhorst; Krause; Kuempel; Larson; Laubenberg; Lavender; Leach; Lewis; Longoria; Lozano; Lucio; Márquez; Martinez; Martinez Fischer; McClendon; Menéndez; Miles; Miller, D.; Miller, R.; Moody; Morrison; Muñoz; Murphy; Naishtat; Nevárez; Oliveira; Orr; Otto; Paddie; Parker; Patrick; Perez; Perry; Phillips; Pickett; Pitts; Price; Raney; Ratliff; Raymond; Reynolds; Riddle; Ritter; Rodriguez, E.; Rodriguez, J.; Rose; Sanford; Schaefer; Sheets; Sheffield, J.; Sheffield, R.; Simmons; Simpson; Smith; Smithee; Springer; Stephenson; Stickland; Strama; Taylor; Thompson, E.; Thompson, S.; Toth; Turner, C.; Turner, E.S.; Turner, S.; Villalba; Villarreal; Vo; Walle; White; Workman; Wu; Zedler; Zerwas.

Present, not voting — Mr. Speaker; Bonnen, D.(C).

### HB 2585 ON THIRD READING
### (by Harper-Brown, et al.)

**HB 2585**, A bill to be entitled An Act relating to the reimbursement of utilities for relocation of utility facilities following improvement or construction of certain tolled highways.

**HB 2585** was passed by (Record 463): 131 Yeas, 16 Nays, 2 Present, not voting.

Yeas — Allen; Alonzo; Anderson; Ashby; Aycock; Bell; Bohac; Bonnen, G.; Branch; Burkett; Burnam; Button; Callegari; Canales; Capriglione; Carter; Clardy; Coleman; Collier; Cook; Cortez; Craddick; Creighton; Crownover; Dale; Darby; Davis, J.; Davis, S.; Davis, Y.; Deshotel; Dukes; Dutton; Eiland; Fallon; Farias; Farney; Farrar; Fletcher; Flynn; Frullo; Geren; Giddings; Goldman; Gonzales; Gooden; Guerra; Guillen; Gutierrez; Harless; Harper-Brown; Herrero; Howard; Huberty; Hughes; Hunter; Isaac; Johnson; Kacal; Keffer; King, K.; King, P.; King, S.; King, T.; Kleinschmidt; Klick; Kolkhorst; Krause; Kuempel; Larson; Laubenberg; Lavender; Leach; Lewis; Longoria; Lozano; Márquez; Martinez; Martinez Fischer; McClendon; Menéndez; Miles; Miller, D.; Miller, R.; Moody; Morrison; Muñoz; Murphy; Naishtat; Nevárez; Oliveira; Paddie; Patrick; Perez; Perry; Pitts; Price; Raney; Ratliff; Raymond; Reynolds; Riddle; Ritter; Rodriguez, E.; Rodriguez, J.; Rose; Sanford; Schaefer; Sheets; Sheffield, J.; Sheffield, R.; Simmons; Simpson; Smith; Smithee; Springer; Stephenson; Stickland; Thompson, E.; Thompson, S.; Toth; Turner, E.S.; Turner, S.; Villalba; Villarreal; Vo; Walle; White; Workman; Wu; Zedler; Zerwas.

Nays — Alvarado; Anchia; Elkins; Frank; González, M.; Gonzalez, N.; Hernandez Luna; Hilderbran; Lucio; Orr; Otto; Phillips; Pickett; Strama; Taylor; Turner, C.

Present, not voting — Mr. Speaker; Bonnen, D.(C).

Absent — Parker.

## STATEMENTS OF VOTE

I was shown voting no on Record No. 463. I intended to vote yes.

Alvarado

I was shown voting no on Record No. 463. I intended to vote yes.

Anchia

I was shown voting yes on Record No. 463. I intended to vote no.

Creighton

I was shown voting yes on Record No. 463. I intended to vote no.

Dutton

I was shown voting no on Record No. 463. I intended to vote no.

Hilderbran

I was shown voting no on Record No. 463. I intended to vote yes.

Lucio

When Record No. 463 was taken, my vote failed to register. I would have voted yes.

Parker

I was shown voting yes on Record No. 463. I intended to vote no.

Walle

## HB 800 ON THIRD READING
### (by Murphy, Alvarado, Hilderbran, Button, E. Rodriguez, et al.)

**HB 800**, A bill to be entitled An Act relating to a sales and use tax exemption and a franchise tax credit related to certain research and development activities.

**HB 800** was passed by (Record 464): 146 Yeas, 1 Nays, 2 Present, not voting.

Yeas — Allen; Alonzo; Alvarado; Anchia; Anderson; Ashby; Aycock; Bell; Bohac; Bonnen, G.; Branch; Burkett; Burnam; Button; Callegari; Canales; Capriglione; Carter; Clardy; Coleman; Collier; Cook; Cortez; Craddick; Creighton; Crownover; Dale; Darby; Davis, J.; Davis, S.; Davis, Y.; Deshotel; Dukes; Dutton; Eiland; Elkins; Fallon; Farias; Farney; Farrar; Fletcher; Flynn; Frank; Frullo; Geren; Giddings; Goldman; Gonzales; González, M.; Gonzalez, N.; Gooden; Guerra; Guillen; Gutierrez; Harless; Harper-Brown; Hernandez Luna; Herrero; Hilderbran; Howard; Huberty; Hughes; Hunter; Isaac; Johnson;

Kacal; Keffer; King, K.; King, P.; King, S.; King, T.; Kleinschmidt; Klick; Kolkhorst; Krause; Kuempel; Larson; Laubenberg; Lavender; Leach; Lewis; Longoria; Lozano; Lucio; Márquez; Martinez; Martinez Fischer; McClendon; Menéndez; Miles; Miller, D.; Miller, R.; Moody; Morrison; Muñoz; Murphy; Naishtat; Nevárez; Oliveira; Otto; Paddie; Parker; Patrick; Perez; Perry; Phillips; Pickett; Pitts; Price; Raney; Ratliff; Raymond; Reynolds; Riddle; Ritter; Rodriguez, E.; Rodriguez, J.; Rose; Sanford; Schaefer; Sheets; Sheffield, J.; Sheffield, R.; Simmons; Smith; Smithee; Springer; Stephenson; Stickland; Strama; Taylor; Thompson, E.; Thompson, S.; Toth; Turner, C.; Turner, E.S.; Turner, S.; Villalba; Villarreal; Vo; Walle; White; Workman; Wu; Zedler; Zerwas.

Nays — Simpson.

Present, not voting — Mr. Speaker; Bonnen, D.(C).

Absent — Orr.

## STATEMENT OF VOTE

When Record No. 464 was taken, I was in the house but away from my desk. I would have voted yes.

Orr

## HB 1376 ON THIRD READING
### (by Kolkhorst)

**HB 1376**, A bill to be entitled An Act relating to advertising by certain facilities that provide emergency services.

**HB 1376** was passed by (Record 465): 147 Yeas, 0 Nays, 2 Present, not voting.

Yeas — Allen; Alonzo; Alvarado; Anchia; Anderson; Ashby; Aycock; Bell; Bohac; Bonnen, G.; Branch; Burkett; Burnam; Button; Callegari; Canales; Capriglione; Carter; Clardy; Coleman; Collier; Cook; Cortez; Craddick; Creighton; Crownover; Darby; Davis, J.; Davis, S.; Davis, Y.; Deshotel; Dukes; Dutton; Eiland; Elkins; Fallon; Farias; Farney; Farrar; Fletcher; Flynn; Frank; Frullo; Geren; Giddings; Goldman; Gonzales; González, M.; Gonzalez, N.; Gooden; Guerra; Guillen; Gutierrez; Harless; Harper-Brown; Hernandez Luna; Herrero; Hilderbran; Howard; Huberty; Hughes; Hunter; Isaac; Johnson; Kacal; Keffer; King, K.; King, P.; King, S.; King, T.; Kleinschmidt; Klick; Kolkhorst; Krause; Kuempel; Larson; Laubenberg; Lavender; Leach; Lewis; Longoria; Lozano; Lucio; Márquez; Martinez; Martinez Fischer; McClendon; Menéndez; Miles; Miller, D.; Miller, R.; Moody; Morrison; Muñoz; Murphy; Naishtat; Nevárez; Oliveira; Orr; Otto; Paddie; Parker; Patrick; Perez; Perry; Phillips; Pickett; Pitts; Price; Raney; Ratliff; Raymond; Reynolds; Riddle; Ritter; Rodriguez, E.; Rodriguez, J.; Rose; Sanford; Schaefer; Sheets; Sheffield, J.; Sheffield, R.; Simmons; Simpson; Smith; Smithee; Springer; Stephenson; Stickland; Strama; Taylor; Thompson, E.; Thompson, S.; Toth; Turner, C.; Turner, E.S.; Turner, S.; Villalba; Villarreal; Vo; Walle; White; Workman; Wu; Zedler; Zerwas.

Present, not voting — Mr. Speaker; Bonnen, D.(C).

Absent — Dale.

## STATEMENT OF VOTE

When Record No. 465 was taken, my vote failed to register. I would have voted yes.

Dale

(Ritter in the chair)

## HB 955 ON THIRD READING
### (by Isaac and Guillen)

**HB 955**, A bill to be entitled An Act relating to the penalty for the offense of reckless driving.

**HB 955** was passed by (Record 466): 145 Yeas, 0 Nays, 2 Present, not voting.

Yeas — Allen; Alonzo; Alvarado; Anchia; Anderson; Ashby; Bell; Bohac; Bonnen, D.; Bonnen, G.; Branch; Burkett; Burnam; Button; Callegari; Canales; Capriglione; Carter; Clardy; Coleman; Collier; Cook; Cortez; Craddick; Creighton; Crownover; Dale; Darby; Davis, J.; Davis, S.; Davis, Y.; Deshotel; Dukes; Dutton; Eiland; Elkins; Fallon; Farias; Farney; Farrar; Fletcher; Flynn; Frank; Frullo; Geren; Giddings; Goldman; Gonzales; González, M.; Gonzalez, N.; Gooden; Guerra; Guillen; Gutierrez; Harless; Harper-Brown; Hernandez Luna; Herrero; Hilderbran; Howard; Huberty; Hunter; Isaac; Johnson; Kacal; Keffer; King, K.; King, P.; King, S.; King, T.; Kleinschmidt; Klick; Kolkhorst; Krause; Kuempel; Larson; Laubenberg; Lavender; Leach; Lewis; Longoria; Lozano; Lucio; Márquez; Martinez; McClendon; Menéndez; Miles; Miller, D.; Miller, R.; Moody; Morrison; Muñoz; Murphy; Naishtat; Nevárez; Oliveira; Orr; Otto; Paddie; Parker; Patrick; Perez; Perry; Phillips; Pickett; Pitts; Price; Raney; Ratliff; Raymond; Reynolds; Riddle; Rodriguez, E.; Rodriguez, J.; Rose; Sanford; Schaefer; Sheets; Sheffield, J.; Sheffield, R.; Simmons; Simpson; Smith; Smithee; Springer; Stephenson; Stickland; Strama; Taylor; Thompson, E.; Thompson, S.; Toth; Turner, C.; Turner, E.S.; Turner, S.; Villalba; Villarreal; Vo; Walle; White; Workman; Wu; Zedler; Zerwas.

Present, not voting — Mr. Speaker; Ritter(C).

Absent — Aycock; Hughes; Martinez Fischer.

## STATEMENT OF VOTE

When Record No. 466 was taken, I was in the house but away from my desk. I would have voted yes.

Martinez Fischer

## HB 124 ON THIRD READING
### (by Anderson, Stephenson, Price, Flynn, et al.)

**HB 124**, A bill to be entitled An Act relating to the addition of Salvia divinorum and its derivatives and extracts to Penalty Group 3 of the Texas Controlled Substances Act.

### HB 124 - REMARKS

REPRESENTATIVE SIMPSON: I'm going to be brief here. We had some discussion on this bill yesterday, but this bill will criminalize a plant, and in 1 Timothy 4:4, God said there that all things that God created are good. I think what we should be doing here is punishing the wrongdoer, and if you use something, and neglect it, and do something wrong then we should punish them, but we should not be making a felony out of just possessing a plant. And some people do use this plant as extract and things medicinally. The Harvard Medical School stated that salvia could reduce dependence upon stimulants. The National Institute of Mental Health's Psychoactive Drug Screening Program said that salvia could be useful for a range of diseases including Alzheimer's, depression, schizophrenia, chronic pain, or even AIDS or HIV. And there are some who do use this plant religiously, and though I differ with them, I believe it's my duty to protect their right to worship as they please and according to their conscience, as long as they're not harming someone else.

It's been said that this drug causes lots of problems, it's hallucinogenic. The effect is for about 10 minutes, and it's akin to having a daydream. And I think we make a mistake in going ahead and making this a part of the Schedule III drugs that are prohibited when the FDA has not added it to the list. So I urge you not to extend the war on drugs, which has been a real failure in many ways. Thank you for your consideration. I urge you to vote against the bill.

**HB 124** was passed by (Record 467): 129 Yeas, 17 Nays, 2 Present, not voting.

Yeas — Allen; Alonzo; Alvarado; Anchia; Anderson; Ashby; Aycock; Bell; Bohac; Bonnen, D.; Bonnen, G.; Branch; Burkett; Button; Callegari; Capriglione; Carter; Clardy; Coleman; Collier; Cook; Cortez; Craddick; Creighton; Crownover; Dale; Darby; Davis, J.; Davis, S.; Davis, Y.; Dukes; Dutton; Eiland; Elkins; Fallon; Farias; Farney; Farrar; Fletcher; Flynn; Frullo; Geren; Giddings; Goldman; Gonzales; Gonzalez, N.; Guerra; Guillen; Gutierrez; Harless; Harper-Brown; Hernandez Luna; Herrero; Huberty; Hunter; Isaac; Johnson; Kacal; Keffer; King, K.; King, P.; King, S.; King, T.; Kleinschmidt; Klick; Kolkhorst; Krause; Kuempel; Larson; Laubenberg; Lavender; Leach; Lewis; Longoria; Lozano; Lucio; Márquez; Martinez; Martinez Fischer; McClendon; Menéndez; Miller, D.; Miller, R.; Moody; Morrison; Muñoz; Murphy; Naishtat; Oliveira; Orr; Otto; Paddie; Parker; Patrick; Perez; Perry; Phillips; Pickett; Pitts; Price; Raney; Ratliff; Raymond; Reynolds; Riddle; Rodriguez, J.; Sheets; Sheffield, J.; Sheffield, R.; Simmons; Smith; Smithee; Springer; Stephenson; Strama; Taylor; Thompson, E.; Thompson, S.; Toth; Turner, C.; Turner, E.S.; Turner, S.; Villalba; Vo; Walle; White; Workman; Zedler; Zerwas.

Nays — Burnam; Canales; Deshotel; Frank; Gooden; Hilderbran; Howard; Hughes; Miles; Nevárez; Rodriguez, E.; Rose; Schaefer; Simpson; Stickland; Villarreal; Wu.

Present, not voting — Mr. Speaker; Ritter(C).

Absent — González, M.; Sanford.

### STATEMENTS OF VOTE

When Record No. 467 was taken, my vote failed to register. I would have voted present, not voting.

M. González

I was shown voting no on Record No. 467. I intended to vote yes.

Hilderbran

I was shown voting no on Record No. 467. I intended to vote yes.

Miles

### HB 1337 ON THIRD READING
#### (by D. Bonnen, Riddle, et al.)

**HB 1337**, A bill to be entitled An Act relating to the frequency with which the Board of Pardons and Paroles considers the eligibility of certain inmates for release on parole.

**Amendment No. 1**

Representative Toth offered the following amendment to **HB 1337**:

Amend **HB 1337** (second reading engrossment) on third reading in SECTION 1 of the bill, as added by Amendment No. 1 by Toth, as follows:

(1) On page 1, line 5, strike "Subsections (b) and (e)" and substitute "Subsections (b), (c), and (e)".

(2) On page 1, line 9, strike "consideration" and substitute "proceedings [consideration]".

(3) Strike all of the language appearing on page 1, line 16, through page 2, line 16, and substitute the following:

(b-1)  Regardless of whether a victim, guardian of a victim, or close relative of a deceased victim provided a victim impact statement or indicated on the statement that the person did or did not wish to be notified of parole proceedings concerning an inmate, the victim, guardian, or close relative may at any time file with the division a written statement indicating that the person:

(1)  eternally protests the release of the inmate under any circumstance and urges the protest to be considered in any parole proceeding concerning the inmate; and

(2)  with respect to notification of parole proceedings concerning the inmate:

(A)  wishes to be notified of any parole proceedings by the division;

(B)  wishes to be notified only after a parole panel orders the release of the inmate; or

(C) does not wish to be notified at any time, including after a parole panel orders the release of the inmate.

(b-2) A victim, guardian of a victim, or close relative of a deceased victim who files a statement with the division under Subsection (b-1) may at any time on written notice to the division:

(1) withdraw the person's protest under Subsection (b-1)(1); or

(2) indicate a change in the circumstances under which the person wishes to be notified under Subsection (b-1)(2).

(c) If the notice is sent to a guardian or close relative of a deceased victim, the notice must contain a request by the division that the guardian or relative inform other persons having an interest in the matter that the inmate is the subject of a parole proceeding [being considered for release on parole].

(e) Before an inmate is released from the institutional division on parole or to mandatory supervision, the pardons and paroles division shall give notice of the release to a person entitled to notification of parole proceedings concerning [consideration for] the inmate under Subsection (a) or (b), unless:

(1) the person has filed with the division a written statement described by Subsection (b-1)(2)(C) and has not withdrawn that statement; or

(2) the parole panel ordering the release of the inmate determines that, nothwithstanding a written statement described by Subsection (b-1)(2)(C), notification is necessary to the person's safety.

Amendment No. 1 was adopted.

**HB 1337**, as amended, was passed by (Record 468): 148 Yeas, 0 Nays, 2 Present, not voting.

Yeas — Allen; Alonzo; Alvarado; Anchia; Anderson; Ashby; Aycock; Bell; Bohac; Bonnen, D.; Bonnen, G.; Branch; Burkett; Burnam; Button; Callegari; Canales; Capriglione; Carter; Clardy; Coleman; Collier; Cook; Cortez; Craddick; Creighton; Crownover; Dale; Darby; Davis, J.; Davis, S.; Davis, Y.; Deshotel; Dukes; Dutton; Eiland; Elkins; Fallon; Farias; Farney; Farrar; Fletcher; Flynn; Frank; Frullo; Geren; Giddings; Goldman; Gonzales; González, M.; Gonzalez, N.; Gooden; Guerra; Guillen; Gutierrez; Harless; Harper-Brown; Hernandez Luna; Herrero; Hilderbran; Howard; Huberty; Hughes; Hunter; Isaac; Johnson; Kacal; Keffer; King, K.; King, P.; King, S.; King, T.; Kleinschmidt; Klick; Kolkhorst; Krause; Kuempel; Larson; Laubenberg; Lavender; Leach; Lewis; Longoria; Lozano; Lucio; Márquez; Martinez; Martinez Fischer; McClendon; Menéndez; Miles; Miller, D.; Miller, R.; Moody; Morrison; Muñoz; Murphy; Naishtat; Nevárez; Oliveira; Orr; Otto; Paddie; Parker; Patrick; Perez; Perry; Phillips; Pickett; Pitts; Price; Raney; Ratliff; Raymond; Reynolds; Riddle; Rodriguez, E.; Rodriguez, J.; Rose; Sanford; Schaefer; Sheets; Sheffield, J.; Sheffield, R.; Simmons; Simpson; Smith; Smithee; Springer; Stephenson; Stickland; Strama; Taylor; Thompson, E.; Thompson, S.; Toth; Turner, C.; Turner, E.S.; Turner, S.; Villalba; Villarreal; Vo; Walle; White; Workman; Wu; Zedler; Zerwas.

Present, not voting — Mr. Speaker; Ritter(C).

(Speaker in the chair)

## COMMITTEE GRANTED PERMISSION TO MEET

Representative Hunter requested permission for the Committee on Calendars to meet while the house is in session, at 3:30 p.m. today, in 3W.9, to set a calendar.

Permission to meet was granted.

## COMMITTEE MEETING ANNOUNCEMENT

The following committee meeting was announced:

Calendars, 3:30 p.m. today, 3W.9, for a formal meeting, to set a calendar.

## POSTPONED BUSINESS

The following bills were laid before the house as postponed business:

## CSHB 318 ON SECOND READING
### (by Giddings)

**CSHB 318**, A bill to be entitled An Act relating to employer access to the personal accounts of certain employees and job applicants through electronic communication devices; establishing an unlawful employment practice.

**CSHB 318** was read second time on May 1, an amendment was offered and disposed of, and **CSHB 318** was postponed until 4 a.m. today.

### Amendment No. 2

Representative Giddings offered the following amendment to **CSHB 318**:

Amend **CSHB 318** as follows:

1)  In SECTION 1 of the bill, strike subsection (a) (page 1, lines 8 through 16) and substitute the following:

Sec. 21.0605.  REQUIRING OR REQUESTING PERSONAL ACCOUNT ACCESS.  (a) In this section, "electronic communication device" includes a computer, telephone, personal digital assistant, or similar device that uses electronic signals to create, transmit, and receive information.

2)  In SECTION 1 of the bill, strike subsection (b) (page 1, lines 17 through 22) and substitute the following:

(b) An employer, other than a state or local law enforcement agency, commits an unlawful employment practice if the employer requires or requests that an employee or applicant for employment disclose a user name, password, or other means for accessing a personal account of the employee or applicant, including a personal e-mail account or a social networking website account or profile, through an electronic communication device.

Amendment No. 2 was adopted.

### Amendment No. 3

Representative Giddings offered the following amendment to **CSHB 318**:

Amend **CSHB 318** as follows:

1)  In SECTION 1 of the bill, strike subsection (c) (page 1, line 23 through page 2, line 15) and substitute the following:

(c)  This section does not prohibit an employer from:

(1)  maintaining lawful workplace policies governing:

(A)  employee usage of employer-provided electronic communication devices, including employee access to personal accounts on those devices; or

(B)  employee usage of personal electronic communication devices during working hours;

(2)  monitoring employee usage of employer-provided electronic communication devices or employer-provided e-mail accounts; or

(3)  obtaining information about an employee or applicant for employment that is in the public domain or that is otherwise lawfully obtained.

2)  In SECTION 1 of the bill, strike subsection (d) (page 2, lines 16 through 17) and substitute the following:

(d)  This section does not apply to a personal social media account or an electronic communication device of a financial services employee who uses the account or device to conduct business of the employer that is subject to the content, supervision, and retention requirements imposed by federal securities laws and regulations or by a self-regulatory organization, as defined by Section 3(a)(26), Securities Exchange Act of 1934 (15 U.S.C. Section 78c).

3)  In SECTION 1 of the bill, strike subsection (e) through subsection (g) (page 2, lines 18 through page 3, line 23).

Amendment No. 3 was adopted.

### LEAVES OF ABSENCE GRANTED

The following members were granted leaves of absence temporarily for today to attend a committee meeting:

Branch on motion of Raymond.

Button on motion of Raymond.

Cook on motion of Raymond.

Crownover on motion of Raymond.

S. Davis on motion of Raymond.

Eiland on motion of Bohac.

Frullo on motion of Raymond.

Geren on motion of Raymond.

Hunter on motion of Raymond.

Kuempel on motion of Raymond.

D. Miller on motion of Raymond.

### CSHB 318 - (consideration continued)

(R. Sheffield in the chair)

Representative Giddings moved to postpone consideration of **CSHB 318** until 3:50 p.m. today.

The motion prevailed.

### CSHB 866 ON SECOND READING
### (by Huberty, S. Turner, Cook, Miles, et al.)

**CSHB 866**, A bill to be entitled An Act relating to the administration to public school students in certain grades of state-administered assessment instruments.

**CSHB 866** was read second time on May 1 and was postponed until 8 a.m. today.

### Amendment No. 1

Representative Huberty offered the following amendment to **CSHB 866**:

Amend **CSHB 866** (house committee report) as follows:
(1)  On page 1, line 20, strike "and".
(2)  Strike page 1, line 23 through page 2, line 2, and substituting the following:
        [(4)]  social studies, in grade eight; and
        (4) [(5)]  science, in grades five and eight[; and
        [(6) any other subject and grade required by federal law].

Amendment No. 1 was adopted.

### Amendment No. 2

Representative Huberty offered the following amendment to **CSHB 866**:

Amend **CSHB 866** (house committee report) on page 9, by striking lines 10-16 and substituting the following:
SECTION 2.  (a) This Act takes effect on any date not later September 1, 2015, on which the commissioner of education:
        (1)  obtains any necessary waiver from the application of federal law or regulation conflicting with Section 39.023, Education Code, as amended by this Act, as required by Section 39.023(a-9), Education Code, as added by this Act; or
        (2)  receives written notification from the United States Department of Education that a waiver is not required.
    (b)  This Act applies beginning with the first school year that begins after the date on which this Act takes effect under Subsection (a) of this section.
    (c)  If the commissioner of education obtains any necessary waiver or receives written notification as described by Subsection (a) of this section, the commissioner shall certify that the commissioner has obtained the waiver or received notification that a waiver is not required, as applicable, and shall publish notice of that fact in the Texas Register as soon as practicable after obtaining the waiver or receiving notification.

Amendment No. 2 was adopted.

**CSHB 866**, as amended, was passed to engrossment.

(Branch, Button, Cook, Crownover, S. Davis, Eiland, Frullo, Geren, Hunter, Kuempel, and D. Miller now present)

### CSHB 376 ON SECOND READING
### (by Strama, Price, Zerwas, N. Gonzalez, Wu, et al.)

**CSHB 376**, A bill to be entitled An Act relating to the regulation of child-care providers by the Texas Workforce Commission and local workforce development boards.

**CSHB 376** was read second time on May 1 and was postponed until 10 a.m. today.

Representative Strama moved to postpone consideration of **CSHB 376** until 4 p.m. today.

The motion prevailed.

### CSHB 3447 ON SECOND READING
### (by Gutierrez)

**CSHB 3447**, A bill to be entitled An Act relating to the establishment and functions of certain urban land bank demonstration programs.

**CSHB 3447** was read second time on May 1 and was postponed until 12 p.m. today.

**CSHB 3447** was passed to engrossment. (Anderson, Button, Schaefer, and Simpson recorded voting no.)

### GENERAL STATE CALENDAR
### HOUSE BILLS
### SECOND READING

The following bills were laid before the house and read second time:

### CSHB 3201 ON SECOND READING
### (by Kolkhorst)

**CSHB 3201**, A bill to be entitled An Act relating to the practice of dentistry; imposing surcharges and fees.

Representative Kolkhorst moved to postpone consideration of **CSHB 3201** until 4 p.m. today.

The motion prevailed.

### CSHB 983 ON SECOND READING
### (by Elkins)

**CSHB 983**, A bill to be entitled An Act relating to the eligibility of temporary election officers for unemployment compensation.

**CSHB 983** was passed to engrossment.

## HB 985 ON SECOND READING
### (by Elkins)

**HB 985**, A bill to be entitled An Act relating to the deadlines by which provisional ballots must be processed and the state canvass must be conducted for certain elections.

**HB 985** was passed to engrossment.

## LEAVE OF ABSENCE GRANTED

The following member was granted leave of absence for the remainder of today to attend a meeting of the Conference Committee on **SB 1**:

Pitts on motion of Geren.

## MESSAGE FROM THE SENATE

A message from the senate was received at this time (see the addendum to the daily journal, Messages from the Senate, Message No. 3).

## CSHB 1010 ON SECOND READING
### (by S. King)

**CSHB 1010**, A bill to be entitled An Act relating to the penalty for causing certain assaultive physical contact with a child.

Representative S. King moved to postpone consideration of **CSHB 1010** until 4:45 p.m. today.

The motion prevailed.

## CSHB 1081 ON SECOND READING
### (by M. González and Nevárez)

**CSHB 1081**, A bill to be entitled An Act relating to a study regarding the prohibition of dairy farming in certain areas of the state.

**Amendment No. 1**

Representative M. González offered the following amendment to **CSHB 1081**:

Amend **CSHB 1081** by striking page 1, line 22, through page 2, line 1, and renumbering the subsequent subdivisions of SECTION 1(c) of the bill accordingly.

Amendment No. 1 was adopted.

**CSHB 1081**, as amended, was passed to engrossment. (Simpson recorded voting no.)

## CSHB 1324 ON SECOND READING
### (by J. Davis, et al.)

**CSHB 1324**, A bill to be entitled An Act relating to exclusion of land from certain water districts that fail to provide service to the land; clarifying and limiting the authority of those districts with outstanding bonds payable from ad valorem taxes to impose taxes on excluded land.

**CSHB 1324** was passed to engrossment.

(Márquez in the chair)

## CSHB 585 ON SECOND READING
### (by Villarreal, Workman, and P. King)

**CSHB 585**, A bill to be entitled An Act relating to ad valorem taxation; creating an offense.

Representative Otto moved to postpone consideration of **CSHB 585** until 4:30 p.m. today.

The motion prevailed.

## SB 1546 ON SECOND READING
### (Guillen - House Sponsor)

**SB 1546**, A bill to be entitled An Act relating to the management and use of the Texas preservation trust fund.

**SB 1546** was considered in lieu of **HB 3651**.

### Amendment No. 1

Representative Orr offered the following amendment to **SB 1546**:

Amend **SB 1546** (house committee printing) on page 3 of the bill as follows:
(1)  On line 8, strike "increase" and substitute "make".
(2)  On line 11, strike "seven" and substitute "six".

Amendment No. 1 was adopted.

**SB 1546**, as amended, was passed to third reading.

## HB 3651 - LAID ON THE TABLE SUBJECT TO CALL

Representative Guillen moved to lay **HB 3651** on the table subject to call.

The motion prevailed.

## POSTPONED BUSINESS

The following bills were laid before the house as postponed business:

## CSHB 318 ON SECOND READING
### (by Giddings)

**CSHB 318**, A bill to be entitled An Act relating to employer access to the personal accounts of certain employees and job applicants through electronic communication devices; establishing an unlawful employment practice.

**CSHB 318** was read second time on May 1, an amendment was offered and disposed of, and **CSHB 318** was postponed until 4 a.m. today. **CSHB 318** was laid before the house as postponed business earlier today, was further amended, and was again postponed until this time.

### Amendment No. 4

Representative Kleinschmidt offered the following amendment to **CSHB 318**:

Amend **CSHB 318** (house committee printing), as follows:

(1)  Add the following appropriately lettered subsection to Section 21.0605, Labor Code:

(    )  This  section  does  apply  if  an  employer  and  an  employee  of  the employer  have  entered  into  a  contractual  agreement  under  which  the  employee consents  to  the  disclosure  of  a  user  name,  password,  or  other  means  of  accessing a  personal  account  of  the  employee  through  an  electronic  communication  device.

Amendment No. 4 was adopted.

## COMMITTEE GRANTED PERMISSION TO MEET

Representative  Keffer  requested  permission  for  the  Committee  on  Energy Resources  to  meet  while  the  house  is  in  session,  at  4:30 p.m.  today,  in  3W.9,  to consider **HB 2590**, **HB 3168**, and **HB 3597**.

Permission to meet was granted.

## COMMITTEE MEETING ANNOUNCEMENT

The following committee meeting was announced:

Energy  Resources,  4:30 p.m.  today,  3W.9,  for  a  formal  meeting,  to  consider **HB 2590**, **HB 3168**, and **HB 3597**.

## CSHB 318 - (consideration continued)

## CSHB 318 - REMARKS

REPRESENTATIVE WU:  Members,  let  me  clarify  a  few  things.  First  of  all,  we need  to  make  an  important  distinction  between  communications  that  are  personal and  communications  that  are  business.  They  are  separate.  If  you  go  to  work  for  a large  company,  that  company  may  give  you  a  computer  at  your  desk—that  is  the company's  computer.  They  may  give  you  a  cell  phone  to  use  for  your business—that  is  a  company  cell  phone.  They  may  give  you  an  e-mail  account  to use  to  conduct  company  business—that  is  the  company's  e-mail.  But,  even  still, you  have  your  own  personal  cell  phone,  your  own  personal  computer  at  home, your  own  personal  e-mail  account,  okay?  What  this  bill  is  saying  is,  we  are protecting  your  personal  phone,  your  personal  computer,  and  your  personal e-mail—not  the  company's.  The  company  always  has  access  to  their  own systems.  A  company  always  has  access  to  their  own  machines  and  their  own devices—we don't need a law to do that.

What  we  are  protecting  here—what  we  are  setting  as  an  example  today  is  to make  sure  that  our  private  accounts  are  protected.  In  the  age  of  continuing advancement  in  social  media  and  technology,  this  is  an  important  first  step.  But even  libertarian  concerns  aside,  civil  liberties  concerns  aside,  there  is  an important, let's say, criminal concern. One of the basic things is, Texas provides higher  evidentiary  collection  standards  than  the  federal  government. Representative  Toth  talked  about  the  4th  Amendment—the  4th  Amendment  of the  Constitution  of  the  United  States  provides  a  baseline  which  no  state  may  slip under.  However,  each  state  may  provide  higher  protections  than  what  the Constitution  provides,  and  Texas  is  one  of  those  states  that  actually  provides higher standards than what the U.S. Constitution provides. In Texas, the law says

if an officer violates your civil rights in collecting evidence, that evidence is out. The federal U.S. Constitution says the same thing. However, in Texas, the protections in the state also say, look, we don't care if it's an officer or a private individual. If a private individual, on their own, goes and digs for information and violates someone else's civil rights, that evidence is also out. They may not go dig for themselves and hand it to the police. Our Texas Constitution provides a higher standard of protection.

This is the concern—if an employer is able to access someone's personal e-mail, violating that person's rights, and then, they discover some stuff that is unrelated business, that maybe links that person to a crime, if they hand that evidence over to the police, and the police investigate, and the police finds further evidence, all of that evidence is now out. This law tries to prevent those types of situations from happening, saying, look, if you're an employer, and you think your employee is committing a crime against you and you want to get into their personal e-mail account, call an officer. The officer will call a DA. The DA will draft a warrant, and they will get it correctly to make sure the evidence is properly admissible.

REPRESENTATIVE TOTH:  Gene, you've served as a district attorney, haven't you?

WU:  I served as an assistant district attorney.

TOTH:  So, you prosecuted cases, correct?

WU:  Yes, sir.

TOTH:  If a corporation went on a hunting expedition and violated someone's 4th Amendment rights, could that potentially destroy the case?

WU:  It potentially could, because if a court decided that evidence was gathered in violation of either the U.S. Constitution or the Texas Constitution, that evidence would most likely be excluded.

TOTH:  So, the Villalba amendment could actually destroy a case?

WU:  It's possible.

TOTH:  It could actually have unintended consequences work against it?

WU:  If that's what a court decides, and I'm saying that there is a distinct possibility of that.

**CSHB 318**, as amended, was passed to engrossment by (Record 469): 79 Yeas, 61 Nays, 2 Present, not voting.

Yeas — Allen; Alonzo; Alvarado; Anderson; Bohac; Branch; Burkett; Canales; Coleman; Collier; Cook; Cortez; Creighton; Crownover; Davis, J.; Davis, Y.; Deshotel; Dukes; Dutton; Eiland; Elkins; Farias; Farrar; Fletcher; Frank; Giddings; González, M.; Gonzalez, N.; Guerra; Guillen; Gutierrez; Harless; Harper-Brown; Hernandez Luna; Herrero; Howard; Huberty; Hunter; King, S.; King, T.; Kleinschmidt; Longoria; Lozano; Lucio; Martinez; Martinez Fischer; McClendon; Menéndez; Miles; Miller, R.; Moody; Muñoz; Naishtat;

Oliveira; Orr; Otto; Patrick; Perez; Pickett; Ratliff; Raymond; Reynolds; Riddle; Ritter; Rodriguez, E.; Rose; Sheets; Smithee; Thompson, S.; Toth; Turner, C.; Turner, S.; Villarreal; Vo; Walle; Workman; Wu; Zedler; Zerwas.

Nays — Anchia; Ashby; Aycock; Bell; Bonnen, D.; Bonnen, G.; Button; Capriglione; Carter; Clardy; Craddick; Dale; Darby; Davis, S.; Fallon; Farney; Flynn; Frullo; Geren; Goldman; Gonzales; Gooden; Hilderbran; Isaac; Kacal; Keffer; King, K.; Klick; Kolkhorst; Krause; Kuempel; Larson; Lavender; Leach; Lewis; Miller, D.; Murphy; Nevárez; Paddie; Parker; Perry; Phillips; Price; Raney; Rodriguez, J.; Sanford; Schaefer; Sheffield, J.; Sheffield, R.; Simmons; Simpson; Smith; Springer; Stephenson; Stickland; Strama; Taylor; Thompson, E.; Turner, E.S.; Villalba; White.

Present, not voting — Mr. Speaker; Márquez(C).

Absent, Excused, Committee Meeting — Pitts.

Absent — Burnam; Callegari; Hughes; Johnson; King, P.; Laubenberg; Morrison.

## STATEMENTS OF VOTE

I was shown voting yes on Record No. 469. I intended to vote no.

Anderson

When Record No. 469 was taken, I was in the house but away from my desk. I would have voted yes.

Burnam

I was shown voting yes on Record No. 469. I intended to vote no.

Creighton

I was shown voting no on Record No. 469. I intended to vote yes.

J. Rodriguez

## CSHB 376 ON SECOND READING
### (by Strama, Price, Zerwas, N. Gonzalez, Wu, et al.)

**CSHB 376**, A bill to be entitled An Act relating to the regulation of child-care providers by the Texas Workforce Commission and local workforce development boards.

**CSHB 376** was read second time on May 1, postponed until 10 a.m. today, and was again postponed until this time.

## Amendment No. 1

Representative Y. Davis offered the following amendment to **CSHB 376**:

Amend **CSHB 376**, on page 5, at the end of line 20, by inserting "A board shall give priority to quality child care initiatives that benefit child care facilities that are working toward Texas Rising Star certification or are Texas Rising Star certified providers working toward a higher certification level.".

Amendment No. 1 was adopted.

**CSHB 376**, as amended, was passed to engrossment.  (Phillips recorded voting no.)

## CSHB 3201 ON SECOND READING
### (by Kolkhorst)

**CSHB 3201**, A bill to be entitled An Act relating to the practice of dentistry; imposing surcharges and fees.

**CSHB 3201** was read second time earlier today and was postponed until this time.

### Amendment No. 1

Representative Kolkhorst offered the following amendment to **CSHB 3201**:

Amend **CSHB 3201** (house committee printing) as follows:
(1)  On page 1, line 7, strike "$80" and substitute "$55".
(2)  On page 1, line 9, between "a" and "license", insert "dental".
(3)  On page 1, line 10, between "a" and "license", insert "dental".
(4)  On page 2, line 6, strike "45th" and substitute "60th".
(5)  On page 3, line 2, strike "may" and substitute "shall".
(6)  On page 8, between lines 9 and 10, add the following appropriately numbered SECTION to the bill and renumber subsequent SECTIONS of the bill accordingly:
SECTION ____. Section 254.004(c), Occupations Code, as added by this Act, applies only to an application for an original dental license or for renewal of a dental license filed on or after September 1, 2013. An application filed before September 1, 2013, is governed by the law in effect immediately before that date, and that law is continued in effect for that purpose.
(7)  On page 8, line 20, strike "takes" and substitute "and Sections 254.004(c) and (d), Occupations Code, as added by this Act, take".

Amendment No. 1 was adopted.

### Amendment No. 2

Representative Kolkhorst offered the following amendment to **CSHB 3201**:

Amend **CSHB 3201** (house committee printing) by adding the following appropriately numbered SECTIONS to the bill and renumbering subsequent SECTIONS of the bill and references to those sections accordingly:
SECTION ____. Subchapter B, Chapter 258, Occupations Code, is amended by adding Section 258.055 to read as follows:
Sec. 258.055.  PRACTICE OF DENTISTRY ON CERTAIN CHILDREN. (a)  The parent or guardian of a child younger than 18 years of age may be present in the treatment room during the child's dental treatment or procedure, unless the dentist determines in the dentist's professional judgment that the presence of the parent or guardian in the treatment room is likely to have an adverse effect on the treatment or the child.
(b)  In this section, "parent or guardian" includes a person authorized by law to consent for the medical or dental treatment of a child younger than 18 years of age.

SECTION ____. (a)  The Texas State Board of Dental Examiners shall collect the following information from dentists licensed by the board in conjunction with the first annual license renewal of each dental license that occurs after September 1, 2013:

(1)  the number and type of dentists employed by the license holder, if any;

(2)  the name under which the license holder provides dental services and each location at which those services are provided by that license holder;

(3)  whether the license holder is a participating provider under the Medicaid program operated under Chapter 32, Human Resources Code, or the child health plan program operated under Chapter 62, Health and Safety Code;

(4)  whether the license holder is employed by or contracts with a dental group practice and, if so, the name and address of the dental group practice;

(5)  whether the license holder owns a dental group practice and, if so, the name and address of the dental group practice and of each dental office at which the dental group practice provides services to patients;

(6)  whether the license holder is a party to a business support services agreement and, if so, the name and address of the management service organization that provides services under the agreement; and

(7)  if the license holder owns a dental group practice, whether that practice is a party to a business support services agreement and, if so, the name and address of the management service organization that provides services under the agreement.

(b)  Not later than November 1, 2014, the board shall provide a report to the legislature on the information collected under this section and on the board's use of the information in the exercise of the board's statutory authority to regulate the practice of dentistry.

(c)  This section expires December 1, 2014.

Amendment No. 2 was adopted.

## Amendment No. 3

Representative Fletcher offered the following amendment to **CSHB 3201**:

Amend **CSHB 3201** (house committee printing) by adding the following appropriately numbered SECTION to the bill and renumbering subsequent SECTIONS of the bill and references to those sections accordingly:

SECTION ____.  Section 254.018, Occupations Code, is amended to read as follows:

Sec. 254.018.  [EXPERT] TESTIMONY. A member of the board may not express an oral or written opinion or serve as an expert witness in a suit involving a health care liability claim against a person licensed or registered under this subtitle [dentist] for injury to or death of a patient or for a violation of the standard of care or the commission of malpractice [unless the member receives approval from the board or an executive committee of the board to serve as an expert witness].

Amendment No. 3 was adopted. (The vote was reconsidered later today, and Amendment No. 3 was amended and was adopted, as amended.)

**CSHB 3201**, as amended, was passed to engrossment. (Springer recorded voting no.) (The vote was reconsidered later today, and **CSHB 3201** was further amended and was passed to engrossment, as amended.)

## CSHB 205 ON SECOND READING
### (by McClendon, Kolkhorst, Burkett, J. Davis, Rose, et al.)

**CSHB 205**, A bill to be entitled An Act relating to the allocation of outpatient mental health services and beds in certain mental health facilities and the commitment of certain persons to receive mental health services.

### Amendment No. 1

Representative Menéndez offered the following amendment to **CSHB 205**:

Amend **CSHB 205** (house committee printing) by adding the following appropriately numbered SECTIONS to the bill and renumbering subsequent SECTIONS of the bill accordingly:

SECTION ____. Subchapter B, Chapter 32, Human Resources Code, is amended by adding Section 32.0264 to read as follows:

Sec. 32.0264. SUSPENSION, TERMINATION, AND AUTOMATIC REINSTATEMENT OF ELIGIBILITY FOR CERTAIN PERSONS CONFINED IN COUNTY JAILS. (a) In this section, "county jail" means a facility operated by or for a county for the confinement of persons accused or convicted of an offense.

(b) If a person with mental illness is confined in a county jail, the department shall suspend the person's eligibility for medical assistance during the period the person is confined in the county jail if:

(1) the person has been charged with but not convicted of an offense; and

(2) the department has reason to believe that the person:

(A) after release or discharge from the county jail, will be admitted to a state hospital for emergency detention under Chapter 573, Health and Safety Code, or ordered by a court under Chapter 574, Health and Safety Code, to receive inpatient mental health services at a state hospital; or

(B) will be committed to a state hospital to attain competency to stand trial under Chapter 46B, Code of Criminal Procedure, or to receive inpatient mental health services following an acquittal by reason of insanity under Chapter 46C, Code of Criminal Procedure.

(c) If a person with mental illness is confined in a county jail, the department shall, as appropriate, terminate the person's eligibility for medical assistance or suspend the person's eligibility during the period the person is confined in the county jail if:

(1) the person has been convicted of an offense; and

(2)  the department has reason to believe that the person, after release or discharge from the county jail, will be admitted to a state hospital for emergency detention under Chapter 573, Health and Safety Code, or ordered by a court under Chapter 574, Health and Safety Code, to receive inpatient mental health services at a state hospital.

(d)  Not later than 48 hours after the department is notified of the release from a county jail of a person whose eligibility for medical assistance has been suspended under this section, the department shall reinstate the person's eligibility, provided the person's eligibility certification period has not elapsed. Following the reinstatement, the person remains eligible until the expiration of the period for which the person was certified as eligible.

SECTION ____.  Subchapter C, Chapter 351, Local Government Code, is amended by adding Section 351.048 to read as follows:

Sec. 351.048.  NOTICE TO CERTAIN GOVERNMENTAL ENTITIES. (a) The sheriff of a county may notify the Health and Human Services Commission:

(1)  on the confinement in the county jail of a person with mental illness who:

(A)  is receiving medical assistance benefits under Chapter 32, Human Resources Code; and

(B)  the sheriff has reason to believe would qualify for a suspension of those benefits under Section 32.0264(b), Human Resources Code; and

(2)  on the conviction of a prisoner with mental illness who:

(A)  immediately before the prisoner's confinement in the county jail, was receiving medical assistance benefits; and

(B)  the sheriff has reason to believe would qualify for a suspension of those benefits under Section 32.0264(c), Human Resources Code.

(b)  If the sheriff of a county chooses to provide the notices described by Subsection (a), the sheriff shall provide the notices electronically or by other appropriate means as soon as possible and not later than the 30th day after the date of the person's confinement or prisoner's conviction, as applicable.

(c)  The sheriff of a county may notify:

(1)  the United States Social Security Administration of the release or discharge of a prisoner with mental illness:

(A)  who immediately before the prisoner's confinement in the county jail, was receiving:

(i)  Supplemental Security Income (SSI) benefits under 42 U.S.C. Section 1381 et seq.; or

(ii)  Social Security Disability Insurance (SSDI) benefits under 42 U.S.C. Section 401 et seq.; and

(B)  who:

(i)  has been committed to a state hospital to attain competency to stand trial under Chapter 46B, Code of Criminal Procedure, or to receive inpatient mental health services following an acquittal by reason of insanity under Chapter 46C, Code of Criminal Procedure; or

(ii)  the sheriff has reason to believe will be admitted to a state hospital for emergency detention under Chapter 573, Health and Safety Code, or ordered by a court under Chapter 574, Health and Safety Code, to receive inpatient mental health services at a state hospital; and

(2)  the Health and Human Services Commission of the release or discharge of a prisoner with mental illness who, immediately before the prisoner's confinement in the county jail, was receiving medical assistance benefits and who:

(A)  has been committed to a state hospital to attain competency to stand trial under Chapter 46B, Code of Criminal Procedure, or to receive inpatient mental health services following an acquittal by reason of insanity under Chapter 46C, Code of Criminal Procedure; or

(B)  the sheriff has reason to believe will be admitted to a state hospital for emergency detention under Chapter 573, Health and Safety Code, or ordered by a court under Chapter 574, Health and Safety Code, to receive inpatient mental health services at a state hospital.

(d)  If the sheriff of a county chooses to provide the notices described by Subsection (c), the sheriff shall provide the notices electronically or by other appropriate means not later than 48 hours after the prisoner's release or discharge from custody.

(e)  If the sheriff of a county chooses to provide the notices described by Subsection (c), at the time of the prisoner's release or discharge, the sheriff shall provide the prisoner with a written copy of each applicable notice and a phone number at which the prisoner may contact the Health and Human Services Commission regarding confirmation of or assistance relating to reinstatement of the person's eligibility for medical assistance benefits, if applicable.

(f)  The Health and Human Services Commission shall establish a means by which the sheriff of a county, or an employee of the county or sheriff, may determine whether a person confined in the county jail is or was, as appropriate, receiving medical assistance benefits under Chapter 32, Human Resources Code, for purposes of this section.

(g)  The county or sheriff, or an employee of the county or sheriff, is not liable in a civil action for damages resulting from a failure to comply with this section.

SECTION ____.  Sections 32.0264(a)-(c), Human Resources Code, and Section 351.048(a), Local Government Code, as added by this Act, apply to a person whose period of confinement in a county jail begins on or after the effective date of this Act, regardless of the date the person was determined eligible for medical assistance under Chapter 32, Human Resources Code.

SECTION ____.  Section 32.0264(d), Human Resources Code, and Section 351.048(c), Local Government Code, as added by this Act, apply to the release or discharge of a prisoner from a county jail that occurs on or after the effective date of this Act, regardless of the date the prisoner was initially confined in the county jail.

SECTION ____. If before implementing any provision of this Act a state agency determines that a waiver or authorization from a federal agency is necessary for implementation of that provision, the agency affected by the provision shall request the waiver or authorization and may delay implementing that provision until the waiver or authorization is granted.

Amendment No. 1 failed of adoption.

**CSHB 205** was passed to engrossment.

### CSHB 439 ON SECOND READING
### (by Dutton)

**CSHB 439**, A bill to be entitled An Act relating to the restoration of certain rights to a criminal defendant.

### Amendment No. 1

Representative Dutton offered the following amendment to **CSHB 439**:

Amend **CSHB 439** (house committee printing) on page 1 by striking lines 22 through 24 and substituting the following:

(i) for which an individual is required to register as a sex offender under Chapter 62;

(ii) involving violence or the threat of violence;

(iii) involving drugs; or

(iv) involving firearms and punishable as a felony.

Amendment No. 1 was adopted.

**CSHB 439**, as amended, was passed to engrossment. (Anderson, Button, Flynn, Phillips, Springer, E. S. Turner, and Zedler recorded voting no.)

### REMARKS ORDERED PRINTED

Representative Wu moved to print his remarks on **CSHB 318**.

The motion prevailed.

### COMMITTEE GRANTED PERMISSION TO MEET

Representative Hilderbran requested permission for the Committee on Ways and Means to meet while the house is in session, at 5 p.m. today, in 3W.15, to consider **HB 3571** and pending business.

Permission to meet was granted.

### COMMITTEE MEETING ANNOUNCEMENT

The following committee meeting was announced:

Ways and Means, 5 p.m. today, 3W.15, for a formal meeting, to consider **HB 3571** and pending business.

### CSHB 585 ON SECOND READING
### (by Villarreal, Workman, and P. King)

**CSHB 585**, A bill to be entitled An Act relating to ad valorem taxation; creating an offense.

**CSHB 585** was read second time earlier today and was postponed until this time.

**Amendment No. 1**

Representative Villarreal offered the following amendment to **CSHB 585**:

Amend **CSHB 585** (house committee printing) as follows:

(1) On page 6, line 12, strike "Subsections (d-1) and (f)" and substitute "Subsections (d), (d-1), and (f)".

(2) On page 6, between lines 13 and 14, insert the following:

(d) Except as provided by Subsection (d-1), members of the board are independent contractors of the appraisal district appointed by resolution of a majority of the appraisal district board of directors. A vacancy on the board is filled in the same manner for the unexpired portion of the term.

(3) On page 6, line 17, between "are" and "appointed", insert "independent contractors of the appraisal district".

(4) On page 7, strike lines 1-12 and substitute the following:

(f) A member of the board serves at the pleasure [may be removed from the board by a majority vote] of the appraisal district board of directors[,] or [by] the local administrative district judge or the judge's designee, as applicable, that appointed the member. [Grounds for removal are:

[(1) a violation of Section 6.412, 6.413, 41.66(f), or 41.69; or

[(2) good cause relating to the attendance of members at called meetings of the board as established by written policy adopted by a majority of the appraisal district board of directors.]

Amendment No. 1 was adopted.

**Amendment No. 2**

Representative Otto offered the following amendment to **CSHB 585**:

Amend **CSHB 585** (house committee printing) by adding the following appropriately numbered SECTION to the bill and renumbering the subsequent SECTIONS of the bill accordingly:

SECTION ____. (a) Section 41.43, Tax Code, is amended by amending Subsection (a) and adding Subsections (a-3), (a-4), and (a-5) to read as follows:

(a) Except as provided by Subsections (a-1), (a-3), and (d), in a protest authorized by Section 41.41(a)(1) or (2), the appraisal district has the burden of establishing the value of the property by a preponderance of the evidence presented at the hearing. If the appraisal district fails to meet that standard, the protest shall be determined in favor of the property owner.

(a-3) In a protest authorized by Section 41.41(a)(1) or (2), the appraisal district has the burden of establishing the value of the property by clear and convincing evidence presented at the hearing if:

(1) the appraised value of the property was lowered under this subtitle in the preceding tax year;

(2) the appraised value of the property in the preceding tax year was not established as a result of a written agreement between the property owner or the owner's agent and the appraisal district under Section 1.111(e); and

(3) not later than the 14th day before the date of the first day of the hearing, the property owner files with the appraisal review board and delivers to the chief appraiser:

(A) information, such as income and expense statements or information regarding comparable sales, that is sufficient to allow for a determination of the appraised or market value of the property if the protest is authorized by Section 41.41(a)(1); or

(B) information that is sufficient to allow for a determination of whether the property was appraised unequally if the protest is authorized by Section 41.41(a)(2).

(a-4) If the appraisal district has the burden of establishing the value of property by clear and convincing evidence presented at the hearing on a protest as provided by Subsection (a-3) and the appraisal district fails to meet that standard, the protest shall be determined in favor of the property owner.

(a-5) Subsection (a-3)(3) does not impose a duty on a property owner to provide any information in a protest authorized by Section 41.41(a)(1) or (2). That subdivision is merely a condition to the applicability of the standard of evidence provided by Subsection (a-3).

(b) The change in law made by this section applies only to a protest filed with an appraisal review board on or after the effective date of this section. A protest filed with an appraisal review board before the effective date of this section is covered by the law in effect at the time the protest was filed, and the former law is continued in effect for that purpose.

(c) Notwithstanding any other provision of this Act, this section takes effect September 1, 2013.

Amendment No. 2 was adopted.

**CSHB 585**, as amended, was passed to engrossment. (Phillips recorded voting no.)

### GENERAL STATE CALENDAR
### (consideration continued)

### CSHB 658 ON SECOND READING
### (by Sheets and Krause)

**CSHB 658**, A bill to be entitled An Act relating to postjudgment interest on damages subject to Medicare subrogation.

**CSHB 658** was passed to engrossment.

### CSHB 1134 ON SECOND READING
### (by Darby)

**CSHB 1134**, A bill to be entitled An Act relating to performance and payment security for certain comprehensive development agreements.

**CSHB 1134** was passed to engrossment.

## SB 567 ON SECOND READING
### (Geren - House Sponsor)

**SB 567**, A bill to be entitled An Act relating to rates for water service, to the transfer of functions relating to the economic regulation of water and sewer service from the Texas Commission on Environmental Quality to the Public Utility Commission of Texas, and to the duties of the Office of Public Utility Counsel regarding the economic regulation of water and sewer service.

**SB 567** was considered in lieu of **HB 1307**.

**Amendment No. 1**

Representative Geren offered the following amendment to **SB 567**:

Amend **SB 567** as follows:

(1)  On page 62, line 18, between "unless the" and "commission has", insert "utility".

(2)  Strike "Sections 11.041 and 12.013" and substitute "Section 12.013" in the following places:

      (A)  page 110, lines 19 and 20;

      (B)  page 111, line 20;

      (C)  page 111, line 25;

      (D)  page 112, line 12; and

      (E)  page 114, line 3.

(3)  Add the following appropriately numbered SECTIONS to the bill and renumber subsequent SECTIONS accordingly:

SECTION ____.  Section 8803.151(1), Special District Local Laws Code, is amended to read as follows:

      (1)  "Commission" means the Public Utility Commission of Texas [Commission on Environmental Quality].

SECTION ____.  Section 8808.151(1), Special District Local Laws Code, is amended to read as follows:

      (1)  "Commission" means the Public Utility Commission of Texas [Commission on Environmental Quality].

Amendment No. 1 was adopted.

**Amendment No. 2**

Representative Dutton offered the following amendment to **SB 567**:

Amend **SB 567** by adding the following appropriately numbered SECTION to the bill and renumbering subsequent SECTIONS accordingly:

SECTION ____.  Subchapter G, Chapter 13, Water Code, is amended by adding Section 13.2552 to read as follows:

Sec. 13.2552.  SINGLE CERTIFICATION IN POPULOUS MUNICIPALITIES. (a) This section applies only to:

      (1)  a retail public utility that:

         (A)  provides service in a municipality with a population of more than two million;

         (B)  provides service in more than 50 counties in this state; and

(C)  obtains water from more than 500 source wells in this state; and

(2)  a municipality with a population of more than two million.

(b)  Notwithstanding any other law, a municipality and a retail public utility that provides water or sewer service in the municipality under a certificate of convenience and necessity shall agree in writing that the utility's service area in the municipality shall be served only by a municipally owned utility and that the municipality shall purchase from the retail public utility:

(1)  the certificate of convenience and necessity for the area in the municipality;

(2)  the property of the retail public utility; and

(3)  any property of the retail public utility that is rendered useless or valueless as a result of the transfer of the certificate.

(c)  The minimum monetary compensation the municipality shall pay shall be determined in the manner provided by Sections 13.254(e)-(g-1).  The municipality shall pay the compensation over a period of 50 years.

(d)  The municipality, before providing service to the area, shall file an application with the commission to grant single certification to the municipally owned utility.

(e)  The executed agreement described by Subsection (b) shall be filed with the commission, and the commission, on receipt of the agreement and the application described by Subsection (d), shall:

(1)  incorporate the terms of the agreement into the respective certificates of convenience and necessity of the parties to the agreement; and

(2)  grant single certification to the municipality.

(f)  The commission shall deny an application for single certification by a municipality that fails to demonstrate compliance with the commission's minimum requirements for public drinking water systems.

Amendment No. 2 was withdrawn.

**SB 567**, as amended, was passed to third reading.

### HB 1307 - LAID ON THE TABLE SUBJECT TO CALL

Representative Geren moved to lay **HB 1307** on the table subject to call.

The motion prevailed.

### HB 2020 ON SECOND READING
### (by Crownover, Alvarado, Lucio, Harless, and Callegari)

**HB 2020**, A bill to be entitled An Act relating to the adoption of wellness policies and programs by state agencies.

### Amendment No. 1

Representative S. Davis offered the following amendment to **HB 2020**:

Amend **HB 2020** (house committee report) as follows:

(1)  On page 1, line 16, between "POLICIES." and "A state", insert "(a)".

(2) On page 2, line 8, between "services" and the underlined semicolon, insert "in accordance with Subtitles B and J, Title 3, Occupations Code, including the requirements regarding delegation of certain medical acts under Chapter 157, Occupations Code".

(3) On page 2, between lines 10 and 11, insert the following:

(b) In addition to the requirements of Sections 2155.074, 2155.075, and 2254.003, in awarding a contract for on-site clinic or pharmacy services as provided by Subsection (a)(5), a state agency may consider:

(1) whether the on-site clinic services will be provided by a physician-led organization that has its principal place of business in this state; or

(2) whether the on-site pharmacy services will be provided by a business that has its principal place of business in this state.

Amendment No. 1 was adopted.

**HB 2020**, as amended, was passed to engrossment. (Phillips, Springer, and E. S. Turner recorded voting no.)

## CSHB 2294 ON SECOND READING
### (by Kuempel and Lucio)

**CSHB 2294**, A bill to be entitled An Act relating to an exemption from air conditioning and refrigeration contracting regulation for installation of a thermostat.

**CSHB 2294** was passed to engrossment.

## CSHB 2962 ON SECOND READING
### (by Harper-Brown)

**CSHB 2962**, A bill to be entitled An Act relating to the use of a credit or charge card by certain state agencies to make certain purchases.

### Amendment No. 1

Representatives Martinez Fischer, Flynn, Alvarado, and Nevárez offered the following amendment to **CSHB 2962**:

Amend **CSHB 2962** (house committee printing) as follows:

(1) On page 1, line 13, strike "and".

(2) On page 1, between lines 13 and 14, insert the following:

(2) require a state agency that uses a credit or charge card to make a purchase to post on the agency's Internet website a list of all purchases made with the credit or charge card, provided that the agency is not required to post any confidential information; and

(3) On page 1, line 14, strike "(2)" and substitute "(3)".

(4) On page 2, line 10, strike "and".

(5) On page 2, between lines 10 and 11, insert the following:

(2) the agency shall post on the agency's Internet website a list of all purchases made with the credit or charge card, provided that the agency is not required to post any confidential information; and

(6) On page 2, line 11, strike "(2)" and substitute "(3)".

(7) On page 3, line 1, strike "and".

(8)  On page 3, between lines 1 and 2, insert the following:

(2)  the agency shall post on the agency's Internet website a list of all purchases made with the credit or charge card, provided that the agency is not required to post any confidential information; and

(9)  On page 3, line 2, strike "(2)" and substitute "(3)".

Amendment No. 1 was adopted.

### Amendment No. 2

Representative Otto offered the following amendment to **CSHB 2962**:

Amend **CSHB 2962** (house committee printing) by adding the following the following appropriately numbered SECTION to the bill and renumbering subsequent SECTIONS of the bill accordingly:

SECTION ____.  Subchapter B, Chapter 403, Government Code, is amended by adding Section 403.0233 to read as follows:

Sec. 403.0233.  CREDIT OR DEBIT CARD AGREEMENT BENEFITTING INSTITUTIONS OF HIGHER EDUCATION. (a) In this section, "institution of higher education" has the meaning assigned by Section 61.003, Education Code.

(b)  A rule adopted by the comptroller under Section 403.023 may not prohibit an institution of higher education that enters into an agreement with a credit or debit card issuer under which the issuer is required to pay the institution an amount of money based on the use of the credit or debit card by a cardholder from retaining any money paid by the issuer to the institution under the agreement.

Amendment No. 2 was withdrawn.

**CSHB 2962**, as amended, was passed to engrossment. (Schaefer and Simpson recorded voting no.)

### CSHB 3460 ON SECOND READING
### (by Eiland)

**CSHB 3460**, A bill to be entitled An Act relating to the requirement that certain information be reported to the Texas Department of Insurance and the confidentiality of that information.

**CSHB 3460** was passed to engrossment. (Simpson recorded voting no.)

### HB 194 ON SECOND READING
### (by Farias, Ratliff, Menéndez, Guerra, Collier, et al.)

**HB 194**, A bill to be entitled An Act relating to considering ownership interests of certain disabled veterans in determining whether a business is a historically underutilized business for purposes of state contracting.

Representative Farias moved to postpone consideration of **HB 194** until 2 p.m. Monday, May 6.

The motion prevailed.

## CSHB 3105 ON SECOND READING
### (by Morrison)

**CSHB 3105**, A bill to be entitled An Act relating to availability of certain benefits under individual accident and health insurance policies.

**CSHB 3105** was passed to engrossment.

## CSHB 3158 ON SECOND READING
### (by Zerwas, Johnson, and Rose)

**CSHB 3158**, A bill to be entitled An Act relating to Medicaid managed care pilot programs for contracts with provider-directed managed care organizations, including organizations that delegate to health care collaboratives, and to the establishment of those collaboratives.

Representative Rose moved to postpone consideration of **CSHB 3158** until 8 a.m. tomorrow.

The motion prevailed.

## HB 3436 ON SECOND READING
### (by Cook)

**HB 3436**, A bill to be entitled An Act relating to formal action of responsible governmental entities on certain proposals or bids for certain projects.

### Amendment No. 1

Representative Cook offered the following amendment to **HB 3436**:

Amend **HB 3436** (house committee report) as follows:

(1) On page 1, line 5, between "Government Code," and "is", insert "as added by Chapter 1334 (**SB 1048**), Acts of the 82nd Legislature, Regular Session, 2011,".

(2) On page 1, line 9, strike "September 1, 2013" and substitute "September 1, 2015".

(3) On page 1, line 10, strike "September 2, 2013" and substitute "September 2, 2015".

Amendment No. 1 was adopted.

### Amendment No. 2

Representative Cook offered the following amendment to **HB 3436**:

Amend **HB 3436** (house committee report) on page 1, line 5, between "Government Code," and "is", by inserting "as added by Chapter 1334 (**SB 1048**), Acts of the 82nd Legislature, Regular Session, 2011,".

Amendment No. 2 was adopted.

**HB 3436**, as amended, was passed to engrossment.

## CSHB 3572 ON SECOND READING
### (by Hilderbran, Eiland, Otto, Bohac, Alvarado, et al.)

**CSHB 3572**, A bill to be entitled An Act relating to the administration, collection, and enforcement of taxes on mixed beverages; imposing a tax on sales of mixed beverages; decreasing the rate of the current tax on mixed beverages.

Representative Hilderbran moved to postpone consideration of **CSHB 3572** until the end of today's calendar.

The motion prevailed.

## CSHB 3556 ON SECOND READING
### (by Kolkhorst and Raymond)

**CSHB 3556**, A bill to be entitled An Act relating to the licensing and regulation of emergency medical services providers and a moratorium on the issuance of emergency medical services provider licenses.

**Amendment No. 1**

Representative Raymond offered the following amendment to **CSHB 3556**:

Amend **CSHB 3556** (house committee report) by adding the following appropriately numbered SECTIONS to the bill and renumbering subsequent SECTIONS of the bill accordingly:

SECTION ____. Section 773.0571, Health and Safety Code, is amended to read as follows:

Sec. 773.0571. REQUIREMENTS FOR PROVIDER LICENSE. The department shall issue to an emergency medical services provider applicant a license that is valid for two years if the department is satisfied that:

(1) the applicant [emergency medical services provider] has adequate staff to meet the staffing standards prescribed by this chapter and the rules adopted under this chapter;

(2) each emergency medical services vehicle is adequately constructed, equipped, maintained, and operated to render basic or advanced life support services safely and efficiently;

(3) the applicant [emergency medical services provider] offers safe and efficient services for emergency prehospital care and transportation of patients; [and]

(4) the applicant:

(A) possesses sufficient professional experience and qualifications to provide emergency medical services; and

(B) has not been excluded from participation in the state Medicaid program;

(5) the applicant holds a letter of approval issued under Section 773.0573 by the governing body of the municipality or the commissioners court of the county in which the applicant is located and is applying to provide emergency medical services, as applicable; and

(6) the applicant [emergency medical services provider] complies with the rules adopted [by the board] under this chapter.

SECTION ____. Subchapter C, Chapter 773, Health and Safety Code, is amended by adding Section 773.0573 to read as follows:

Sec. 773.0573. LETTER OF APPROVAL FROM LOCAL GOVERNMENTAL ENTITY. (a) An emergency medical services provider applicant must obtain a letter of approval from:

(1) the governing body of the municipality in which the applicant is located and is applying to provide emergency medical services; or

(2) if the applicant is not located in a municipality, the commissioners court of the county in which the applicant is located and is applying to provide emergency medical services.

(b) A governing body of a municipality or a commissioners court of a county may issue a letter of approval to an emergency medical services provider applicant who is applying to provide emergency medical services in the municipality or county only if the governing body or commissioners court determines that:

(1) the addition of another licensed emergency medical services provider will not interfere with or adversely affect the provision of emergency medical services by the licensed emergency medical services providers operating in the municipality or county;

(2) the addition of another licensed emergency medical services provider will remedy an existing provider shortage that cannot be resolved through the use of the licensed emergency medical services providers operating in the municipality or county; and

(3) the addition of another licensed emergency medical services provider will not cause an oversupply of licensed emergency medical services providers in the municipality or county.

(c) An emergency medical services provider is prohibited from expanding operations to or stationing any emergency medical services vehicles in a municipality or county other than the municipality or county from which the provider obtained the letter of approval under this section until after the second anniversary of the date the provider's initial license was issued, unless the expansion or stationing occurs in connection with:

(1) a contract awarded by another municipality or county for the provision of emergency medical services;

(2) an emergency response made in connection with an existing mutual aid agreement; or

(3) an activation of a statewide emergency or disaster response by the department.

(d) This section does not apply to:

(1) renewal of an emergency medical services provider license; or

(2) a municipality, county, emergency services district, hospital, or emergency medical services volunteer provider organization in this state that applies for an emergency medical services provider license.

SECTION ____. Section 773.0571, as amended by this Act, and Section 773.0573, as added by this Act, apply only to an application for approval of an emergency medical services provider license submitted to the Department of

State Health Services on or after the effective date of this Act. An application submitted before the effective date of this Act is governed by the law in effect immediately before the effective date of this Act, and that law is continued in effect for that purpose.

Amendment No. 1 was adopted.

**CSHB 3556**, as amended, was passed to engrossment. (Schaefer and Springer recorded voting no.)

### COMMITTEE GRANTED PERMISSION TO MEET

Representative Hunter requested permission for the Committee on Calendars to meet while the house is in session, at 5:45 p.m. today, in 3W.15, to set a calendar.

Permission to meet was granted.

### COMMITTEE MEETING ANNOUNCEMENT

The following committee meeting was announced:

Calendars, 5:45 p.m. today, 3W.15, for a formal meeting, to set a calendar.

### REMARKS ORDERED PRINTED

Representative Simpson moved to print his remarks on **HB 124**.

The motion prevailed.

### CSHB 3238 ON SECOND READING
### (by McClendon, Naishtat, Coleman, J. Davis, Zerwas, et al.)

**CSHB 3238**, A bill to be entitled An Act relating to disease control pilot programs to reduce the risk of certain communicable diseases; authorizing a fee.

### Amendment No. 1

Representative Y. Davis offered the following amendment to **CSHB 3238**:

Amend **CSHB 3238** (house committee printing) as follows:
(1)  On page 3, insert the following between lines 13 and 14:
        (4)  provide for an HIV test as part of the participant's annual routine medical screening.

Amendment No. 1 was adopted.

### LEAVES OF ABSENCE GRANTED

The following members were granted leaves of absence temporarily for today to attend a committee meeting:

Branch on motion of T. King.

Button on motion of T. King.

Cook on motion of T. King.

Crownover on motion of T. King.

S. Davis on motion of T. King.

Eiland on motion of T. King.

Frullo on motion of T. King.

Hunter on motion of T. King.

Kuempel on motion of T. King.

D. Miller on motion of T. King.

The following members were granted leaves of absence for the remainder of today to attend a committee meeting:

Alvarado on motion of T. King.

Geren on motion of T. King.

### CSHB 3238 - (consideration continued)

**CSHB 3238**, as amended, failed to pass to engrossment by (Record 470): 58 Yeas, 71 Nays, 2 Present, not voting. (The vote was later reconsidered on Friday, May 3, and **CSHB 3238** was further amended and failed to pass to engrossment by Record No. 502.)

Yeas — Allen; Alonzo; Anchia; Burnam; Canales; Coleman; Collier; Cortez; Davis, J.; Davis, Y.; Deshotel; Dukes; Dutton; Farias; Farrar; Giddings; González, M.; Gonzalez, N.; Guerra; Gutierrez; Hernandez Luna; Herrero; Howard; Huberty; Johnson; King, K.; King, S.; King, T.; Longoria; Lucio; Martinez; Martinez Fischer; McClendon; Menéndez; Miles; Moody; Muñoz; Murphy; Naishtat; Nevárez; Oliveira; Perez; Pickett; Price; Raney; Ratliff; Reynolds; Rodriguez, E.; Rodriguez, J.; Rose; Smith; Strama; Turner, C.; Turner, S.; Villarreal; Vo; Walle; Wu.

Nays — Anderson; Ashby; Aycock; Bell; Bohac; Bonnen, D.; Bonnen, G.; Burkett; Carter; Clardy; Craddick; Creighton; Dale; Darby; Elkins; Fallon; Farney; Fletcher; Flynn; Frank; Goldman; Gonzales; Gooden; Guillen; Harless; Harper-Brown; Hilderbran; Hughes; Isaac; Kacal; Keffer; King, P.; Kleinschmidt; Klick; Kolkhorst; Krause; Laubenberg; Lavender; Leach; Lewis; Lozano; Miller, R.; Morrison; Orr; Otto; Paddie; Parker; Patrick; Perry; Riddle; Ritter; Sanford; Schaefer; Sheets; Sheffield, J.; Sheffield, R.; Simmons; Simpson; Smithee; Springer; Stephenson; Stickland; Taylor; Thompson, E.; Thompson, S.; Toth; Turner, E.S.; Villalba; White; Workman; Zedler.

Present, not voting — Mr. Speaker; Márquez(C).

Absent, Excused, Committee Meeting — Alvarado; Branch; Button; Cook; Crownover; Davis, S.; Eiland; Frullo; Geren; Hunter; Kuempel; Miller, D.; Pitts.

Absent — Callegari; Capriglione; Larson; Phillips; Raymond; Zerwas.

### STATEMENTS OF VOTE

When Record No. 470 was taken, I was excused to attend a meeting of the Committee on Calendars. I would have voted no.

Button

When Record No. 470 was taken, my vote failed to register. I would have voted no.

Capriglione

I was shown voting yes on Record No. 470. I intended to vote no.

Muñoz

When Record No. 470 was taken, my vote failed to register. I would have voted no.

Phillips

I was shown voting yes on Record No. 470. I intended to vote no.

Ratliff

### CSSB 1251 ON SECOND READING
### (Villarreal - House Sponsor)

**CSSB 1251**, A bill to be entitled An Act relating to authorized charges and terms for certain consumer loans.

**CSSB 1251** was considered in lieu of **HB 2315**.

Representative Villarreal moved to postpone consideration of **CSSB 1251** until 10 a.m. Monday, May 6.

The motion prevailed.

### HB 2315 - LAID ON THE TABLE SUBJECT TO CALL

Representative Villarreal moved to lay **HB 2315** on the table subject to call.

The motion prevailed.

### POSTPONED BUSINESS

The following bills were laid before the house as postponed business:

(Button, S. Davis, Eiland, Kuempel, and D. Miller now present)

### CSHB 3572 ON SECOND READING
### (by Hilderbran, Eiland, Otto, Bohac, Alvarado, et al.)

**CSHB 3572**, A bill to be entitled An Act relating to the administration, collection, and enforcement of taxes on mixed beverages; imposing a tax on sales of mixed beverages; decreasing the rate of the current tax on mixed beverages.

**CSHB 3572** was read second time earlier today and was postponed until this time.

**Amendment No. 1**

Representative Hilderbran offered the following amendment to **CSHB 3572**:

Amend **CSHB 3572** (house committee report) on page 2, line 25, by striking "seven [14] percent" and substituting "6.7 [14] percent".

Amendment No. 1 was adopted.

**Amendment No. 2**

Representative Hilderbran offered the following amendment to **CSHB 3572**:

Amend **CSHB 3572** (house committee report) as follows:

(1) Strike page 3, lines 4 through 11, and substitute the following appropriately numbered SECTION:

SECTION ____. Sections 183.0212(a) and (b), Tax Code, are amended to read as follows:

(a)  For informational purposes only, a permittee may provide that each sales invoice, billing, service check, ticket, or other receipt to a customer for the purchase of an item subject to taxation under this subchapter [chapter] include:

(1)  a separate statement disclosing the amount of tax to be paid by the permittee under this subchapter [chapter] in relation to that item; or

(2)  a statement of the mixed beverage taxes, consisting of the combined amount of the tax to be paid by the permittee under this subchapter in relation to that item and the amount of tax imposed under Subchapter B-1 on that item.

(b)  A [The separate] statement under Subsection (a)(1) must clearly disclose the amount of tax payable by the permittee.

(2) Strike page 6, lines 6 through 13, and substitute the following:

Sec. 183.042.  DISCLOSURE OF TAX.  A permittee may provide that a sales invoice, billing, service check, ticket, or other receipt to a customer for the purchase of an item subject to taxation under this subchapter include:

(1)  a statement that mixed beverage sales tax is included in the sales price;

(2)  a separate statement of the amount of tax imposed under this subchapter on that item; or

(3)  a statement of the mixed beverage taxes, consisting of the combined amount of the tax to be paid by the permittee under Subchapter B in relation to that item and the amount of tax imposed under this subchapter on that item.

Amendment No. 2 was adopted.

(Branch, Crownover, and Frullo now present)

**CSHB 3572**, as amended, was passed to engrossment.

### CSHB 3238 - NOTICE GIVEN

Pursuant to the provisions of Rule 7, Section 37(c) of the House Rules, at 5:56 p.m., Representative Lozano announced his intention to make the motion to reconsider the vote by which **CSHB 3238**, as amended, failed to pass to engrossment by Record No. 470.

### CSHB 3201 - VOTE RECONSIDERED

Representative Kolkhorst moved to reconsider the vote by which **CSHB 3201**, as amended, was passed to engrossment.

The motion to reconsider prevailed.

### CSHB 3201 ON SECOND READING
### (by Kolkhorst)

The chair laid before the house, on its second reading and passage to engrossment,

**CSHB 3201**, A bill to be entitled An Act relating to the practice of dentistry; imposing surcharges and fees.

**CSHB 3201** was read second time earlier today and was passed to engrossment, as amended.

### Amendment No. 3 - Vote Reconsidered

Representative Kolkhorst moved to reconsider the vote by which Amendment No. 3 was adopted.

The motion to reconsider prevailed.

### Amendment No. 4

Representative Nevárez offered the following amendment to Amendment No. 3:

Amend Amendment No. 3 by Fletcher on **CSHB 3201** by striking the text of the amendment and substituting the following:

SECTION ____. Section 254.018, Occupations Code, is amended to read as follows:

Sec. 254.018. [EXPERT] TESTIMONY. A member of the board may not express an oral or written opinion or serve as an expert witness in a suit or administrative claim pending before the same board [involving a health care liability claim] against or for a person licensed or registered under this subtitle [dentist] for injury to or death of a patient or for a violation of the standard of care or the commission of malpractice [unless the member receives approval from the board or an executive committee of the board to serve as an expert witness].

Amendment No. 4 was adopted.

Amendment No. 3, as amended, was adopted.

**CSHB 3201**, as amended, was passed to engrossment.

### POSTPONED BUSINESS

The following bills were laid before the house as postponed business:

(Hunter now present)

### CSHB 1010 ON SECOND READING
### (by S. King)

**CSHB 1010**, A bill to be entitled An Act relating to the penalty for causing certain assaultive physical contact with a child.

**CSHB 1010** was read second time earlier today and was postponed until this time.

**Amendment No. 1**

Representatives S. King and Moody offered the following amendment to **CSHB 1010**:

Amend **CSHB 1010** (house committee report) by striking added SECTION 2 (beginning on page 1, line 12, through page 2, line 16) and substituting the following:

SECTION 2.  Section 22.01(c), Penal Code, is amended to read as follows:

(c)  An offense under Subsection (a)(2) or (3) is a Class C misdemeanor, except that the offense is:

(1)  a Class A misdemeanor if the offense is committed under Subsection (a)(3) against an elderly individual or disabled individual, as those terms are defined by Section 22.04; [or]

(2)  a Class A misdemeanor if the offense is committed under Subsection (a)(3) by a person who is 17 years of age or older against a child as defined by Section 22.04; or

(3)  [(2)]  a Class B misdemeanor if the offense is committed by a person who is not a sports participant against a person the actor knows is a sports participant either:

(A)  while the participant is performing duties or responsibilities in the participant's capacity as a sports participant; or

(B)  in retaliation for or on account of the participant's performance of a duty or responsibility within the participant's capacity as a sports participant.

### MESSAGE FROM THE SENATE

A message from the senate was received at this time (see the addendum to the daily journal, Messages from the Senate, Message No. 4).

(Cook now present)

### CSHB 1010 - (consideration continued)

### Amendment No. 1 - Point of Order

Representative Schaefer raised a point of order against further consideration of Amendment No. 1.

The point of order was withdrawn.

Amendment No. 1 was adopted.

**CSHB 1010**, as amended, was passed to engrossment by (Record 471): 96 Yeas, 38 Nays, 2 Present, not voting.

Yeas — Anchia; Ashby; Bell; Bohac; Bonnen, G.; Branch; Burkett; Burnam; Button; Callegari; Capriglione; Carter; Clardy; Coleman; Cook; Craddick; Creighton; Crownover; Dale; Darby; Davis, J.; Davis, S.; Elkins; Farney; Farrar; Fletcher; Flynn; Frullo; Goldman; Gonzales; González, M.; Gooden; Guillen; Gutierrez; Harless; Harper-Brown; Herrero; Hilderbran; Howard; Hunter; Isaac; Johnson; King, K.; King, P.; King, S.; Kolkhorst; Krause; Kuempel; Larson; Laubenberg; Lavender; Leach; Martinez; Martinez Fischer; Menéndez; Miller, D.; Miller, R.; Moody; Morrison; Muñoz; Naishtat; Nevárez;

Orr; Otto; Parker; Patrick; Perez; Phillips; Pickett; Price; Raney; Ratliff; Raymond; Riddle; Ritter; Rodriguez, E.; Sanford; Sheets; Sheffield, J.; Sheffield, R.; Simmons; Smithee; Springer; Stephenson; Strama; Thompson, E.; Toth; Turner, C.; Turner, E.S.; Villalba; Villarreal; Walle; White; Workman; Wu; Zedler.

Nays — Allen; Alonzo; Bonnen, D.; Canales; Collier; Cortez; Davis, Y.; Deshotel; Dutton; Fallon; Farias; Frank; Gonzalez, N.; Guerra; Hernandez Luna; Huberty; Hughes; Kleinschmidt; Klick; Lewis; Longoria; Lozano; Lucio; Miles; Murphy; Oliveira; Perry; Reynolds; Rodriguez, J.; Rose; Schaefer; Simpson; Smith; Stickland; Taylor; Thompson, S.; Turner, S.; Vo.

Present, not voting — Mr. Speaker; Márquez(C).

Absent, Excused, Committee Meeting — Alvarado; Geren; Pitts.

Absent — Anderson; Aycock; Dukes; Eiland; Giddings; Kacal; Keffer; King, T.; McClendon; Paddie; Zerwas.

## STATEMENTS OF VOTE

When Record No. 471 was taken, I was in the house but away from my desk. I would have voted no.

Anderson

I was shown voting yes on Record No. 471. I intended to vote no.

Callegari

I was shown voting no on Record No. 471. I intended to vote yes.

Canales

I was shown voting no on Record No. 471. I intended to vote yes.

Fallon

I was shown voting no on Record No. 471. I intended to vote yes.

Guerra

I was shown voting yes on Record No. 471. I intended to vote no.

Price

I was shown voting no on Record No. 471. I intended to vote yes.

J. Rodriguez

## COMMITTEE MEETING ANNOUNCEMENTS

The following committee meetings were announced:

Government Efficiency and Reform, upon final adjournment today, Desk 77, for a formal meeting, to consider pending business.

Homeland Security and Public Safety, upon final adjournment today, Desk 15, for a formal meeting, to consider pending business.

Public Health, upon final adjournment today, Desk 100, for a formal meeting, to consider pending business.

Insurance, upon final adjournment today, Desk 13, for a formal meeting, to consider pending business.

## COMMITTEE GRANTED PERMISSION TO MEET

Representative Cook requested permission for the Committee on State Affairs to meet while the house is in session, during bill referral today, in 1W.14, to consider pending and previously posted business.

Permission to meet was granted.

## COMMITTEE MEETING ANNOUNCEMENT

The following committee meeting was announced:

State Affairs, during bill referral today, 1W.14, for a formal meeting, to consider pending and previously posted business.

## FIVE-DAY POSTING RULE SUSPENDED

Representative D. Bonnen moved to suspend the five-day posting rule to allow the Committee on Ways and Means to consider **HB 509**, **HB 607**, **HB 716**, **HB 1338**, **HB 1943**, **HB 3742**, **HJR 84**, and **HJR 102** at 8:30 a.m. Saturday, May 4 in E2.014.

The motion prevailed.

## COMMITTEE MEETING ANNOUNCEMENT

The following committee meeting was announced:

Ways and Means, 8:30 a.m. Saturday, May 4, E2.014, for a public hearing, to consider **HB 509**, **HB 607**, **HB 716**, **HB 1338**, **HB 1943**, **HB 3742**, **HJR 84**, **HJR 102**, and pending business.

## SB 1803 - RECOMMITTED

Representative Raymond moved to recommit **SB 1803** to the Committee on Human Services.

The motion prevailed.

## HB 1829 - RECOMMITTED

Representative Raymond moved to recommit **HB 1829** to the Committee on Human Services.

The motion prevailed.

## PROVIDING FOR ADJOURNMENT

At 6:46 p.m., Representative Elkins moved that, at the conclusion of the reading of bills and resolutions on first reading and referral to committees, the house adjourn until 10 a.m. tomorrow in memory of Helen W. Prince of Southold, New York.

The motion prevailed.

## BILLS AND JOINT RESOLUTIONS ON FIRST READING
## AND REFERRAL TO COMMITTEES
## RESOLUTIONS REFERRED TO COMMITTEES

Bills and joint resolutions were at this time laid before the house, read first time, and referred to committees. Resolutions were at this time laid before the house and referred to committees. (See the addendum to the daily journal, Referred to Committees, List No. 1.)

(Taylor in the chair)

### ADJOURNMENT

In accordance with a previous motion, the house, at 6:52 p.m., adjourned until 10 a.m. tomorrow.

---

### ADDENDUM

---

### REFERRED TO COMMITTEES

The following bills and joint resolutions were today laid before the house, read first time, and referred to committees, and the following resolutions were today laid before the house and referred to committees. If indicated, the chair today corrected the referral of the following measures:

**List No. 1**

**HR 1809** (By R. Sheffield), In memory of Ina Faye Minyard McGinnis of Troy.
To Rules and Resolutions.

**HR 1810** (By E. S. Turner), Congratulating Spencer Sosnowski of Rockwall-Heath High School on his selection to perform with the U.S. Marine Corps Band.
To Rules and Resolutions.

**HR 1811** (By Márquez), Congratulating El Paso artist and author Bill "Rak" Rakocy on his 89th birthday.
To Rules and Resolutions.

**HR 1815** (By J. Sheffield), Paying tribute to the life of Michael Cook Walton of Stephenville.
To Rules and Resolutions.

**HR 1816** (By Farney), Congratulating Dr. Michael Douglas on being named executive director of the Texas Life-Sciences Collaboration Center in Georgetown.
To Rules and Resolutions.

**HR 1818** (By Farney), Congratulating the Marble Falls Independent School District on receiving perfect scores at all campuses on its most recent cafeteria health inspection.
To Rules and Resolutions.

**HR 1819** (By Dutton), Commending Dr. W. E. Bosarge, Jr., of Houston on his achievements.
To Rules and Resolutions.

**HR 1820** (By Dutton), Commending Marie Taylor Bosarge of Houston on her contributions to her community.
To Rules and Resolutions.

**HR 1821** (By Wu), Commemorating the Memorial Hermann Foundation 2013 Circle of Life Gala and the fund-raising campaign Revolutionizing Neuroscience and honoring Elizabeth and Gary Petersen for their philanthropy.
To Rules and Resolutions.

**HR 1822** (By Wu), In memory of the Reverend Ben Sanchez Riojas of Houston.
To Rules and Resolutions.

**HR 1823** (By Wu), In memory of Ralph Kilpatrick Cox Brown of Houston.
To Rules and Resolutions.

**HR 1824** (By Menéndez), Honoring David Sinclair for his 40 years of service to the Texas Parks and Wildlife Department.
To Rules and Resolutions.

**HR 1825** (By Menéndez), Congratulating Colonel Pete Flores on his retirement as Law Enforcement Division director of the Texas Parks and Wildlife Department.
To Rules and Resolutions.

**HR 1826** (By Menéndez), Congratulating Susan Blackwood on her achievements as executive director of San Antonio Sports.
To Rules and Resolutions.

**HR 1827** (By Sanford), Commending Blake Allen for his service as deputy district director in the office of State Representative Scott Sanford.
To Rules and Resolutions.

**HR 1828** (By J. Rodriguez), Commending Leon Valley on earning designation as a "Tree City USA" by the Arbor Day Foundation and Texas A&M Forest Service.
To Rules and Resolutions.

**HR 1830** (By Gooden), In memory of Gilbert Willie, Sr., of Terrell.
To Rules and Resolutions.

**HR 1831** (By G. Bonnen), Congratulating Brittany Harris on her receipt of the Service Above Self Award from the Friendswood Rotary Club.
To Rules and Resolutions.

**HR 1832** (By G. Bonnen), In memory of Taylor Lake Village Mayor-elect Lilian Norman Keeney.
To Rules and Resolutions.

**HR 1833** (By G. Bonnen), Congratulating Devon Joel Carter of Friendswood on attaining the rank of Eagle Scout.
To Rules and Resolutions.

**HR 1834** (By Lewis), Commemorating the 10th Annual Senior Celebration in Ector County.
To Rules and Resolutions.

**HR 1835** (By Bohac), Commending Thomas Neumann on his service as executive director of the Jewish Institute for National Security Affairs.
To Rules and Resolutions.

**HR 1836** (By Bohac), Honoring Judge Herman Paul Pressler III of Houston for his service to the State of Texas.
To Rules and Resolutions.

**HR 1837** (By Bohac), Congratulating Wayne F. Schaper, Sr., on having the Spring Branch ISD administration building named in his honor.
To Rules and Resolutions.

**HR 1838** (By Bohac), In memory of David Allan Schwerdtfeger of Seguin.
To Rules and Resolutions.

**HR 1839** (By Bohac), Honoring U.S. Circuit Judge Jerry E. Smith for his 25 years of service on the Fifth Circuit Court of Appeals.
To Rules and Resolutions.

**HR 1840** (By Bohac), In memory of Stella Marion Hawes of Mineral Wells.
To Rules and Resolutions.

**HR 1841** (By Bohac), In memory of Lloyd "Bland" McReynolds of Houston.
To Rules and Resolutions.

**HR 1842** (By Bohac), In memory of Miguel A. Hernandez of Houston.
To Rules and Resolutions.

**HR 1843** (By T. King), Commemorating the rededication of the SSgt. Willie De Leon Civic Center in Uvalde.
To Rules and Resolutions.

**HR 1844** (By Price), Congratulating the Valero McKee Refinery on its receipt of a Texas Environmental Excellence Award.
To Rules and Resolutions.

**HR 1845** (By Sanford), Congratulating Christopher Paxton for his service as legislative director for Representative Scott Sanford.
To Rules and Resolutions.

**HR 1847** (By Craddick), Congratulating Dally Willis of Midland on his 93rd birthday.
To Rules and Resolutions.

**HR 1848** (By Gutierrez), In memory of Vojt J. Holub of San Antonio.
To Rules and Resolutions.

**SB 38** to Public Education.

**SB 39** to Public Education.

**SB 110** to Judiciary and Civil Jurisprudence.

**SB 377** to Public Education.

**SB 766** to Licensing and Administrative Procedures.

**SB 1191** to Public Health.

**SB 1360** to Criminal Jurisprudence.

**SB 1401** to Public Health.

**SB 1427** to Agriculture and Livestock.

**SB 1451** to Criminal Jurisprudence.

**SB 1606** to Ways and Means.

**SB 1662** to Ways and Means.

**SB 1750** to Agriculture and Livestock.

**SB 1799** to Public Education.

**SB 1878** to Special Purpose Districts.

**SB 1883** to Special Purpose Districts.

**SB 1889** to Public Health.

**SJR 54** to County Affairs.

## SIGNED BY THE SPEAKER

The following bills and resolutions were today signed in the presence of the house by the speaker:

**Senate List No. 20**

**SB 283**, **SB 294**, **SB 297**, **SB 312**, **SB 618**, **SB 966**, **SB 1248**

## MESSAGES FROM THE SENATE

The following messages from the senate were today received by the house:

**Message No. 2**

MESSAGE FROM THE SENATE
SENATE CHAMBER
Austin, Texas
Thursday, May 2, 2013 - 2

The Honorable Speaker of the House
House Chamber
Austin, Texas

Mr. Speaker:

I am directed by the senate to inform the house that the senate has taken the following action:

THE SENATE HAS PASSED THE FOLLOWING MEASURES:

**HCR 31**                    Eiland                    SPONSOR: Taylor
Designating the Kemp's ridley sea turtle as the official State Sea Turtle of Texas.

**SB 171**                    West
Relating to the establishment of a workgroup to study the use by state agencies of a uniform application form following disasters.

**SB 338**                    Rodríguez
Relating to the liability of certain social workers who provide volunteer health care services to charitable organizations.

**SB 644**                    Huffman
Relating to the creation of a standard request form for prior authorization of prescription drug benefits.

**SB 1258**                    Hinojosa
Relating to improving access to nursing education programs.

**SB 1436**                    Paxton
Relating to the service retirement annuity of certain members of the Judicial Retirement System of Texas Plan One.

**SB 1836**                    Deuell
Relating to the funding of the Texas Home Visiting Program; authorizing voluntary contributions.

**SB 1890**                    Hinojosa
Relating to procedures for the dissolution of the Hidalgo County Water Improvement District No. 3.

Respectfully,
Patsy Spaw
Secretary of the Senate

**Message No. 3**

MESSAGE FROM THE SENATE
SENATE CHAMBER
Austin, Texas
Thursday, May 2, 2013 - 3

The Honorable Speaker of the House
House Chamber
Austin, Texas

Mr. Speaker:

I am directed by the senate to inform the house that the senate has taken the following action:

THE SENATE HAS PASSED THE FOLLOWING MEASURES:

**SB 514**                    Davis
Relating to the installation, maintenance, operation, and relocation of saltwater pipeline facilities.

**SB 977**                    West
Relating to the procedure used to petition for an order of nondisclosure of criminal history record information.

**SB 1216**                   Eltife
Relating to the creation of a standard request form for prior authorization of medical care or health care services.

**SB 1801**                   Watson
Relating to the adoption of fire hydrant requirements for a wildland-urban interface in certain municipalities.

Respectfully,
Patsy Spaw
Secretary of the Senate

**Message No. 4**

MESSAGE FROM THE SENATE
SENATE CHAMBER
Austin, Texas
Thursday, May 2, 2013 - 4

The Honorable Speaker of the House
House Chamber
Austin, Texas

Mr. Speaker:

I am directed by the senate to inform the house that the senate has taken the following action:

THE SENATE HAS PASSED THE FOLLOWING MEASURES:

**SB 212**                    Nichols
Relating to the continuation, functions, and name of the Railroad Commission of Texas; providing for the imposition of fees and the elimination of a fee.

**SB 873**                    Hegar
Relating to the permitting authority of a groundwater conservation district for the drilling or operation of a water well used to supply water for the drilling, exploration, or production of oil or gas.

**SB 1727**                   Deuell
Relating to the use of the Texas emissions reduction plan fund.

**SB 1775**                   West

Relating to school campus information, student transfers, and the public education grant program.

Respectfully,
Patsy Spaw
Secretary of the Senate

## APPENDIX

### STANDING COMMITTEE REPORTS

Favorable reports have been filed by committees as follows:

**May 1**

Agriculture and Livestock - **HB 1998**

Business and Industry - **HB 3750**, **SB 60**, **SB 887**

County Affairs - **HB 714**, **HB 1384**, **HB 3895**, **HB 3949**, **HB 3950**, **HB 3951**, **HJR 148**

Criminal Jurisprudence - **HB 2559, SB 1114** (corrected)

Economic and Small Business Development - **HB 2181**, **HB 2390**

Elections - **HB 1398**

Environmental Regulation - **HB 3110**

Higher Education - **HB 1004**, **HB 2036**, **HB 3498**

Human Services - **HB 1143, HB 1396, HB 1633, HB 1828, SB 1236**

Insurance - **HB 1183**, **HB 2717**, **HB 3451**, **SB 147**

Investments and Financial Services - **HB 1575**, **SB 581**

Judiciary and Civil Jurisprudence - **HB 1710**, **HB 2547**, **HB 2930**, **HB 3170**

Land and Resource Management - **SB 1157**

Licensing and Administrative Procedures - **HB 619**, **HB 871**, **HB 2378**, **HB 3038**

Natural Resources - **HB 1796**, **HB 2133**, **HB 2577**, **HB 2739**, **HB 3924**, **SB 567**

Public Health - **HB 947**, **HB 1039**, **HB 2709**, **SB 406**, **SB 869**

Special Purpose Districts - **HB 1157**, **HB 1357**, **HB 3911**, **HB 3913**, **HB 3917**, **HB 3932**, **HB 3933**

State Affairs - **HB 2342**, **HJR 150**, **SB 1023**

Transparency in State Agency Operations, Select - **HB 9**, **HB 12**, **HB 16**

Transportation - **SB 1489**

Ways and Means - **HB 97**, **HB 178**, **HB 214**, **HB 357**, **HB 500**, **HB 862**, **HB 875**, **HB 1060**, **HB 1202**, **HB 1655**, **HB 2139**, **HB 2274**, **HB 2445**, **HB 2972**, **HB 3121**, **HB 3169**, **HJR 21**, **HJR 24**, **HJR 62**, **HJR 72**, **HJR 133**

## ENGROSSED

**May 1 - HB 21, HB 127, HB 259, HB 489, HB 517, HB 545, HB 580, HB 642, HB 697, HB 717, HB 824, HB 827, HB 939, HB 1086, HB 1372, HB 2259, HB 2442, HB 2443, HB 2961, HB 3176, HJR 147**

## ENROLLED

**May 1 - HCR 47, HCR 67, HCR 105, HCR 107**

**TAB 5**

By:  Villarreal, Workman, King of Parker                H.B. No. 585
     (Senate Sponsor - Eltife)
          (In the Senate - Received from the House May 6, 2013;
May 9, 2013, read first time and referred to Committee on Finance;
May 20, 2013, reported adversely, with favorable Committee
Substitute by the following vote:  Yeas 13, Nays 1; May 20, 2013,
sent to printer.)

                              COMMITTEE VOTE

|            | Yea | Nay | Absent | PNV |
|------------|-----|-----|--------|-----|
| Williams   | X   |     |        |     |
| Hinojosa   | X   |     |        |     |
| Deuell     | X   |     |        |     |
| Duncan     |     | X   |        |     |
| Eltife     | X   |     |        |     |
| Estes      | X   |     |        |     |
| Hegar      | X   |     |        |     |
| Huffman    | X   |     |        |     |
| Lucio      | X   |     |        |     |
| Nelson     | X   |     |        |     |
| Patrick    | X   |     |        |     |
| Seliger    | X   |     |        |     |
| West       |     |     | X      |     |
| Whitmire   | X   |     |        |     |
| Zaffirini  | X   |     |        |     |

COMMITTEE SUBSTITUTE FOR H.B. No. 585                      By:  Eltife

                         A BILL TO BE ENTITLED
                               AN ACT

relating to ad valorem taxation; creating an offense.
     BE IT ENACTED BY THE LEGISLATURE OF THE STATE OF TEXAS:
     SECTION 1.  Section 5.041, Tax Code, is amended by adding
Subsection (b-1) and amending Subsections (e-2) and (f) to read as
follows:
     (b-1)  At the conclusion of a course established under
Subsection (a), each member of an appraisal review board in
attendance shall complete a statement, on a form prescribed by the
comptroller, indicating that the member will comply with the
requirements of this title in conducting hearings.
     (e-2)  During [As soon as practicable after the beginning of]
the second year of an appraisal review board member's term of
office, the member must successfully complete the course
established under Subsection (e-1). At the conclusion of the
course, the member must complete a statement described by
Subsection (b-1).  A person may not participate in a hearing
conducted by the board, vote on a determination of a protest, or be
reappointed to an additional term on the board until the person has
completed [who fails to timely complete] the course established
under Subsection (e-1) and has received a certificate of course
completion [may not be reappointed to an additional term on the
appraisal review board].  If the person is reappointed to an
additional term on the appraisal review board, the person must
successfully complete the course established under Subsection
(e-1) and comply with the other requirements of this subsection in
each year the member continues to serve.
     (f)  The comptroller may not advise a property owner, a
property owner's agent, or the chief appraiser or another employee
of an appraisal district[, or an appraisal review board] on a matter
that the comptroller knows is the subject of a protest to the
appraisal review board.  The comptroller may provide advice to an
appraisal review board member as authorized by Subsection (a)(4) of
this section or Section 5.103 and may communicate with the chairman

1

of an appraisal review board or a taxpayer liaison officer concerning a complaint filed under Section 6.052.

SECTION 2.  Chapter 5, Tax Code, is amended by adding Section 5.103 to read as follows:

Sec. 5.103.  APPRAISAL REVIEW BOARD OVERSIGHT.  (a) The comptroller shall prepare model hearing procedures for appraisal review boards.

(b)  The model hearing procedures shall address:

(1)  the statutory duties of an appraisal review board;

(2)  the process for conducting a hearing;

(3)  the scheduling of hearings;

(4)  the postponement of hearings;

(5)  the notices required under this title;

(6)  the determination of good cause under Section 41.44(b);

(7)  the determination of good cause under Sections 41.45(e) and (e-1);

(8)  a party's right to offer evidence and argument;

(9)  a party's right to examine or cross-examine witnesses or other parties;

(10)  a party's right to appear by an agent;

(11)  the prohibition of an appraisal review board's consideration of information not provided at a hearing;

(12)  ex parte and other prohibited communications;

(13)  the exclusion of evidence at a hearing as required by Section 41.67(d);

(14)  the postponement of a hearing as required by Section 41.66(h);

(15)  conflicts of interest;

(16)  the process for the administration of applications for membership on an appraisal review board; and

(17)  any other matter related to fair and efficient appraisal review board hearings.

(c)  The comptroller may:

(1)  categorize appraisal districts based on the size of the district, the number of protests filed in the district, or similar characteristics; and

(2)  develop different model hearing procedures for different categories of districts.

(d)  An appraisal review board shall follow the model hearing procedures prepared by the comptroller when establishing its procedures for hearings as required by Section 41.66(a).

(e)  The comptroller shall prescribe the contents of a survey form for the purpose of providing the public a reasonable opportunity to offer comments and suggestions concerning the appraisal review board established for an appraisal district.  The survey form must permit a person to offer comments and suggestions concerning the matters listed in Subsection (b) or any other matter related to the fairness and efficiency of the appraisal review board.  The survey form, together with instructions for completing the form and submitting the form, shall be provided to each property owner at or before each hearing on a protest conducted by an appraisal review board.  The appraisal office may provide clerical assistance to the comptroller for purposes of the implementation of this subsection, including assistance in providing and receiving the survey form.  The comptroller, or an appraisal office providing clerical assistance to the comptroller, may provide for the provision and submission of survey forms electronically.

(f)  The comptroller shall issue an annual report summarizing the survey forms submitted by property owners concerning each appraisal review board.  The report may not disclose the identity of a person who submits a survey form.

SECTION 3.  Section 6.035, Tax Code, is amended by adding Subsection (a-1) to read as follows:

(a-1)  An individual is ineligible to serve on an appraisal district board of directors if the individual has engaged in the business of appraising property for compensation for use in proceedings under this title or of representing property owners for compensation in proceedings under this title in the appraisal

district at any time during the preceding five years.

SECTION 4. Section 6.052, Tax Code, is amended by amending Subsections (a), (b), (c), and (e) and adding Subsection (f) to read as follows:

(a) The board of directors for an appraisal district created for a county with a population of more than 120,000 [125,000] shall appoint a taxpayer liaison officer who shall serve at the pleasure of the board. The taxpayer liaison officer shall administer the public access functions required by Sections 6.04(d), (e), and (f), and is responsible for resolving disputes not involving matters that may be protested under Section 41.41. In addition, the taxpayer liaison officer is responsible for receiving, and compiling a list of, comments and suggestions filed by the chief appraiser, a property owner, or a property owner's agent concerning the matters listed in Section 5.103(b) or any other matter related to the fairness and efficiency of the appraisal review board established for the appraisal district. The taxpayer liaison officer shall forward to the comptroller comments and suggestions filed under this subsection in the form and manner prescribed by the comptroller.

(b) The taxpayer liaison officer shall [may] provide to the public information and materials designed to assist property owners in understanding the appraisal process, protest procedures, the procedure for filing comments and suggestions under Subsection (a) of this section or a complaint under Section 6.04(g), and other [related] matters. Information concerning the process for submitting comments and suggestions to the comptroller concerning an appraisal review board shall be provided at each protest hearing.

(c) The taxpayer liaison officer shall report to the board at each meeting on the status of all comments and suggestions [complaints] filed with the officer under Subsection (a) of this section and all complaints filed with the board under Section 6.04(g).

(e) The chief appraiser or any other person who performs appraisal or legal services for the appraisal district for compensation is not eligible to be the taxpayer liaison officer [for the appraisal district].

(f) The taxpayer liaison officer for an appraisal district described by Section 6.41(d-1) is responsible for providing clerical assistance to the local administrative district judge in the selection of appraisal review board members. The officer shall deliver to the local administrative district judge any applications to serve on the board that are submitted to the officer and shall perform other duties as requested by the local administrative district judge. The officer may not influence the process for selecting appraisal review board members.

SECTION 5. Section 6.41, Tax Code, is amended by amending Subsections (d-1) and (f) and adding Subsections (i), (j), and (k) to read as follows:

(d-1) In a county with a population of 120,000 [3.3 million or more or a county with a population of 550,000 or more that is adjacent to a county with a population of 3.3 million] or more the members of the board are appointed by the local administrative district judge under Subchapter D, Chapter 74, Government Code, in the county in which the appraisal district is established. All applications submitted to the appraisal district or to the appraisal review board from persons seeking appointment as a member of the appraisal review board shall be delivered to the local administrative district judge. The appraisal district may provide the local administrative district judge with information regarding whether an applicant for appointment to or a member of the board owes any delinquent ad valorem taxes to a taxing unit participating in the appraisal district.

(f) A member of the board may be removed from the board by a majority vote of the appraisal district board of directors, or by the local administrative district judge or the judge's designee, as applicable, that appointed the member. Grounds for removal are:

(1) a violation of Section 6.412, 6.413, 41.66(f), or

41.69; [or]

　　　　　　　(2)　good cause relating to the attendance of members at called meetings of the board as established by written policy adopted by a majority of the appraisal district board of directors; or

　　　　　　　(3)　clear and convincing evidence of repeated bias or misconduct.

　　　　(i)　This subsection applies only to an appraisal district described by Subsection (d-1). A chief appraiser or another employee or agent of the appraisal district, a member of the appraisal review board for the appraisal district, a member of the board of directors of the appraisal district, a property tax consultant, or an agent of a property owner commits an offense if the person communicates with the local administrative district judge regarding the appointment of appraisal review board members. This subsection does not apply to:

　　　　　　　(1)　a communication between a member of the appraisal review board and the local administrative district judge regarding the member's reappointment to the board;

　　　　　　　(2)　a communication between the taxpayer liaison officer for the appraisal district and the local administrative district judge in the course of the performance of the officer's clerical duties so long as the officer does not offer an opinion or comment regarding the appointment of appraisal review board members; or

　　　　　　　(3)　a communication between a chief appraiser or another employee or agent of the appraisal district, a member of the appraisal review board for the appraisal district, or a member of the board of directors of the appraisal district and the local administrative district judge regarding information described by Subsection (d-1) of this section or Section 411.1296, Government Code.

　　　　(j)　A chief appraiser or another employee or agent of an appraisal district commits an offense if the person communicates with a member of the appraisal review board for the appraisal district, a member of the board of directors of the appraisal district, or, if the appraisal district is an appraisal district described by Subsection (d-1), the local administrative district judge regarding a ranking, scoring, or reporting of the percentage by which the appraisal review board or a panel of the board reduces the appraised value of property.

　　　　(k)　An offense under Subsection (i) or (j) is a Class A misdemeanor.

　　　　SECTION 6.　Section 6.411(c-1), Tax Code, is amended to read as follows:

　　　　(c-1)　This section does not apply to communications with a member of an appraisal review board by [involving] the chief appraiser or another employee or a member of the board of directors of an appraisal district or a property tax consultant or attorney representing a party to a proceeding before [and a member of] the appraisal review board:

　　　　　　　(1)　during a hearing on a protest or other proceeding before the appraisal review board;

　　　　　　　(2)　that constitute social conversation;

　　　　　　　(3)　that are specifically limited to and involve administrative, clerical, or logistical matters related to the scheduling and operation of hearings, the processing of documents, the issuance of orders, notices, and subpoenas, and the operation, appointment, composition, or attendance at training of the appraisal review board; or

　　　　　　　(4)　that are necessary and appropriate to enable the board of directors of the appraisal district to determine whether to appoint, reappoint, or remove a person as a member or the chairman or secretary of the appraisal review board.

　　　　SECTION 7.　Chapter 21, Tax Code, is amended by adding Sections 21.09 and 21.10 to read as follows:

　　　　Sec. 21.09.　ALLOCATION APPLICATION.　(a)　To receive an allocation authorized by Section 21.03, 21.031, 21.05, or 21.055, a person claiming the allocation must apply for the allocation. To

apply for an allocation, a person must file an allocation application form with the chief appraiser in the appraisal district in which the property subject to the claimed allocation has taxable situs.

(b) A person claiming an allocation must apply for the allocation each year the person claims the allocation. A person claiming an allocation must file a completed allocation application form before May 1 and must provide the information required by the form. If the property was not on the appraisal roll in the preceding year, the deadline for filing the allocation application form is extended to the 45th day after the date of receipt of the notice of appraised value required by Section 25.19(a)(3). For good cause shown, the chief appraiser shall extend the deadline for filing an allocation application form by written order for a period not to exceed 60 days.

(c) The comptroller shall prescribe the contents of the allocation application form and shall ensure that the form requires an applicant to provide the information necessary to determine the validity of the allocation claim.

(d) If the chief appraiser learns of any reason indicating that an allocation previously allowed should be canceled, the chief appraiser shall investigate. If the chief appraiser determines that the property is not entitled to an allocation, the chief appraiser shall cancel the allocation and deliver written notice of the cancellation not later than the fifth day after the date the chief appraiser makes the cancellation. A person may protest the cancellation of an allocation.

(e) The filing of a rendition under Chapter 22 is not a condition of qualification for an allocation.

Sec. 21.10. LATE APPLICATION FOR ALLOCATION. (a) The chief appraiser shall accept and approve or deny an application for an allocation under Section 21.09 after the deadline for filing the application has passed if the application is filed before the date the appraisal review board approves the appraisal records.

(b) If the application is approved, the property owner is liable to each taxing unit for a penalty in an amount equal to 10 percent of the difference between the amount of tax imposed by the taxing unit on the property without the allocation and the amount of tax imposed on the property with the allocation.

(c) The chief appraiser shall make an entry on the appraisal records for the property indicating the property owner's liability for the penalty and shall deliver a written notice of imposition of the penalty, explaining the reason for its imposition, to the property owner.

(d) The tax assessor for a taxing unit that taxes the property shall add the amount of the penalty to the property owner's tax bill, and the tax collector for the unit shall collect the penalty at the time and in the manner the collector collects the tax. The amount of the penalty constitutes a lien against the property against which the penalty is imposed, as if the penalty were a tax, and accrues penalty and interest in the same manner as a delinquent tax.

SECTION 8. Section 22.01, Tax Code, is amended by adding Subsections (c-1), (c-2), and (d-1) to read as follows:

(c-1) In this section:

(1) "Secured party" has the meaning assigned by Section 9.102, Business & Commerce Code.

(2) "Security interest" has the meaning assigned by Section 1.201, Business & Commerce Code.

(c-2) With the consent of the property owner, a secured party may render for taxation any property of the property owner in which the secured party has a security interest on January 1, although the secured party is not required to render the property by Subsection (a) or (b). This subsection applies only to property that has a historical cost when new of more than $50,000.

(d-1) A secured party who renders property under Subsection (c-2) shall indicate the party's status as a secured party and shall state the name and address of the property owner. A secured party is not liable for inaccurate information included on the rendition

statement if the property owner supplied the information or for failure to timely file the rendition statement if the property owner failed to promptly cooperate with the secured party. A secured party may rely on information provided by the property owner with respect to:

(1) the accuracy of information in the rendition statement;

(2) the appraisal district in which the rendition statement must be filed; and

(3) compliance with any provisions of this chapter that require the property owner to supply additional information.

SECTION 9. Section 22.24(e), Tax Code, is amended to read as follows:

(e) To be valid, a rendition or report must be sworn to before an officer authorized by law to administer an oath. The comptroller may not prescribe or approve a rendition or report form unless the form provides for the person filing the form to swear that the information provided in the rendition or report is true and accurate to the best of the person's knowledge and belief. This subsection does not apply to a rendition or report filed by a secured party, as defined by Section 22.01, the property owner, an employee of the property owner, or an employee of a property owner on behalf of an affiliated entity of the property owner.

SECTION 10. Section 31.11, Tax Code, is amended by adding Subsections (j) and (k) to read as follows:

(j) If the collector for a taxing unit does not respond to an application for a refund on or before the 90th day after the date the application is filed with the collector, the application is presumed to have been denied.

(k) Not later than the 60th day after the date the collector for a taxing unit denies an application for a refund, the taxpayer may file suit against the taxing unit in district court to compel the payment of the refund. If the collector collects taxes for more than one taxing unit, the taxpayer may join in the suit each taxing unit on behalf of which the collector denied the refund. If the taxpayer prevails in the suit, the taxpayer may be awarded:

(1) costs of court; and

(2) reasonable attorney's fees in an amount not to exceed the greater of:

(A) $1,500; or

(B) 30 percent of the total amount of the refund determined by the court to be due.

SECTION 11. Section 33.48(a), Tax Code, is amended to read as follows:

(a) In addition to other costs authorized by law, a taxing unit is entitled to recover the following costs and expenses in a suit to collect a delinquent tax:

(1) all usual court costs, including the cost of serving process and electronic filing fees;

(2) costs of filing for record a notice of lis pendens against property;

(3) expenses of foreclosure sale;

(4) reasonable expenses that are incurred by the taxing unit in determining the name, identity, and location of necessary parties and in procuring necessary legal descriptions of the property on which a delinquent tax is due;

(5) attorney's fees in the amount of 15 percent of the total amount of taxes, penalties, and interest due the unit; and

(6) reasonable attorney ad litem fees approved by the court that are incurred in a suit in which the court orders the appointment of an attorney to represent the interests of a defendant served with process by means of citation by publication or posting.

SECTION 12. Section 33.49(a), Tax Code, is amended to read as follows:

(a) Except as provided by Subsection (b), a taxing unit is not liable in a suit to collect taxes for court costs, including any fees for service of process or electronic filing, an attorney ad litem, arbitration, or mediation, and may not be required to post

security for costs.

SECTION 13. Section 41.45, Tax Code, is amended by adding Subsection (n) to read as follows:

(n) A property owner does not waive the right to appear in person at the protest hearing by submitting an affidavit to the appraisal review board. The board may consider the affidavit only if the property owner does not appear at the protest hearing in person. For purposes of scheduling the hearing, the property owner shall state in the affidavit that the property owner does not intend to appear at the hearing or that the property owner intends to appear at the hearing and that the affidavit may be used only if the property owner does not appear at the hearing. If the property owner does not state in the affidavit whether the owner intends to appear at the hearing, the board shall consider the submission of the affidavit as an indication that the property owner does not intend to appear at the hearing. If the property owner states in the affidavit that the owner does not intend to appear at the hearing or does not state in the affidavit whether the owner intends to appear at the hearing, the appraisal review board is not required to consider the affidavit at the scheduled hearing and may consider the affidavit at a hearing designated for the specific purpose of processing affidavits.

SECTION 14. Section 41.66, Tax Code, is amended by adding Subsections (i), (j), (k), (l), (m), (n), and (o) to read as follows:

(i) A hearing on a protest filed by a property owner who is not represented by an agent designated under Section 1.111 shall be set for a time and date certain. If the hearing is not commenced within two hours of the time set for the hearing, the appraisal review board shall postpone the hearing on the request of the property owner.

(j) On the request of a property owner or a designated agent, an appraisal review board shall schedule hearings on protests concerning up to 20 designated properties on the same day. The designated properties must be identified in the same notice of protest, and the notice must contain in boldfaced type the statement "request for same-day protest hearings." A property owner or designated agent may not file more than one request under this subsection with the appraisal review board in the same tax year. The appraisal review board may schedule hearings on protests concerning more than 20 properties filed by the same property owner or designated agent and may use different panels to conduct the hearings based on the board's customary scheduling. The appraisal review board may follow the practices customarily used by the board in the scheduling of hearings under this subsection.

(k) If an appraisal review board sits in panels to conduct protest hearings, protests shall be randomly assigned to panels, except that the board may consider the type of property subject to the protest or the ground of the protest for the purpose of using the expertise of a particular panel in hearing protests regarding particular types of property or based on particular grounds. If a protest is scheduled to be heard by a particular panel, the protest may not be reassigned to another panel without the consent of the property owner or designated agent. If the appraisal review board has cause to reassign a protest to another panel, a property owner or designated agent may agree to reassignment of the protest or may request that the hearing on the protest be postponed. The board shall postpone the hearing on that request. A change of members of a panel because of a conflict of interest, illness, or inability to continue participating in hearings for the remainder of the day does not constitute reassignment of a protest to another panel.

(l) A property owner, attorney, or agent offering evidence or argument in support of a protest brought under Section 41.41(a)(1) or (2) of this code is not subject to Chapter 1103, Occupations Code, unless the person offering the evidence or argument states that the person is offering evidence or argument as a person holding a license or certificate under Chapter 1103, Occupations Code. A person holding a license or certificate under Chapter 1103, Occupations Code, shall state the capacity in which

the person is appearing before the appraisal review board.

(m)  An appraisal district or appraisal review board may not make decisions with regard to membership on a panel or chairmanship of a panel based on a member's voting record in previous protests.

(n)  A request for postponement of a hearing must contain the mailing address and e-mail address of the person requesting the postponement.  An appraisal review board shall respond in writing or by e-mail to a request for postponement of a hearing not later than the seventh day after the date of receipt of the request.

(o)  The chairman of an appraisal review board or a member designated by the chairman may make decisions with regard to the scheduling or postponement of a hearing.  The chief appraiser or a person designated by the chief appraiser may agree to a postponement of an appraisal review board hearing.

SECTION 15.  Section 41A.03(a), Tax Code, is amended to read as follows:

(a)  To appeal an appraisal review board order under this chapter, a property owner must file with the appraisal district not later than the 45th day after the date the property owner receives notice of the order:

(1)  a completed request for binding arbitration under this chapter in the form prescribed by Section 41A.04; and

(2)  an arbitration deposit made payable to the comptroller in the amount of [:

[(A)]  $500[, or

[(B)  $250, if the property owner requests expedited arbitration under Section 41A.031].

SECTION 16.  Sections 42.08(b), (b-1), and (c), Tax Code, are amended to read as follows:

(b)  Except as provided in Subsection (d), a property owner who appeals as provided by this chapter must pay taxes on the property subject to the appeal in the amount required by this subsection before the delinquency date or the property owner forfeits the right to proceed to a final determination of the appeal.  The amount of taxes the property owner must pay on the property before the delinquency date to comply with this subsection is the lesser of:

(1)  the amount of taxes due on the portion of the taxable value of the property that is not in dispute; [or]

(2)  the amount of taxes due on the property under the order from which the appeal is taken; or

(3)  the amount of taxes imposed on the property in the preceding tax year.

(b-1)  This subsection applies only to an appeal in which the property owner elects to pay the amount of taxes described by Subsection (b)(1).  The appeal filed by the property owner must be accompanied by a statement in writing of the amount of taxes the property owner proposes to pay.  The failure to provide the statement required by this subsection is not a jurisdictional error.

(c)  A property owner that pays an amount of taxes greater than that required by Subsection (b) does not forfeit the property owner's right to a final determination of the appeal by making the payment.  The property owner may pay an additional amount of taxes at any time.  If the property owner files a timely appeal under this chapter, taxes paid on the property are considered paid under protest, even if paid before the appeal is filed.  If the taxes are subject to the split-payment option provided by Section 31.03, the property owner may comply with Subsection (b) of this section by paying one-half of the amount otherwise required to be paid under that subsection before December 1 and paying the remaining one-half of that amount before July 1 of the following year.

SECTION 17.  Section 42.21, Tax Code, is amended by adding Subsections (f), (g), and (h) to read as follows:

(f)  A petition filed by an owner or lessee of property may include multiple properties that are owned or leased by the same person and are of a similar type or are part of the same economic unit and would typically sell as a single property.  If a petition is filed by multiple plaintiffs or includes multiple properties

8

that are not of a similar type, are not part of the same economic unit, or are part of the same economic unit but would not typically sell as a single property, the court may on motion and a showing of good cause sever the plaintiffs or the properties.

(g) A petition filed by an owner or lessee of property may be amended to include additional properties in the same county that are owned or leased by the same person, are of a similar type as the property originally involved in the appeal or are part of the same economic unit as the property originally involved in the appeal and would typically sell as a single property, and are the subject of an appraisal review board order issued in the same year as the order that is the subject of the original appeal. The amendment must be filed within the period during which a petition for review of the appraisal review board order pertaining to the additional properties would be required to be filed under Subsection (a).

(h) The court has jurisdiction over an appeal under this chapter brought on behalf of a property owner or lessee and the owner or lessee is considered to have exhausted the owner's or lessee's administrative remedies regardless of whether the petition correctly identifies the plaintiff as the owner or lessee of the property or correctly describes the property so long as the property was the subject of an appraisal review board order, the petition was filed within the period required by Subsection (a), and the petition provides sufficient information to identify the property that is the subject of the petition. Whether the plaintiff is the proper party to bring the petition or whether the property needs to be further identified or described must be addressed by means of a special exception and correction of the petition by amendment as authorized by Subsection (e) and may not be the subject of a plea to the jurisdiction or a claim that the plaintiff has failed to exhaust the plaintiff's administrative remedies. If the petition is amended to add a plaintiff, the court on motion shall enter a docket control order to provide proper deadlines in response to the addition of the plaintiff.

SECTION 18. Section 42.23, Tax Code, is amended by adding Subsection (h) to read as follows:

(h) Evidence, argument, or other testimony offered at an appraisal review board hearing by a property owner or agent is not admissible in an appeal under this chapter unless:

(1) the evidence, argument, or other testimony is offered to demonstrate that there is sufficient evidence to deny a no-evidence motion for summary judgment filed by a party to the appeal or is necessary for the determination of the merits of a motion for summary judgment filed on another ground;

(2) the property owner or agent is designated as a witness for purposes of trial and the testimony offered at the appraisal review board hearing is offered for impeachment purposes; or

(3) the evidence is the plaintiff's testimony at the appraisal review board hearing as to the value of the property.

SECTION 19. Section 42.29(a), Tax Code, is amended to read as follows:

(a) A property owner who prevails in an appeal to the court under Section 42.25 or 42.26, [or] in an appeal to the court of a determination of an appraisal review board on a motion filed under Section 25.25, or in an appeal to the court of a determination of an appraisal review board of a protest of the denial in whole or in part of an exemption under Section 11.17, 11.22, 11.23, 11.231, or 11.24 may be awarded reasonable attorney's fees. The amount of the award may not exceed the greater of:

(1) $15,000; or

(2) 20 percent of the total amount by which the property owner's tax liability is reduced as a result of the appeal.

SECTION 20. Section 41A.031, Tax Code, is repealed.

SECTION 21. The changes in law made by this Act apply to a proceeding that is pending on the effective date of this Act or is filed on or after the effective date of this Act.

SECTION 22. Section 6.035, Tax Code, as amended by this Act, does not affect the eligibility of an individual serving on an

appraisal district board of directors immediately before the effective date of this Act to continue to serve on the appraisal district board of directors for the term to which the member was appointed.

SECTION 23. (a) As soon as practicable on or after January 1, 2014, the local administrative district judge or the judge's designee in a county described by Section 6.41(d-1), Tax Code, as amended by this Act, in the manner provided by Section 6.41, Tax Code, shall appoint the members of the appraisal review board for the appraisal district established in the county. In making the initial appointments, the judge or judge's designee shall designate those members who serve terms of one year as necessary to comply with Section 6.41(e), Tax Code.

(b) The changes made to Section 6.41, Tax Code, by this Act apply only to the appointment of appraisal review board members to terms beginning on or after January 1, 2014. This Act does not affect the term of an appraisal review board member serving on December 31, 2013, if the member was appointed before January 1, 2014, to a term that began before December 31, 2013, and expires December 31, 2014.

SECTION 24. Section 6.411, Tax Code, as amended by this Act, applies only to an offense committed on or after the effective date of this Act. An offense committed before the effective date of this Act is governed by the law in effect on the date the offense was committed, and the former law is continued in effect for that purpose. For purposes of this section, an offense was committed before the effective date of this Act if any element of the offense occurred before that date.

SECTION 25. Sections 22.01 and 22.24, Tax Code, as amended by this Act, apply only to the rendition of property for ad valorem tax purposes for a tax year that begins on or after January 1, 2014.

SECTION 26. (a) Except as provided by Subsection (b) of this section:

(1) this Act takes effect immediately if it receives a vote of two-thirds of all the members elected to each house, as provided by Section 39, Article III, Texas Constitution; and

(2) if this Act does not receive the vote necessary for immediate effect, this Act takes effect September 1, 2013.

(b) Sections 1, 2, 4, 5, 8, 9, 13, 14, and 25 of this Act take effect January 1, 2014.

* * * * *

**TAB 6**

4/28/2014 2:02:04 PM
Chris Daniel - District Clerk
Harris County
Envelope No: 1106315
By: FLORES, DANIEL

*p2*

*MFSSJ*

CAUSE NO. 2012-34688

| | |
|---|---|
| HARRIS COUNTY APPRAISAL DISTRICT, | IN THE DISTRICT COURT |
| Plaintiff, | |
| v. | 55th JUDICIAL DISTRICT |
| TEXAS WORKFORCE COMMISSION, *et al*, | |
| Defendants. | HARRIS COUNTY, TEXAS |

DENYING

ORDER ~~GRANTING~~ DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~~AND DENYING PLAINTIFF'S AMENDED MOTION FOR SUMMARY JUDGMENT~~

The Court considered the Texas Workforce Commission's (TWC) Motion for Summary Judgment and Harris County Appraisal Districts (HCAD) Amended Motion for Summary Judgment in the above-referenced cause. HCAD challenged TWC administrative decisions regarding unemployment benefits claims filed by the TWC's co-defendants by seeking judicial review under the substantial evidence trial *de novo* standard of review.

After considering the summary judgment evidence and arguments presented, the Court finds ~~in favor of~~ *against* the TWC and ~~affirms~~ *sets aside* the TWC's decisions.

**IT IS THEREFORE, ORDERED, ADJUDGED AND DECREED** that the TWC's Motion for Summary Judgment is ~~GRANTED~~ *Denied*, ~~that HCAD's Amended Motion for Summary Judgment is DENIED, and that the administrative decisions of the Texas Workforce Commission are AFFIRMED.~~

RECORDER'S MEMORANDUM
This instrument is of poor quality
at the time of imaging

1

Order on Cross Motions for Summary Judgment

864

All costs shall be borne by the party incurring same. This is a final judgment *Together with the Order of today, granting Plaintiff's motion for Summary Judgment,*

disposing of all claims and all parties. All ~~other relief not herein granted is denied.~~ *parties all to pay their own costs.*

SIGNED this day, ___May 5___, 2014.

_____
JUDGE PRESIDING

Order on Cross Motions for Summary Judgment

4/14/2014 5 38 01 PM
Chris Daniel - District Clerk Harris County
Envelope No 991336
By JONATHAN PATTON

CAUSE NO. 2012-34688

| HARRIS COUNTY APPRAISAL DISTRICT, | § | IN THE DISTRICT COURT OF |
| | § | |
| Plaintiff, | § | |
| | § | |
| vs. | § | HARRIS COUNTY, TEXAS |
| | § | |
| TEXAS WORKFORCE COMMISSION et. al, | § | |
| | § | |
| Defendant | § | 55TH JUDICIAL DISTRICT |

## ORDER

On the _____ day of _____, 2014, the Court heard the Amended Harris County Appraisal District's Motion for Summary Judgment and the Court, having considered the Motion, Responses and arguments of counsel is of the opinion that the Motion should, in all things, be GRANTED. It is therefore.

ORDERED that the Harris County Appraisal District's Amended Motion for Summary Judgment is hereby GRANTED.

SIGNED and entered on this 5 day of ___Man___, 2014.

_____
Judge Presiding

1

866

**TAB 7**

C

**Effective:[See Text Amendments]**

Vernon's Texas Statutes and Codes Annotated Currentness
  Labor Code (Refs & Annos)
    Title 4. Employment Services and Unemployment
      Subtitle A. Texas Unemployment Compensation Act
        Chapter 212. Dispute Resolution
          Subchapter E. Judicial Review of Commission Decision
            → → **§ 212.201. Commencement of Judicial Review; Defendants**

(a) A party aggrieved by a final decision of the commission may obtain judicial review of the decision by bringing an action in a court of competent jurisdiction for review of the decision against the commission on or after the date on which the decision is final, and not later than the 14th day after that date.

(b) Each other party to the proceeding before the commission must be made a defendant in an action under this subchapter.

CREDIT(S)

Acts 1993, 73rd Leg., ch. 269, § 1, eff. Sept. 1, 1993.

Current through the end of the 2011 Regular Session and First Called Session of the 82nd Legislature

(c) 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

END OF DOCUMENT

**TAB 8**

Westlaw.

C

**Effective: June 20, 2003**

Vernon's Texas Statutes and Codes Annotated Currentness
  Labor Code (Refs & Annos)
    Title 4. Employment Services and Unemployment
      Subtitle A. Texas Unemployment Compensation Act
        Chapter 212. Dispute Resolution
          Subchapter E. Judicial Review of Commission Decision
            → → **§ 212.202. Standard of Judicial Review; Exceptions Not Necessary**

(a) Judicial review under this subchapter is by trial de novo based on the substantial evidence rule.

(b) It is not necessary in a judicial proceeding under this subchapter to enter exceptions to the rulings of the commission.

CREDIT(S)

Acts 1993, 73rd Leg., ch. 269, § 1, eff. Sept. 1, 1993. Amended by Acts 2003, 78th Leg., ch. 1208, § 1, eff. June 20, 2003.

Current through the end of the 2011 Regular Session and First Called Session of the 82nd Legislature

(c) 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

END OF DOCUMENT

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

**TAB 9**

C

**Effective:[See Text Amendments]**

Vernon's Texas Statutes and Codes Annotated Currentness
    Labor Code (Refs & Annos)
        Title 4. Employment Services and Unemployment
            Subtitle A. Texas Unemployment Compensation Act
                ⌐▣ Chapter 201. Unemployment Compensation Act--General Provisions
                    ⌐▣ Subchapter D. Definition of Employment
                        ➔➔ § 201.041. General Definition of Employment

In this subtitle, "employment" means a service, including service in interstate commerce, performed by an individual for wages or under an express or implied contract of hire, unless it is shown to the satisfaction of the commission that the individual's performance of the service has been and will continue to be free from control or direction under the contract and in fact.

CREDIT(S)

Acts 1993, 73rd Leg., ch. 269, § 1, eff. Sept. 1, 1993.

REVISOR'S NOTE

2006 Main Volume

> The source law refers to a "written or oral, express or implied" contract. The reference to "written or oral" is omitted from the revised law because "written or oral" is included within the meaning of "express."

HISTORICAL AND STATUTORY NOTES

2006 Main Volume

Prior Laws:

> Acts 1936, 44th Leg., 3rd C.S., p. 1993, ch. 482, § 19.

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Acts 1937, 45th Leg., p. 121, ch. 67, § 7.

Acts 1939, 46th Leg., p. 436, § 10.

Acts 1941, 47th Leg., p. 1378, ch. 625, § 1.

Acts 1943, 48th Leg., p. 585, ch. 343, § 7.

Acts 1945, 49th Leg., p. 589, ch. 347, § 7.

Acts 1949, 51st Leg., p. 282, ch. 148, § 8.

Acts 1955, 54th Leg., p. 399, ch. 116, § 13.

Acts 1957, 55th Leg., p. 1350, ch. 460, § 11.

Acts 1961, 57th Leg., p. 1129, ch. 513, § 2.

Acts 1965, 59th Leg., p. 318, ch. 150, § 6.

Acts 1967, 60th Leg., p. 697, ch. 287, § 8.

Acts 1971, 62nd Leg., p. 2738, ch. 892, §§ 10, 11.

Acts 1977, 65th Leg., p. 994, ch. 368, §§ 15 to 19.

Acts 1979, 66th Leg., p. 384, ch. 175.

Acts 1981, 67th Leg., p. 17, ch. 12, § 2.

Acts 1982, 67th Leg., 3rd C.S., p. 2, ch. 2, § 5.

Acts 1983, 68th Leg., p. 2877, ch. 489, § 1.

Acts 1985, 69th Leg., ch. 67, §§ 1, 2.

Acts 1985, 69th Leg., ch. 385, § 1.

Acts 1991, 72nd Leg., ch. 812, § 1.

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Vernon's Ann.Civ.St. art. 5221b-17(g)(1).

LIBRARY REFERENCES

2006 Main Volume

Unemployment Compensation ⌲16, 29.
Westlaw Topic No. 392T.

RESEARCH REFERENCES

2014 Electronic Pocket Part Update

Encyclopedias

103 Am. Jur. Proof of Facts 3d 1, Proving Independent Contractor Status in Challenging Unemployment Insurance and Workers' Compensation Assessments.

TX Jur. 3d Employer and Employee § 389, Employment Defined.

NOTES OF DECISIONS

In general 1
Independent contractors 2
Review 3

1. In general

An "employer" is obligated to contribute to the unemployment compensation fund "on wages for employment paid," in accordance with rules adopted by the Texas Workforce Commission. Critical Health Connection, Inc. v. Texas Workforce Com'n (App. 3 Dist. 2011) 338 S.W.3d 758. Taxation ⌲3291(1)

Medical service providers, whom medical staffing company referred to its client hospitals and nursing homes in order to fulfill their short-term staffing needs, were "employees," rather than independent contractors, under Workforce Commission's "right-to-control" test and thus, company was required to contribute on their behalf to unemployment compensation fund; providers did not share in any profits or losses or otherwise invest in company's business, and once a provider accepted a shift with a client, she was provided equipment necessary to complete assignment and had no discretion about when or where work would be performed. Critical Health Connection, Inc. v. Texas Workforce Com'n (App. 3 Dist. 2011) 338 S.W.3d 758. Taxation ⌲3285

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Testimony of corporate officers that salesperson was free of direction and control and that she could have hired someone to perform her duties was substantial evidence that her services did not qualify as employment for purposes of unemployment compensation. Dozier v. Texas Employment Com'n (App. 14 Dist. 2001) 41 S.W.3d 304. Unemployment Compensation ☜403

The definition of "employment", in statute presupposes remuneration for such services. State v. Kenyon, Inc. (Civ.App. 1941) 153 S.W.2d 195, error refused.

Where in a suit by the Unemployment Compensation Commission, under statute, nothing showed either a payment of wages or services performed under a contract of hire, the commission could not rest its case solely upon the fact that the company failed to make any showing that the services involved did not constitute employment under the act. Op.Atty.Gen. 1939, No. 0-1337.

Where an owner of a department store leased a department within store, individuals employed to perform services in leased department are within employment of lessor within meaning of term "employment" as used in Texas Unemployment Compensation Act. Op.Atty.Gen.1942, No. 0-4212.

2. Independent contractors

Where owner of motor carrier business hired truck drivers and paid each driver 25% commission on gross revenue of truck he drove and paid all expenses of operating truck and bore all losses when they occurred, and where under art. 911b and rules promulgated by Railroad Commission, owner was compelled to retain control of trucks and drivers and drivers had no legal authority to operate trucks as independent contractors, truck drivers were employees and not independent contractors and owner was required to contribute to state unemployment compensation fund. Johnston v. State (Civ.App. 1957) 303 S.W.2d 520, ref. n.r.e. Taxation ☜3285

Persons doing insect extermination work were "employees" for whom their employer was required to remit unemployment taxes and were not "independent contractors" where operator of the business made all basic decisions, what equipment would be used, what chemicals were to be applied, prices to be charged, advertising to be done, what insurance would be carried, and how deferred payments would be carried, and two of three classes of workmen received salaries while third class was paid according to work done. Merchant v. State (Civ.App. 1964) 379 S.W.2d 924. Taxation ☜3285

Insurance adjusters were independent contractors, where work done by adjusters required some special skill, they had their own clients, they did their own work without direction from adjusting business, they kept their own hours, they were not paid on a claim file until work was done on file and they were not carried on social security and income tax withholding rolls of adjusting business, and thus adjusting business was not liable for unemployment taxes. Barnett v. Texas Employment Commission (Civ.App. 1974) 510 S.W.2d 361, ref. n.r.e. Taxation ☜3285

3. Review

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Upon judicial review, presuming substantial evidence and indulging all inferences in favor of Texas Workforce Commission's discretion, it takes very little evidence to overcome the presumption of employment, for purposes of determining entitlement to unemployment compensation benefits. Dozier v. Texas Employment Com'n (App. 14 Dist. 2001) 41 S.W.3d 304. Unemployment Compensation ☜493(3)

V. T. C. A., Labor Code § 201.041, TX LABOR § 201.041

Current through the end of the 2013 Third Called Session of the 83rd Legislature

(C) 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

END OF DOCUMENT

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

**TAB 10**


C

Texas Administrative Code Currentness
   Title 40. Social Services and Assistance
      Part 20. Texas Workforce Commission
         Chapter 821. Texas Payday Rules
            Subchapter A. General Provisions

➡➡ **§ 821.5. Employment Status: Employee or Independent Contractor**

The Commission adopts the following form, Form C-8, as its official guideline for use in determining employment status.

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Tex. Admin. Code tit. 40, § 821.5

Figure: 40 TAC §821.5

## EMPLOYMENT STATUS – A COMPARATIVE APPROACH

Under the common law test, a worker is an employee if the purchaser of that worker's service has the right to direct or control the worker, both as to the final results and as to the details of when, where, and how the work is done. Control need not actually be exercised; rather, if the service recipient has the *right* to control, employment may be shown.

Depending upon the type of business and the services performed, not all 20 common law factors may apply. In addition, the weight assigned to a specific factor may vary depending on the facts of the case.

If an employment relationship exists, it does not matter that the employee is called something different, such as agent, contract laborer, subcontractor, or independent contractor.

**1. INSTRUCTIONS:**

An Employee receives instructions about when, where and how the work is to be performed.

*An Independent Contractor does the job his or her own way with few, if any, instructions as to the details or methods of the work.*

**2. TRAINING:**

Employees are often trained by a more experienced employee or are required to attend meetings or take training courses.

*An Independent Contractor uses his or her own methods and thus need not receive training from the purchaser of those services.*

**3. INTEGRATION:**

Services of an Employee are usually merged into the firm's overall operation; the firm's success depends on those Employee services.

*An Independent Contractor's services are usually separate from the client's business and are not integrated or merged into it.*

**4. SERVICES RENDERED PERSONALLY:**

An Employee's services must be rendered personally; Employees do not hire their own substitutes or delegate work to them.

*A true Independent Contractor is able to assign another to do the job in his or her place and need not perform services personally.*

**5. HIRING, SUPERVISING & PAYING HELPERS:**

An Employee may act as a foreman for the employer but, if so, helpers are paid with the employer's funds.

*Independent Contractors select, hire, pay and supervise any helpers used and are responsible for the results of the helpers' labor.*

**6. CONTINUING RELATIONSHIP:**

An Employee often continues to work for the same employer month after month or year after year.

*An Independent Contractor is usually hired to do one job of limited or indefinite duration and has no expectation of continuing work.*

**7. SET HOURS OF WORK:**

An Employee may work "on call" or during hours and days as set by the employer.

*A true Independent Contractor is the master of his or her own time and works the days and hours he or she chooses.*

**11. ORAL OR WRITTEN REPORTS:**

An Employee may be required to submit regular oral or written reports about the work in progress.

*An Independent Contractor is usually not required to submit regular oral or written reports about the work in progress.*

**12. PAYMENT BY THE HOUR, WEEK OR MONTH:**

An Employee is typically paid by the employer in regular amounts at stated intervals, such as by the hour or week.

*An Independent Contractor is normally paid by the job, either a negotiated flat rate or upon submission of a bid.*

**13. PAYMENT OF BUSINESS & TRAVEL EXPENSE:**

An Employee's business and travel expenses are either paid directly or reimbursed by the employer.

*Independent Contractors normally pay all of their own business and travel expenses without reimbursement.*

**14. FURNISHING TOOLS & EQUIPMENT:**

Employees are furnished all necessary tools, materials and equipment by their employer.

*An Independent Contractor ordinarily provides all of the tools and equipment necessary to complete the job.*

**15. SIGNIFICANT INVESTMENT:**

An Employee generally has little or no investment in the business. Instead, an Employee is economically dependent on the employer.

*True Independent Contractors usually have a substantial financial investment in their independent business.*

**16. REALIZE PROFIT OR LOSS:**

An Employee does not ordinarily realize a profit or loss in the business. Rather, Employees are paid for services rendered.

*An Independent Contractor can either realize a profit or suffer a loss depending on the management of expenses and revenues.*

**17. WORKING FOR MORE THAN ONE FIRM AT A TIME:**

An Employee ordinarily works for one employer at a time and may be prohibited from joining a competitor.

*An Independent Contractor often works for more than one client or firm at the same time and is not subject to a non-competition rule.*

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Tex. Admin. Code tit. 40, § 821.5

**8. FULL TIME REQUIRED:**

An Employee ordinarily devotes full-time service to the employer, or the employer may have a priority on the Employee's time.

*A true Independent Contractor cannot be required to devote full-time service to one firm exclusively.*

**9. LOCATION WHERE SERVICES PERFORMED:**

Employment is indicated if the employer has the right to mandate where services are performed

*Independent Contractors ordinarily work where they choose. The workplace may be away from the client's premises.*

**10. ORDER OR SEQUENCE SET:**

An Employee performs services in the order or sequence set by the employer. This shows control by the employer.

*A true Independent Contractor is concerned only with the finished product and sets his or her own order or sequence of work.*

**C-8(994) Inv. No. 518975**

**18. MAKING SERVICE AVAILABLE TO THE PUBLIC:**

An Employee does not make his or her services available to the public except through the employer's company.

*An Independent Contractor may advertise, carry business cards, hang out a shingle or hold a separate business license.*

**19. RIGHT TO DISCHARGE WITHOUT LIABILITY:**

An Employee can be discharged at any time without liability on the employer's part.

*If the work meets the contract terms, an Independent Contractor cannot be fired without liability for breach of contract.*

**20. RIGHT TO QUIT WITHOUT LIABILITY:**

An Employee may quit work at any time without liability on the Employee's part.

*An Independent Contractor is legally responsible for job completion and, on quitting, becomes liable for breach of contract.*

**Source:** The provisions of this § 821.5 adopted to be effective June 1, 1998, 23 TexReg 5732; amended to be effective March 13, 2007, 32 TexReg 1328.

40 TAC § 821.5, 40 TX ADC § 821.5

Current through August 31, 2012

Copr. (C) 2012. All rights reserved.

END OF DOCUMENT

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.